No. 15-2203

—————————————————————————

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

—————————————————————————

**Kenneth Baker, et al.,**
**Plaintiffs-Appellants,**

**v.**

**Timothy M. Ghidotti, et al.,**
**Defendants-Appellees.**

—————————————————————————

**Appeal from the United States District Court**
**for the Northern District of Illinois, Eastern Division**
**Case No. 11 C 4197**
**Judge Harry D. Leinenweber**

—————————————————————————

## BRIEF AND REQUIRED SHORT APPENDIX OF
## PLAINTIFFS-APPELLANTS, KENNETH BAKER, et al.

—————————————————————————

**Irene K. Dymkar**
**Attorney for the Plaintiffs-Appellants**
**Kenneth Baker, et al.**

**Irene K. Dymkar**
**Law Offices of Irene K. Dymkar**
**53 West Jackson, Suite 733**
**Chicago, IL 60604-3462**
**(312) 345-0123**

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: _____15-2203_____

Short Caption: _____Kenneth Baker v. Timothy M. Ghidotti_____

      To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P 26.1.

      The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed R. App P 26.1 by completing item #3):
____Kenneth Baker, Barbara Baker, Camden Baker, and A.B., Minor, by Parent Barbara Baker

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
__Law Offices of Irene K. Dymkar, The Hamilton Law Office (as trial counsel only)__

(3) If the party or milieus is a corporation;
    I) Identify all its parent corporations, if any; and
      N/A_____
    ii) list any publicly held company that owns 10% or more of the party's or
      amicus' stock:
      N/A_____

Attorneys Signature: ____/s/____Irene K. Dymkar____ Date: __June 21, 2016__

Attorneys Printed Name: _____Irene K. Dymkar_____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to

Circuit Rule 3(d). Yes <u>X</u> No _____
Address: ___ Irene K, Dymkar, 53 West Jackson, Suite 733, Chicago, IL 60604-3462____

Phone Number: ___ 312-345-0123 ____    Fax Number: 312-345-0066 _____

Email Address: ___ irene.dymkar@dymkarlaw.com _____

# APPELLANT BRIEF

## TABLE OF CONTENTS

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT.**. . . . . . . . . . . . . . . . . . . . .  i

**TABLE OF CONTENTS.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

**TABLE OF AUTHORITIES.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

**JURISDICTIONAL STATEMENT.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

**STATEMENT OF ISSUES.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

**STATEMENT OF THE CASE.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

**SUMMARY OF ARGUMENT.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

**ARGUMENT.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

    **I.**    **The district court should have granted Plaintiff's Bill of Costs and denied Defendants' Bill of Costs.**. . . . . . . . . . . . . . . . . . . . 22

        **A.**    **Plaintiff should be granted his Bill of Costs as the prevailing party.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

        **B.**    **Defendants are not the prevailing party because the exact same Defendants who won claims also lost claims, Defendants cannot segregate their costs, and the City of Chicago would have necessarily incurred the same costs to defend the claims it lost.**. . . . . . . . . . . . . . . . . . . . . . . 24

    **II.**   **The district court erred in slashing the lodestar by 50%.**. . . . . .28

        **A.**    **Defendants should have been estopped from requesting a lodestar reduction where Defendants refused to discuss settlement over the entire course of litigation and made an offer just before trial that did not adequately compensate Plaintiff nor cover his attorneys' fees and costs.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

     **B.**     **The $30,000.00 verdict was an "excellent result" in a case where Plaintiff received all he could have expected, did not ask jury for any particular amount, and received in compensation twice as much as what Defendants offered just prior to trial.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **32**

**III.**    **The district court erred in deducting Plaintiff's attorneys' hours, and Defendants' objections to Plaintiffs' attorney's hours should be stricken.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **36**

     **A.**     **The court committed an arithmetic error in the double discount of 84.2 hours Plaintiff had already voluntarily discounted for work on Reliable Recovery Defendant claims** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **36**

     **B.**     **The district court erred as a matter of law in deducting 128.5 hours as legal work solely for Reliable Recovery Defendant claims when it awarded summary judgment to Plaintiff based on much of that legal work.** . . . . . . . . . . . **39**

     **C.**     **Defendants should be estopped from objecting to the number of Plaintiff's hours where the City of Chicago employed four attorneys in this case and did not provide time and work records for those attorneys.** . . . . . . . . . . . **43**

     **D.**     **Defendants should be estopped from objecting to the number of Plaintiff's hours because the presentation of their objections is so disorganized, confusing, and self-contradictory that the objections should be stricken.** . . . **45**

     **E.**     **The district court erred in deducting 9.9 hours as "lower level" legal work worthy of no fees.** . . . . . . . . . . . . . . . . . . **47**

     **F.**     **The district court erred in deducting a lump sum of 30 hours that were necessary, clear, and not excessive.** . . . . **48**

         **1.**     **The deduction of 4.1 hours as "unnecessary" was error.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **48**

         **2.**     **The deduction of 25.1 hours as "vague" was error.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **49**

3.    **The district court should not have reduced hours for reviewing court orders and conducting settlement discussions after court by more than 50%.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **51**

4.    **Plaintiff elects not to contest time reduction for e-mail messaging.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **52**

5.    **The district court's 30-hour reduction was excessive.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **52**

**CONCLUSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **55**

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **57**

**CIRCUIT RULE 31(e)(1) CERTIFICATION.** . . . . . . . . . . . . . . . . . . . . . **58**

**PROOF OF SERVICE.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **59**

**CIRCUIT COURT RULE 30(d) STATEMENT REGARDING APPENDIX.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **60**

**ATTACHED SHORT APPENDIX**

# TABLE OF AUTHORITIES

## Cases

*Aponte v. City of Chicago*
728 F.3d 724 (7th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

*Armstrong v. Maloney*
No. 08 C 4398, N.D. Ill. (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44-45

*Beverly v. Abbott Laboratories*
817 F.3d 328 (7th Cir. March 16, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36

*Calderon v. Witvoet*
112 F.3d 275 (7th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36

*City of Riverside v. Rivera*
477 U.S. 561 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

*Cooper v. Casey*
897 F. Supp. 1136 (N.D. Ill. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

*Dattner v. Conagra Foods, Inc.*
458 F.3d 98 (2d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22, 24

*Dunning v. Simmons Airlines, Inc.*
62 F.3d 863 (7th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33, 35

*Dupuy v. Samuels*
423 F.3d 714 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22, 24

*Edwards v. Rogowski*
2009 WL 742871 (N.D. Ill. March 18, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

*Farfaras v. Citizens Bank and Trust of Chicago*
433 F.3d 558 (7th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

*Gavoni v. Dobbs House, Inc.*
164 F.3d 1071 (7th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

*Gilfand v. Planey*
2012 WL 5845530 (N.D. Ill. Nov. 19, 2012). . . . . . . . . . . . . . . . . . .  25, 27, 31, 35, 36

*Gonzalez v. City of Elgin*
2010 WL 4636638 (N.D. Ill. Nov. 8, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Grosvenor v. Brienen*
801 F.2d 944 (7th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Harper v. City of Chicago Heights*
223 F.3d 593 (7th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Hensley v. Eckerhart*
461 U.S. 424 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 20, 29, 30, 32, 36

*Hyde v. Small*
123 F.3d 583 (7th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Jaffee v. Redmond*
142 F.3d 409 (7th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Johnson v. GDF, Inc. d/b/a Domino's Pizza*
668 F.3d 927 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Lenard v. Argento*
808 F.2d 1242 (7th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Littlefield v. McGuffey*
954 F.2d 1337 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Marek v. Chesny*
473 U.S. 1, 7, 105 S. Ct. 3012 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*McDonough Power Equipment, Inv. v. Greenwood*
464 U.S. 548 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Montanez v. Simon*
755 F.3d 547 (7th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Mostly Memories, Inc. v. For Your Ease Only, Inc.*
594 F. Supp. 2d 931 (N.D. Ill. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Perdue v. Kenny A.*
559 U.S. 542 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Pickett v. Sheridan Health Care Ctr.*
813 F.3d 640 (7th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 32

*Republic Tobacco Co. v. N. Atl. Trading Co.*
481 F.3d 442 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 24

*Richardson v. City of Chicago*
740 F.3d 1099 (7th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 37

*Richlin Sec. Service Co. v. Chertoff*
53 U.S. 571 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Shatner v. Cowan*
2009 WL 5210528 (S.D. Ill. Dec.28, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Slane v. Mariah Boats, Inc.*
164 F.3d 1065(7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 28

*Smart v. Local 702 Int'l Bhd. of Elec. Workers*
573 F.3d 523 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*U.S. Neurosurgical, Inc. v. City of Chicago*
572 F.3d 325 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Vidimos, Inc. v. Wysong Laser Co., Inc.*
179 F.3d 1063 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Walker v. City of Chicago*
513 Fed. Appx. 593 (7th Cir. 2013).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

## Statutes & Rules

28 U.S.C. § 1920. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 26

Fed. R. Civ. P. 54(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 19, 22, 23, 24

Fed. R. Civ. P. 61. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

745 ILCS 10/9-102. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# JURISDICTIONAL STATEMENT

On June 20, 2011, Plaintiffs, Kenneth Baker, Barbara Baker, Porsche Baker (now known as Camden Baker), and Ashley Baker, a minor, filed a Complaint against Timothy M. Ghidotti, Boris Jurkovic, Reliable Recovery Services, Inc., Jean M. Lindgren, Jesus Vera, Steven Martin, Juan Cabrales, Dennis P. Walsh, and City of Chicago, alleging illegal entry to home, unconstitutional search of home, illegal detention in home, false arrest, failure to investigate, failure to intervene, supervisory liability, and conspiracy pursuant to 42 U.S.C. § 1983, and state supplemental claims of trespass (four counts), intentional infliction of emotional distress, malicious prosecution (two counts), and indemnification.  R.1.

On July 1, 2011, Plaintiffs filed an Amended Complaint, adding Michael A. Flores, Gilbert D. Escamilla, and Daniel F. Doody as Defendants.  R. 4.

On January 18, 2013, by leave of the court, Plaintiffs filed a Second Amended Complaint, reflecting the change of Plaintiff Porsche Baker's name to Camden Baker.  R. 80.

The United States District Court for the Northern District of Illinois had original jurisdiction pursuant to 28 U.S.C. §§ 1343 and 1331 because the action was brought pursuant to the United States Constitution and the laws of the United States, specifically 42 U.S.C. §§ 1983 and 2201, to address deprivations of the civil rights of Plaintiffs through the acts and/or omissions of Defendants committed under color of law.  The district court also had supplemental jurisdiction for the

1

state claims of trespass (four counts), intentional infliction of emotional distress, malicious prosecution (two counts), and indemnification, pursuant to 42 U.S.C. § 1367.

Plaintiffs voluntarily dismissed Defendants Boris Jurkovic, Gilbert D. Escamilla, Daniel F. Doody, and Dennis P. Walsh from the action, and also dismissed the claims of intentional infliction of emotional distress and malicious prosecution of the expired gun registration charge.  R. 87, 206, 209.

In its decision on cross-motions for summary judgment, the district court found for Plaintiff Kenneth Baker and against Defendants Lindgren, Vera, Martin for false arrest.  The district court granted summary judgment to two assisting officers, Defendants Juan M. Cabrales and Michael A. Flores, and dismissed them from the action.  The court also dismissed two state trespass claims and a failure to investigate claim.  Appendix A-5.

This matter proceeded to trial on October 20, 2014.  On October 24, 2014, the jury awarded Plaintiff Kenneth Baker $25,000.00 in compensatory damages on his false arrest claim won at summary judgment against Defendants Steven Martin, Jean M. Lindgren, and Jesus Vera.  The jury also found in favor of Plaintiff Kenneth Baker and awarded him $5,000.00 on his malicious prosecution claim against Defendants Timothy M. Ghidotti, Reliable Recovery Services, Inc., Steven Martin (himself), Steven Martin (as supervisor), Jean M. Lindgren, and City of Chicago.  The jury found for Defendants on the claims of illegal entry to home,

unconstitutional search of home, illegal detention in home, conspiracy, and trespass.  Judgment was entered on October 24, 2014.  Appendix A-6 (judgment).

On November 21, 2014, Defendants moved for judgment as a matter of law on the claim of false arrest and, in the alternative, for a new trial.  R. 221.  The court denied the motion on December 16, 2014.  R. 228.

Defendants filed a Bill of Costs on November 14, 2014.  R. 220.  Plaintiff Kenneth Baker filed a Bill of Costs on November 21, 2014.  R. 223.  Plaintiff filed a Petition for Attorneys' Fees and Costs on January 21, 2015.  R. 231.  The court issued a Memorandum Opinion and Order on the fees petition and bills of costs on April 24, 2015.  Appendix A-1.

On May 22, 2015, Plaintiff filed a Motion to Reconsider the Order of April 24, 2015.  Appendix A-2.  The court summarily denied the motion on May 27, 2015. Appendix A-3 (R. 255 - order), A-4 (R. 266 - transcript of court hearing).

Plaintiffs filed their timely Notice of Appeal on June 2, 2015, of the Memorandum and Order of April 24, 2015.  R. 261.

Pursuant to 28 U.S.C. § 1291, the Seventh Circuit Court of Appeals has appellate jurisdiction to review the final decision of the district court which disposes of all parties' claims.

Dated: June 21, 2016                    /s/ Irene K. Dymkar
                                          Irene K. Dymkar

3

Attorney for Plaintiffs-Appellants:

Irene K. Dymkar
Law Offices of Irene K. Dymkar
53 West Jackson, Suite 733
Chicago, IL 60604-3462
(312) 345-0123

## STATEMENT OF ISSUES

1)     Whether Plaintiff is the prevailing party under Rule 54(d)(1) and entitled to an award of costs where he was granted summary judgment on his claim of false arrest, for which the jury awarded him $25,000.00, and the jury found for him on his claim of malicious prosecution and awarded him $5,000.00.

2)     Whether Defendants should be denied costs under Rule 54(d)(1) where they lost some claims, cannot segregate their costs, and the City of Chicago would have necessarily incurred the same costs to defend the claims it lost as it incurred for the claims it won.

3)     Whether the district court erred in reducing the lodestar for attorneys' fees under 42 U.S.C. § 1988 where Defendants refused in bad faith to discuss settlement or make an offer that would reasonably compensate Plaintiff.

4)     Whether a $30,000.00 verdict is an "excellent result" where Plaintiff received all he could have expected, did not ask the jury for a particular amount, and received in compensation twice as much as Defendants offered just prior to trial, such that a *Hensley* lodestar reduction is inappropriate.

5)     Whether the district court's arithmetic error, double discounting attorney time, should be reversed where time spent on state claims and an unsuccessful federal claim had already been deducted by Plaintiff.

5

6)      Whether the district court erred as a matter of law in not compensating Plaintiff's attorney for time spent on legal work where the district court granted summary judgment for Plaintiff based on much of that legal work.

7)      Whether Defendants should be estopped from objecting to the number of attorney hours expended by Plaintiff's attorney where they did not provide time and work records for the four attorneys they employed.

8)      Whether the district court should have reduced 30 hours from Plaintiff's attorneys' hours based on Defendants' unclear and erroneous objections.

## STATEMENT OF THE CASE

This is the appeal of a judgment entered on April 24, 2015, in a 42 U.S.C. § 1983 civil rights case on Plaintiff Kenneth Baker's petition for attorneys' fees and costs, and on two bills of costs, Plaintiff's and Defendants'.  Appendix A-1 (R. 250). In its Memorandum Opinion and Order (Appendix A-1), the district court ruled on the fee petition (R. 231) of Plaintiff, Kenneth Baker, the prevailing party in a civil rights action, against Defendant Chicago Police Officers Jean M. Lindgren, Jesus Vera, and Steven Martin, and City of Chicago as indemnitor, granting some of the requested fees and denying some of the requested fees.  The court also ruled on Plaintiff Baker's Bill of Costs (R.  223) against Jean M. Lindgren, Jesus Vera, Steven Martin, and City of Chicago, as indemnitor, as well as against Defendant Timothy M. Ghidotti and Reliable Recovery Services, Inc., as employer, denying all costs.  Finally, the court also ruled on the Bill of Costs of Defendants Lindgren, Vera, Martin, and City of Chicago (R. 220) against Plaintiffs Barbara Baker and Camden Baker[1], granting costs.

In its Memorandum Opinion and Order of April 24, 2015, the district court adopted as its factual statement of the case the factual statement it set forth in its Memorandum Opinion and Order issued on cross-motions for summary judgment on

---

[1]   Camden Baker was formerly known as Porsche Baker.  In the course of this lawsuit, this Plaintiff legally changed his name and gender identity.  The Court allowed an amendment of the complaint to reflect this.  R. 81.

March 28, 2014. Appendix A-1 at 2, Appendix A-5 (R. 178). That factual statement is summarized here.

This case began with attempts by Reliable Recovery Services, Inc. (Reliable Recovery) and its employee, Timothy Ghidotti, to repossess a Chevrolet Impala owned by Juanita Horton, the stepdaughter of Plaintiff, Kenneth Baker, and daughter of Plaintiff, Barbara Baker. Appendix A-5 at 1. In the middle of the night on February 1, 2010, Ghidotti arrived at the Baker house looking for the Impala. Even though the car was nowhere to be seen, Ghidotti rang the doorbell. Baker answered the door and Ghidotti asked about Juanita and the Impala. Baker told Ghidotti that Juanita did not live there. Ashley Baker, Mr. Baker's minor daughter, looked out the window and recognized Ghidotti as the man who had been peering through the back door of their home on an earlier date, January 12, 2010. Id. at 3.

Ghidotti claimed that Baker disappeared for a moment and returned holding a gun, although the gun was barely visible. Baker and his family all testified that Baker was *not* holding a gun, and police officers testified that Ghidotti later told them that he did not actually see a gun but just believed, based on Baker's "demeanor," that Baker was holding one. Either way, Baker shouted at Ghidotti to get off his porch, saying such things as "get the hell off my porch" and "don't come back on my property no more." Apparently, Baker also said that if Ghidotti kept coming back looking for the car, he would "have something for him." The court

found that Baker did not point a gun at Ghidotti or make any threatening movements or gestures.  Id. at 3.

Ghidotti returned to his truck and called 911.  He falsely told the dispatcher that he had been threatened by a man with a gun.  Defendants Jean Lindgren and Jesus Vera, both Chicago Police Department officers, arrived at the scene. Lindgren and Vera spoke with Ghidotti, who told them that he thought Baker had been holding a handgun, although he caught only a glimpse of it and could not offer many specifics.  Lindgren and Vera knocked on the front door to determine whether Baker knew anything about the missing vehicle.  More officers arrived at the scene, including Defendant Sergeant Steven Martin.  Id. at 4.

Defendant officers asked Baker for identification, and he presented an Illinois State Police Firearm Owner's Identification ("FOID") Card, although the parties disputed whether the card was valid or expired.  The parties agreed that the police entered the home, but they disputed the circumstances that led them to do so. According to Baker, Martin and another officer came running up the front stairs, pushed Baker out of the way, opened the screen door and inner door, and barged into the Baker house uninvited.  Sergeant Martin said to the contrary that he had asked Baker if he could step inside to get out of the cold, and Baker allowed him in. Lindgren and Vera were a few feet away and could not hear anything, but nonetheless did not hear Baker give them permission to enter.  Plaintiffs testified that Sergeant Martin and Officers Lindgren and Vera corralled the Baker family into one room and began searching the home.  Id. at 4-5.

9

To prevent the police from tearing up his home any further, Baker informed Martin that he did legally own a gun, a shotgun, and that he stored it in his bedroom, under his mattress.  Martin retrieved a shotgun from the bedroom, under the mattress.  Martin then went outside to speak with Ghidotti. At that point, Ghidotti denied that he had seen a shotgun and informed these officers that he did not actually see a gun at all, but believed based on Baker's demeanor and actions that Baker was holding a gun.  The Chicago Police Department "incident report" from that night reflects that Ghidotti told the police that he did not actually see Baker holding a gun.  Sergeant Martin insisted nonetheless that he did not believe that as a police sergeant he himself is supposed to opine whether an alleged victim's story is credible, when determining whether there is probable cause to arrest.  Id. at 5.

Martin next engaged in some back and forth negotiations between Baker and Ghidotti.  When at the car, Martin asked Ghidotti whether he wanted to press charges, and Ghidotti said that he would decline to press charges if Baker told him where the car was.  Martin returned to the house and relayed this proposition to Baker, but Baker either did not know or did not offer any information about the car.  Baker testified that Martin shuttled between him and Ghidotti four times.  Having exhausted the negotiations, when Martin came back to the house after talking to Ghidotti for the last time, Martin arrested Baker for aggravated assault.  Id. at 5-6.

Defendant officers were in the home for at least twenty minutes, if not longer.  Plaintiffs Barbara Baker, Camden Baker, and minor Ashley Baker testified

that they were detained in their living room during this time.  The police took Baker to the police station, where Lindgren and Vera inventoried the shotgun and were told by "someone at the gun desk" that the shotgun was not registered properly.  Lindgren testified that when they arrested Baker, they did not have any reason to think that the gun was not registered properly.  At the station, however, a charge of having an expired gun registration was added. Id. at 6.

Baker attended nine court hearings in two different courts before the charges of both aggravated assault and possession of a firearm with an expired registration were finally dismissed.  Id. at 6.

### Filing of Complaint, Voluntary Dismissal of Parties and Claims

Plaintiffs filed their Complaint on June 20, 2011.  R. 1.  On leave of the court, they filed an Amended Complaint on January 18, 2013.  R. 80.  Subsequently, Plaintiffs voluntarily dismissed Defendants Boris Jurkovic, Gilbert D. Escamilla, Daniel F. Doody, and Dennis P. Walsh from the action, and also dismissed the claims of intentional infliction of emotional distress and malicious prosecution of the expired gun registration charge.  R. 87, 206.

### Cross-Motions for Summary Judgment

On the parties' cross-motions for summary judgment, the district court granted summary judgment to Plaintiff Kenneth Baker and against Defendants Lindgren, Vera, and Martin for false arrest, ruling that there was no probable cause to arrest Plaintiff.  Appendix A-5 at 10-14.  The district court granted summary judgment to two assisting officers, Defendants Juan M. Cabrales and Michael A.

11

Flores, and dismissed them from the action.  The court also dismissed two State of
Illinois trespass claims and a failure to investigate claim.  Appendix A-1 at 24.

### Plaintiffs' Numerous Attempts to Settle the Case

Numerous times before extensive discovery was underway, and even after
Plaintiff won partial summary judgment, Plaintiffs' attorneys asked the attorneys
for the City of Chicago, Steven Martin, Jean M. Lindgren, and Jesus Vera to settle
this case.  Plaintiffs' counsel tried to interest the City attorneys in settlement on
numerous dates, intentionally pursing defense counsel after court on the following
dates, to try to persuade the named attorneys to engage in negotiations:  July 19,
2011 (Caroline Fronczak), September 7, 2011 (Brandon J. Gibson), October 13, 2011
(Brandon J. Gibson), October 19, 2011 (Caroline Fronczak), December 21, 2011
(Brandon J. Gibson), February 8, 2012 (Brandon Gibson), and May 23, 2012
(Caroline Fronczak).  R. 231 at 4.  Defendants do not dispute this in their response
to Plaintiff's fee petition.  R. 244.

Each time the subject was broached, the City attorneys said they were
confident the officers had probable cause and had done nothing wrong, and that
they were not interested in settling the case.  Once the Reliable Recovery
Defendants appeared in this case, on February 21, 2012, their counsel, Ruth
Goldwater McCoy, repeatedly expressed an interest in settling.  Plaintiffs' counsel
stated many times thereafter to both Ms. McCoy and the City attorneys that the
settlement had to be global, not piecemeal.  The City attorneys, however, remained
adamant that they had probable cause for the arrest and that if anyone was liable,

12

it was the repossession man, Timothy Ghidotti, not the police officers.  The City Defendants offered nothing.  R. 231 at 4-5.  Defendants did not dispute these allegations in their response to Plaintiff's fee petition.  R. 244.

Plaintiffs' counsel had brought to the City attorneys' attention the problems with their claim of probable cause, in that the police report clearly indicated that "Upon R/O's [reporting officers'] and BT 820R [Sergeant Martin's beat] arrival, victim [Ghidotti] stated that he didn't actually see the weapon but by offender's demeanor and actions, he believed he was holding a gun." R. 231 at 4-5.  Plaintiffs' counsel also argued that the City attorneys' refusal to negotiate a settlement was contrary to the Northern District of Illinois Standing Order Establishing Pretrial Procedure (adopted pursuant to General Order of 26 June 1985; amended pursuant to General Orders of 27 November 1991 and 9 March 1995), which directs all counsel and their parties "to undertake a good faith effort to settle a case that includes a thorough exploration of the prospects of settlement."  R. 231 at 5. Defendants did not dispute this in their response to Plaintiff's fee petition.  R. 244.

When on March 28, 2014, Plaintiff Kenneth Baker was granted partial summary judgment on liability for the false arrest against the City officers, *seven months before trial,* Plaintiffs' counsel again approached the City attorneys about settlement, this time with the condition that attorneys' fees, which at that time exceeded $236,000.00 (over 478 attorney hours expended), and costs, which were over $7,000, be negotiated separately from the award for Plaintiffs.  The City attorneys insisted, however, that they were going to file a motion for the district

13

court to reconsider its ruling, which they did and lost. The City rebuffed Plaintiffs' argument that if the jury awarded Plaintiff Baker damages on the claim for which liability by Defendants was established at summary judgment, Plaintiff would be a prevailing party under 42 U.S.C. § 1988, entitled to attorneys' fees. R. 231 at 5. Defendants did not dispute these allegations in their response to Plaintiff's fee petition. R. 244.

Two weeks prior to trial, on October 6, 2014, after all the work on the pre-trial order and motions *in limine* was well under way, the City attorneys made their only offer in the case - $100,000.00, inclusive of attorneys' fees and costs. This was inadequate at that late date because, in addition to the necessity of any compensation to Plaintiffs for their damages, by October 6, 2014, Plaintiffs' attorneys' fees exceeded $271,000.00 (over 550.0 attorney hours expended by three attorneys). R. 197 at 3; R. 231 at 5. The offer was declined.

## Jury Trial and Verdict

Following almost three-and-a-half years of litigation and a five-day jury trial commencing on October 20, 2014, and ending on October 24, 2014, the jury awarded Plaintiff Kenneth Baker $25,000.00 in compensatory damages on his false arrest claim won at summary judgment against Defendants Steven Martin, Jean M. Lindgren, and Jesus Vera. The jury also found in favor of Plaintiff Kenneth Baker and awarded him $5,000.00 on his malicious prosecution claim against Defendants Timothy M. Ghidotti, Reliable Recovery, Steven Martin (himself), Steven Martin (as supervisor), Jean M. Lindgren, and City of Chicago. Plaintiffs did not ask the jury

14

to award any particular amount, but left the issue of damages totally up to the jury. The jury found for Defendants on the claims of illegal entry, illegal search, illegal detention, conspiracy, and trespass.  Appendix A-6 (R. 216 - judgment).

### Bills of Costs and Fees Petition

Plaintiff Kenneth Baker filed a Bill of Costs for $7,574.43, against Defendants Martin, Vera, Lindgren, City of Chicago, Ghidotti, and Reliable Recovery.  R. 223.  Defendants Martin, Vera, Lindgren, and City of Chicago filed a Bill of Costs against Plaintiffs Barbara Baker and Camden Baker for $6,714.60.  R. 220.  Ghidotti and Reliable Recovery did not file a Bill of Costs.

As a result of mediation through the Seventh Circuit Settlement Conference Program, Defendants Ghidotti and Reliable Recovery agreed to pay $3,500.00 towards Plaintiffs' costs, and Plaintiffs accepted that offer.  Ghidotti and Reliable Recovery are to be dismissed from this appeal.

Plaintiff Kenneth Baker filed a Petition for Attorneys' Fees and Costs, with exhibits.  R. 231.  Plaintiff requested the following fees:

| | | | |
|---|---|---|---|
| Irene K. Dymkar | 699.9 adjusted[2] hours | $495/hour | $346,450.50 |
| Torreya L. Hamilton | 156.2 hours | $450/hour | $ 70,290.00 |
| Kevin T. Turkcan | 30.5 hours | $230/hour | $  7,015.00 |

---

[2]  The hours were voluntarily adjusted by Plaintiff from 784.1 attorney hours to 699.9 attorney hours, and from 206.6 paralegal hours for Paralegal I to 179.0 paralegal hours.  Plaintiff sought to discount legal and paralegal work performed solely to prosecute claims against Defendants Ghidotti and Reliable Recovery, in that Plaintiff prevailed against those Defendants only on an Illinois state claim, malicious prosecution, for which he could not claim attorneys' fees.  R 231 at 8, 231-1, 231-4.

15

| | | | | |
|---|---|---|---|---|
| Paralegal I | 179.0 adjusted[2] hours | | | |
| Paralegal II | 18.5 hours | | | |
| Paralegal III | 2.4 hours | | | |
| Paralegal IV | 12.2 hours | | | |
| | 212.1 hours total | $125/hour | $ 26,512.50 | |
| | | TOTAL | $450,268.00 | |

Defendants Lindgren, Vera, Martin, and City of Chicago filed a Response to the Petition for Attorneys' Fees and Costs.  R. 244.  Plaintiff filed a Reply.  R. 245.

## Court's Memorandum Opinion and Order

The district court issued a Memorandum Opinion and Order.  Appendix A-1. Despite having won summary judgment on liability and a $30,000.00 award at trial, the court denied all costs to Plaintiff, the entire $7,574.43, saying that Plaintiff had not prevailed on a "substantial part" of the litigation.  Appendix A-1 at 20-21.  On the other hand, the court granted all costs (after a small modification) to Defendants, that is, $6,414.80 of the $6,714.60 requested.  Id. at 21-23.

The district court granted attorney Dymkar an hourly rate of $425 (not the requested rate of $495), attorney Hamilton the requested hourly rate of $450, attorney Turkcan the hourly rate of $200 (not the requested rate of $230), and the paralegal hourly rate of $125, which was not contested by Defendants. Appendix A-1 at 5 - 11.

The district court subtracted from the total attorney hours the following:

128.5 hours for legal work it ruled attorney Dymkar had performed on claims against Timothy Ghidotti, without crediting the 84.2 hours Plaintiff had already voluntarily discounted for that work. Id. at 12.

---

[2]  See footnote 2 above, on page 15.

9.9 hours for legal work that it ruled could have been performed by a paralegal, granting $0 for the work.  Id. at 12-13.

30.0 lump sum number of hours for legal work that it did not specify, as vague, unnecessary, or excessive.  Id. at 12-14.

The district court computed the lodestar as follows:

| | | | |
|---|---|---|---|
| Irene K. Dymkar | 531.5 hours | $425/hour | $225,887.50 total |
| Torreya L. Hamilton | 156.2 hours | $450/hour | $ 70,290.00 total |
| Kevin T. Turkcan | 30.5 hours | $200/hour | $  6,100.00 total |
| Paralegals | 212.1 hours | $125/hour | $ 26,512.50 total |
| | | TOTAL | $328,790.00 |

Id. at 14.

The district court then slashed the lodestar by 50%, stating that Plaintiff's verdict was not "an excellent result."  Id. at 14.  The adjusted lodestar and judgment for attorneys' fees thus was computed as $164,395.00.

Plaintiff moved for reconsideration, arguing that:

· the hourly rates of attorneys Dymkar and Turkcan should not have been reduced.

· the arithmetic on the discount of attorney hours for work on claims against Ghidotti was wrong, in that the district court had erroneously double-discounted the hours, plus the district court had excluded hours of legal work that was necessary for the federal claim against the police officers.

· the legal work reduced to $0 compensation was not work that a paralegal could do and, nevertheless, should not have yielded no compensation.

· the 30 billing hours discounted as vague, unnecessary, or excessive were not vague, unnecessary, or excessive, and included hours already double-deducted as Ghidotti hours.

17

- the lodestar should not have be adjusted downward 50% because work performed on the unsuccessful claims would have been performed even if the claims had not been in the case.

- Plaintiff was entitled to costs, and the City of Chicago Defendants were not.

Appendix A-2 (Motion to Reconsider).

The district court summarily denied the motion.  Appendix A-3 (order), A-4 (transcript of court hearing).

Plaintiffs filed their timely notice of appeal on June 2, 2015.  R. 261.

# SUMMARY OF ARGUMENT

1)      Plaintiff should have been granted his Bill of Costs of $7,574.43 pursuant to Rule 54(d)(1) because he was the prevailing party.  He won his summary judgment motion on liability against Defendants Lindgren, Vera, and Martin for the false arrest claim, for which the jury awarded him $25,000.00 in compensatory damage.  The jury found for Plaintiff against Martin ( individually and as a supervisor), Lindgren, City of Chicago, Ghidotti, and Reliable Recovery Services, Inc., on the malicious prosecution claim, for which the jury awarded him $5,000.00 in compensatory damages.

2)      Defendants should have been denied their Bill of Costs of $6,414.80 against Barbara Baker and Camden Baker, because there are no City Defendants in the present case who proceeded to trial who were not found liable on some claim.  Also, the costs incurred by the City of Chicago would have been incurred even if Barbara Baker and Camden Baker had not been Plaintiffs or claims arising from the entry and search of the home had not been brought.  Defendants were jointly represented in this matter and jointly incurred expenses.  The City of Chicago benefitted from the use of the material it obtained, most notably the deposition transcripts, and because Defendants cannot segregate their costs by the claims they won, they cannot claim costs.

3)      The district court's 50% reduction of the lodestar for attorneys' fees was error, and Defendants should have been estopped from requesting a reduction.

19

Defendants consistently and adamantly refused to discuss settlement, thus forcing Plaintiff to proceed to trial in spite of the liability determination in his favor on his false arrest claim. An eleventh-hour offer by Defendants was not a reasonable amount to compensate Plaintiff and pay for accrued attorneys' fees and costs.

4)      The district court erred in applying the *Hensley* factors and reducing the lodestar by 50%. It was error for the court to find that a $30,000.00 verdict was not an "excellent result." Plaintiff's claim was that he was falsely arrested in his home on two misdemeanor charges later dismissed. Plaintiff received all he could have expected from the jury. Plaintiff did not "aim high and fall short." His result was successful in that the jury award plus the attorneys' fees award together were almost twice as much as what Defendants offered just before trial.

5)      The district court made an arithmetic error that resulted in the double discount attorney hours already voluntarily deducted by Plaintiff for legal work to prosecute successful state claim and unsuccessful federal claim. The court should not have deducted 128.5 hours *in addition to* the 84.2 hours already deducted.

4)      Additional attorney hours for legal work to prosecute successful state claim and unsuccessful federal claim against Defendant Ghidotti beyond the 84.2 hours that had already been voluntarily deducted from Plaintiff's fee petition, should not have been discounted by the court, because the legal work was necessary to prosecute the federal claim on which Plaintiff prevailed and the district court granted summary judgment for Plaintiff based on much of that legal work.

5)     Defendants should be estopped from objecting to the number of Plaintiff's hours where the City of Chicago employed four attorneys in this case and did not provide time and work records for those attorneys.

6)     Defendants should be estopped from objecting to the number of Plaintiff's hours because the presentation of their objections is so  disorganized, confusing, and self-contradictory that the objections should be stricken**.**

7)     The court should not have deducted 9.9 hours of attorney time expended to review the accuracy and propriety of legal documents drafted by paralegals, in that paralegals cannot practice law and cannot issue subpoenas unless such documents are reviewed by an attorney.  It is a savings of attorney time for a paralegal to perform the initial drafts of legal documents, but the attorney review is indispensable.  Even assuming the district court were correct in its determination that attorney review of paralegal work is also paralegal work, the court should have granted the paralegal rate.

8)     It was error to deduct a lump sum of 30 hours as unnecessary, vague, and excessive.  The Defendants objected to necessary and reasonable time entries with vague and meritless objections. The district court abused its discretion by broadly cutting reasonable hours.

# ARGUMENT

## I.  The district court should have granted Plaintiff's Bill of Costs and denied Defendants' Bill of Costs.

### A.  Plaintiff should be granted his Bill of Costs as the prevailing party.

Whether a litigant is a "prevailing party" within the meaning of Rule 54(d) constitutes a question of law warranting *de novo* review.  *Republic Tobacco Co. v. N. Atl. Trading Co.,* 481 F.3d 442, 446 (7th Cir. 2007), citing *Dattner v. Conagra Foods, Inc.*, 458 F.3d 98, 100 (2d Cir. 2006); *Dupuy v. Samuels*, 423 F.3d 714, 718 (7th Cir. 2005).

Federal Rule of Civil Procedure 54(d)(1) states: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  The rule creates "a strong presumption" that the prevailing party will be awarded those costs of litigation identified in 28 U.S.C. § 1920.  *Montanez v. Simon,* 755 F.3d 547, 557 (7th Cir. 2014), citing *U.S. Neurosurgical, Inc. v. City of Chicago,* 572 F.3d 325, 333 (7th Cir. 2009); *Walker v. City of Chicago*, 513 Fed. Appx. 593, 597 (7th Cir. 2013).

The question of law here is the definition of the "prevailing party."  Plaintiff Kenneth Baker established liability through his summary judgment motion against Defendants Lindgren, Vera, and Martin for false arrest, based on the lack of probable cause to arrest Plaintiff.  Appendix A-5 at 10-14.  The jury found liability against Defendants Martin (for his actions individually and as a supervisor),

22

Lindgren, City of Chicago, Ghidotti, and Reliable Recovery on the malicious prosecution claim. The jury awarded Plaintiff Baker $25,000.00 on the false arrest claim and $5,000 on the malicious prosecution claim. Appendix A-6 (judgment). Plaintiff submits therefore that he was the prevailing party.

The court is to determine who the prevailing party is not at each stage of the litigation, but instead when the controversy is "finally decided." *Republic Tobacco Co.,* 481 F.3d at 447("[A] district court's award of costs should not depend on who wins the various battles preceding final judgment"). A party prevails for purposes of Rule 54(d) when a final judgment awards it substantial relief. *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 573 F.3d 523, 525 (7th Cir. 2009).

When one party gets substantial relief it "prevails," even if the party does not win on every claim. *Slane v. Mariah Boats, Inc.*, 164 F.3d 1065, 1068 (7th Cir. 1999). In *Slane,* where Plaintiff won two claims and Defendant won two claims and Plaintiff was awarded $225,000 from the jury, the court stated, "By any definition, he [plaintiff] won the battle." *Id.*

The district court here erred in its interpretation of "substantial relief" as meaning "winning the most claims." *See* Appendix A-1 at 20-21. However, Kenneth Baker alleged Fourth Amendment violations and he prevailed on Fourth Amendment violations. The jury awarded him $25,000.00 for false arrest and $5,000.00 for malicious prosecution. That amount is substantial, given the facts of

23

the case and the extent of Plaintiff's damages.  It is not nominal.  It is not *de minimus.*

The Seventh Circuit has recognized only two situations in which the denial of costs might be warranted: the first involves misconduct of the party seeking costs, and the second involves a pragmatic exercise of discretion to deny or reduce a costs order if the losing party is indigent.  *See Walker*, 513 Fed. Appx. at 597; *Mother and Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003).  Neither of those two exceptions applies here.  Unless there is some exceptional reason for not awarding costs to the prevailing party, the court must award costs.  *Walker,* 513 Fed. Appx. at 597.

Plaintiff's costs of $7,574.43 should be awarded to Plaintiff as the prevailing party.

### B.   Defendants are not the prevailing party because the exact same Defendants who won claims also lost claims, Defendants cannot segregate their costs, and the City of Chicago would have necessarily incurred the same costs to defend the claims it lost.

Once again, whether a litigant is a "prevailing party" within the meaning of Rule 54(d) constitutes a question of law warranting *de novo* review.  *Republic ,* 481 F.3d at 446, citing *Dattner*, 458 F.3d at 100; *Dupuy*, 423 F.3d at 718.

Defendants Martin, Vera, Lindgren, and City of Chicago filed a Bill of Costs against Plaintiffs Barbara Baker and Camden Baker for $6,714.60.  R. 220.  They claim that because the jury found for Defendants on the claims of illegal entry, illegal search, illegal detention, conspiracy, and trespass, they are entitled to costs

as the prevailing party, even though the same Defendants were found liable on the false arrest and malicious prosecution claims against Plaintiff Kenneth Baker. Defendants Ghidotti and Reliable Recovery did not file a bill of costs.

Plaintiffs maintain that Defendants are not the prevailing party, because the exact same Defendants who won claims also lost claims, because Defendants cannot segregate their costs, and because the City of Chicago would have necessarily incurred these costs to defend the claims it lost.

The district court defined this as a "mixed outcome" case, citing *Gavoni v. Dobbs House, Inc.,* 164 F.3d 1071, 1075 (7th Cir. 1999) for the broad discretion the court has in awarding reasonable costs. The court granted Defendants Martin, Vera, Lindgren, and City of Chicago their costs. Appendix A-1 at 20. Three observations and distinctions, however, are important here: First, the exact same Defendants who won claims brought by Plaintiffs (Martin, Vera, Lindgren, and City of Chicago) also lost claims brought by Plaintiff Kenneth Baker. In other words, unlike in *Gonzalez v. City of Elgin*, 2010 WL 4636638 *2 (N.D. Ill. Nov. 8, 2010), cited by the district court, there are no City Defendants in the present case who proceeded to trial who were not found liable on some claim.

Second, as the district court correctly held in its earlier case of *Gilfand v. Planey*, 2012 WL 5845530 *6 (N.D. Ill. Nov. 19, 2012), where defendants cannot segregate their costs by the claims they won, they cannot claim costs. In other words, because the facts and claims in the present case are interrelated,

25

Defendants Martin, Vera, Lindgren, and the City of Chicago have not and, in fact, cannot state which costs are attributable solely to the claims which arose from the illegal entry and search of the home (which they won), as opposed to the claim of the arrest of Kenneth Baker that took place after Defendants entered the home and the claim of malicious prosecution (which they lost).

This may be best illustrated by looking at Defendants' Bill of Costs. Defendants sought $5,444.64 in transcription fees. R. 220-1 at 4. They ordered deposition transcripts for 13 parties and witnesses, totaling $4,391.39, all of which they would have ordered if Kenneth Baker had been the only party and false arrest and malicious prosecution had been the only claims. They ordered six short court transcripts, totaling $63.00, all of which they would have ordered if Kenneth Baker had been the only party and false arrest and malicious prosecution had been the only claims. Id. They ordered the trial transcript during trial, which cost $990.25; not only was this transcript for the convenience of Defendants and not necessary (*see* 28 U.S.C. § 1920(2), allowing "fees for printed or electronically recorded transcripts necessarily obtained for use in the case"), but once again, Defendants would have ordered this transcript if Kenneth Baker had been the only party and false arrest and malicious prosecution had been the only claims. Id. Likewise, Defendants would have incurred the $130.00 in subpoena witness and service fees, the $615.00 in copy costs, and the $485.96 for obtaining employment and education records whether there were other Plaintiffs or other claims, or not. R. 220-1 at 3, 5-20.

In this district court's earlier decision in *Gilfand*, the court cited *Edwards v. Rogowski,* 2009 WL 742871 (N.D. Ill. March 18, 2009) for the holding that defendant should be denied costs where he failed to show that "the defendants would not have incurred the same expenses had [the defendant not found liable] not been named as a defendant." The district court also cited *Shatner v. Cowan,* 2009 WL 5210528 *1-2 (S.D. Ill. Dec. 28, 2009) for the holding that "the liable Defendants benefitted from the use of all deposition transcripts and would have incurred these costs whether or not [the Plaintiff] prevailed against the dismissed Defendants," and further, that "[a]ll of the Defendants - dismissed or liable - were jointly represented in this matter and they jointly incurred expenses."

The third point thus is the most important. This is an even stronger case than *Gilfand, Edwards*, or *Shatner.* The City of Chicago here defended all of the City Defendants. All City Defendants who proceeded to trial were found liable on at least one claim. Defendants were "jointly represented in this matter and they jointly incurred expenses." The City of Chicago benefitted from the use of the material it obtained, most notably the deposition transcripts, and would have incurred those costs whether the claims arising from the entry and search had been brought or not. The costs incurred by the City of Chicago thus would have been incurred by the City of Chicago whether Barbara Baker and Camden Baker were also Plaintiffs, or not, and whether the any Plaintiff lost any claims.

By statute, the City of Chicago indemnifies its employees for damages and "associated attorney's fees and costs." 745 ILCS 10/9-102. The City financed this

27

whole lawsuit for all the City Defendants.  It makes no sense for the City to pay Plaintiff's costs because he is the prevailing party against the City's employees, and then receive costs back for the same witnesses' depositions, records, and subpoenas against Plaintiffs because those same City employees won some of the claims against some of the Plaintiffs.

The district court's stance would mean that if even one plaintiff lost even one claim against a City employee, that would wipe out any recovery of costs by all plaintiffs who shared the same attorney who advanced all their costs.  A prevailing plaintiff thus would almost never be awarded costs.  This flies in the face of what it means to be a prevailing party.

Plaintiff Kenneth Baker won an award of $30,000.00, which the City of Chicago paid.[3]  To borrow the statement of the court in *Slane,* "By any definition, [Plaintiff] won the battle." 164 F.3d at 1068.

This Court should deny costs to Defendants, that is, to the City of Chicago.

## II. The district court erred in slashing the lodestar by 50%.

### A.  Defendants should have been estopped from requesting a lodestar reduction where Defendants refused to discuss settlement over the entire course of litigation and made an offer just before trial that did not adequately compensate Plaintiff nor cover his attorneys' fees and costs.

The legal effect of Defendants' undisputed refusal to negotiate a settlement in this case, and forcing Plaintiffs to trial, on the propriety of the court's application of

---

[3]  Reliable Recovery paid one-half of the malicious prosecution award, that is, one-half of $5,000.

the *Hensley* factor of "results obtained" should be reviewed *de novo. Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983).  Any legal analysis that is part of the district court's decision for attorneys' fees is reviewed *de novo.  Pickett v. Sheridan Health Care Ctr.*, 813 F.3d 640, 645 (7th Cir. 2016).

It was error for district court to slash the lodestar by 50%, and Defendants should be estopped from requesting a reduction, where Defendants refused to discuss settlement over the entire course of the litigation and made an offer made at the brink of trial that did not adequately compensate Plaintiff nor cover his attorneys' fees and costs.

The district court did not acknowledge nor give adequate legal weight to Plaintiff's position that he was forced to take this case to trial because of Defendants' failure to settle early in the case, and thus the resulting loss of some claims should not be decisive on the issue of attorneys' fees.  Appendix A-1 at 15-16. The court in its decision did not debunk Defendants' argument in response to the fee petition that the last minute $100,000 offer was "a reason to reduce Plaintiff's lodestar because it was a substantial offer that greatly exceeded the amount ultimately recovered at trial."  Id. at 16.

Nowhere in their response to the fee petition do Defendants dispute the numerous attempts by Plaintiffs' counsel in 2011, three years before trial, to settle this case, before substantial attorney time had been expended and expenses incurred.  They also do not dispute the attempt by Plaintiffs' counsel to settle this case after Plaintiff Baker had been granted summary judgment, seven months

29

before trial.  R. 231 at 4-5, R. 244.  At that time, Plaintiffs' counsel asked that

attorneys' fees, which at that time exceeded $236,000.00 (over 478 attorney hours

expended), and costs, which were over $7,000, be negotiated separately from the

award for Plaintiffs.  R. 231 at 5.

Two weeks prior to trial, on October 6, 2014, after all the work on the

pre-trial order and motions *in limine* was well under way, the City attorneys made

their only offer in the case - $100,000.00, inclusive of attorneys' fees and costs.  This

was inadequate at that late date because, in addition to the necessity of any

compensation to Plaintiffs for their damages, by October 6, 2014, Plaintiffs'

attorneys' fees exceeded $271,000.00 (over 550 attorney hours expended by three

attorneys).  R. 231 at 5.  The offer was declined.

Plaintiff was forced to trial because Defendants refused to engage in

reasonable settlement negotiations.  Had Plaintiff Kenneth Baker not proceeded to

trial, he would have received $0 for having his constitutional rights violated,

despite the summary judgment decision.  Even if Plaintiff had accepted the City's

offer of $100,000.00, two weeks before trial (when over 550 attorney hours had

already been expended), Plaintiff would still have received $0, in that the

$100,000.00 did not cover Plaintiff's attorneys' fees and costs.

This is not a case then like *Richardson v. City of Chicago,* 740 F.3d 1099,

1103 (7th Cir. 2014), where plaintiffs rejected defendants' settlement offers and this

Court strongly applied the "results obtained" factor from *Hensley.*  Here, because of

their bad faith failure to negotiate, Defendants should be estopped from arguing

that there should be a lodestar reduction.  The district court should be precluded

from applying the "results obtained" factor where a plaintiff has no choice but to go

to trial.

The district court was correct in its earlier decision in *Gilfand,* 2012 WL

5845530 at *16, when it said:

> While the Court recognizes that this settlement award is clearly great
> than the jury's compensatory and punitive damage award, the Court
> does take into account that $34,000 plus attorneys' fees "could produce
> a higher total" than $100,000 without attorneys' fees.

When evaluating a late offer, the accrued attorneys' fees and costs have to be

taken into consideration.  By analogy, if Defendants had made a Rule 68 offer of

judgment in the amount of $100,000, two weeks before trial, that amount would

have had to include the attorneys' fees to be considered reasonable.  *Marek v.*

*Chesny*, 473 U.S. 1, 7 (1985) ("At the time an offer is made, the plaintiff knows the

amount in damages caused by the challenged conduct.  The plaintiff also knows, or

can ascertain, the costs then accrued.  A reasonable determination whether to

accept the offer can be made by simply adding these two figures and comparing the

sum to the amount offered.").

According to the Supreme Court and the Seventh Circuit, the lodestar is the

presumptive fee.  *E.g., Perdue v. Kenny A.,* 559 U.S. 542, 554 (2010) (lodestar

calculation is presumptively reasonable, and fees may be adjusted only in "those

rare circumstances in which the lodestar does not adequately take into account a

factor that may properly be considered in determining a reasonable fee"); *Johnson*

31

*v. GDF, Inc. d/b/a Domino's Pizza,* 668 F.3d 927, 929 (7th Cir. 2012) ("In limited circumstances, once calculated, the lodestar amount may be adjusted").

The Supreme Court and Seventh Circuit have held that the law does not award less than the lodestar simply because plaintiff did not win every possible legal claim against every possible defendant. *See Hensley,* 461 U.S. at 435; *Lenard v. Argento*, 808 F.2d 1242, 1245–46 (7th Cir. 1987). That is simply not the way that Section 1988 operates.

It was error for district court to slash the lodestar by 50%. Because of Defendants' bad faith refusal to discuss settlement over the entire course of the litigation, Plaintiff should be awarded the full lodestar.

### B.   The $30,000.00 verdict was an "excellent result" in a case where Plaintiff received all he could have expected, did not ask jury for any particular amount, and received in compensation twice as much as what Defendants offered just prior to trial.

Any legal analysis that is part of the district court's decision for attorneys' fees is reviewed *de novo. Pickett.*, 813 F.3d at, 645.

The district court applied the wrong standard. The court held: "Plaintiff did not receive an "excellent result" when he lost four of the six claims that went to trial and took home a judgment of $30,000.00." Appendix A-1 at 16. The court said that the award of $30,000.00 "is more than nominal, 'but certainly not substantial.'" Id. at 20.

This was not a million dollar case, however, and Plaintiff did not ask for a million dollars. In fact, Plaintiff's counsel did not ask the jury for any specific

amount at all.  Plaintiff was arrested in his home and charged with two

misdemeanor charges, which were later dismissed.  Given those facts, a jury award

of $30,000.00 does constitute a substantial success.  Plaintiff did not expect any

more than what he received.

In *Hyde v. Small,* 123 F.3d 583, 585 (7th Cir. 1997), this Court held:

> When the civil rights plaintiff aims small, and obtains an amount that
> is significant in relation to that aim (it need not reach the target), he is
> prima facie entitled to an award of fees even if the case establishes no
> precedent. There is no minimum amount in controversy required in
> civil rights cases and no federal small claims court, so it is no abuse of
> the federal district courts to bring the kind of suit that Hyde did, and
> therefore he should not be disqualified from an award of attorneys' fees
> without which such a case would never be brought.

Plaintiff was not "aiming high and fell short."  This was simply a smaller

claim that was tried accordingly.  *Id.  Cf. Aponte v. City of Chicago*, 728 F.3d 724

(7th Cir. 2013).

The court here erroneously applied a proportionality standard.  There has

long been no proportionality requirement to §1988.  *See Grosvenor v. Brienen*, 801

F.2d 944, 946 (7th Cir. 1986) ("The Supreme Court has rejected the proposition that

fee awards under §1988 should necessarily be proportionate to the amount of

damages a civil rights plaintiff actually recovers because such a rule 'would

seriously undermine Congress' purpose in enacting §1988.'") (citations omitted);

*Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863 (7th Cir. 1995) ("In determining the

reasonableness of attorney's fees, this court has rejected the notion that the fees

must be calculated proportionally to damages. . . As we understand §1988's

provision for allowing a 'reasonable attorney's fee,' it contemplates reasonable compensation, in light of all of the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less."); *Littlefield v. McGuffey*, 954 F.2d 1337, 1350-51 (7th Cir. 1992) ("The size of the damage award, however, is not the gauge of a plaintiff's victory").

Of significance, Plaintiff was almost twice as successful as he would have been if he had taken the eleventh hour offer made by Defendants. Defendants offered Plaintiffs $100,000.00 two weeks before trial. Plaintiff obtained awards of $25,000.00 and $5,000.00 from the jury, plus an attorneys' fee award of $164,395.00 from the court. His total compensation thus was $194,395.00, almost twice as much as the $100,000.00 offer, even without any possible upward modification by this Court through this appeal.

The court seemed to adopt Defendants' argument that "Plaintiff did not actually prevail on any of his federal claims at trial." Appendix A-1 at 15. Plaintiff, however, was forced to trial because Defendants refused to engage in reasonable settlement negotiations. Had Plaintiff Kenneth Baker not proceeded to trial, he would have received $0 for having his constitutional rights violated, despite the summary judgment decision in his favor. Liability without a damages determination is only half a loaf. Mr. Baker thus did prevail on a federal claim at trial.

The court was not correct in holding "it is not clear that these claims [false arrest and malicious prosecution] were the central or most important claims at

34

issue in the lawsuit.  Counsel did not prevail on any of the core claims shared among all four Plaintiffs: illegal entry, illegal search, conspiracy, and trespass." Appendix A-1 at 16.  To the contrary, the false arrest of the patriarch of the Baker family, who was humiliated and taken out in handcuffs in the middle of the night from his home *was* central to the case.  Plaintiffs claimed that the police were in their home illegally, searched their home illegally, and detained them for 20 minutes illegally, but the main complaint was the arrest and treatment of Kenneth Baker.

Moreover, all of Plaintiffs' claims revolved around the same nucleus of facts. There was not a single attorney hour spent on one claim or one party that would not also have been necessary for the successful claims against the losing Defendants. Kenneth Baker's false arrest took place after the police barged into the Baker home and searched the home.  The facts of the false arrest are not separable from the facts of the police entry and search.  Whether Plaintiffs Barbara Baker, Camden Baker, and Ashley Baker prevailed at trial or not, and whether Timothy Ghidotti was found liable or not, they were all critical witnesses who had to be deposed and who had to be called to the stand at trial.

Where the claims all concern the same common nucleus of facts, it does not matter that some of the different legal claims may have dropped out along the way. *Dunning*,  62 F.3d at 872 ("Because of the interrelated nature of the two claims, her attorneys had to prepare for the 'litigation as a whole'"), quoting *City of Riverside v. Rivera*, 477 U.S. 561, 569 (1986).  Just as the district court held in *Gilfand,* the

35

unsuccessful claims here "were sufficiently related to the claims in which Plaintiffs were successful." *Gilfand*, 2012 WL 5845530 at *10; *see Jaffee v. Redmond,* 142 F.3d 409, 413 (7th Cir. 1998) ("*Hensley* makes clear that when claims are interrelated, as is often the case in civil rights litigation, time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other claims"); *Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997) (disapproving of a "meat-axe approach" to reducing lodestar fees, and stating that "[p]ercentage reductions of the kind the district court used are not a good way to make adjustments for partial success").

It was error for the court to reduce the lodestar by 50%. Plaintiff is entitled to the full lodestar.

## III.   The district court erred in deducting Plaintiff's attorneys' hours, and Defendants' objections to Plaintiff's attorneys' hours should be stricken.

### A.   The court committed an arithmetic error in the double discount of 84.2 hours Plaintiff had already voluntarily discounted for work on Reliable Recovery Defendant claims.

The question of whether an objective, arithmetic error exists and the district court's decision should therefore be reversed is a question of law subject to *de novo* review. *See generally Beverly v. Abbott Laboratories,* 817 F.3d 328, 332-33 (7th Cir. March 16, 2016).

The jury found for Defendant Ghidotti, the repossession man and Reliable Recovery employee, on the federal conspiracy claim. It found for Plaintiff Kenneth Baker and against Ghidotti and Reliable Recovery on his Illinois state malicious

36

prosecution claim, and for Ghidotti and Reliable Recovery on the Illinois state trespass claim. Attorneys fees under 42 U.S.C. § 1988 may be awarded only on successful federal claims. *See Richardson,* 740 F.3d at 1102. Therefore, Plaintiff cannot claim attorneys' fees against Ghidotti or Reliable Recovery.

In his fee petition, Plaintiff Baker informed the district court that he was voluntarily deducting 84.2 hours for legal work performed exclusively on the Ghidotti and Reliable Recovery claims, reducing attorney Irene Dymkar's hours from 784.1 to 699.9. R. 231 at 7, fn 2; R. 231 at 8; R. 231-1 (spreadsheet setting forth deductions). Plaintiff also voluntarily discounted 27.6 paralegal hours. R. 231-4. Defendants argued nonetheless in their response that 128.5 hours, not 84.2 hours, should have been deducted. R. 244 at 7-8. In his reply, Plaintiff reiterated that he had already deducted 84.2 hours, and he argued against any additional time being deducted. R. 245 at 7-8.

The district court erroneously deducted 128.5 hours *on top of* the 84.2 hours already deducted, stating "The Court agrees that these entries should have been eliminated *along with the other 84.2 hours"* (emphasis added). Appendix A-1 at 12. Defendants, however, had never argued that 128.5 *plus* 84.2 hours should be deducted. R. 244 at 7-8.

In his Motion to Reconsider, Plaintiff brought to the court's attention that it had erroneously double-deducted the Ghidotti/Reliable Recovery hours. Appendix

37

A-2 (R. 251) at 12-13.  He attached a spreadsheet specifically showing what hours had been deducted twice.  Appendix A-2 (R. 251-1).[4]

The court denied the Motion to Reconsider.  Appendix A-3 (R. 255 - minute order), A-4 (R. 266 - transcript of court hearing).[5]  The court stated in its oral decision that "plaintiff neglected to raise" the issue of the double deduction in his reply.  Id. at 5.  This was not correct.  Plaintiff stated both in his petition (R. 231 at 7, fn 2; R. 231 at 8; R. 231-1 (spreadsheet setting forth deductions)) *and* in his reply (R. 245 at 7-8a) that he had already voluntarily deducted 84.2 attorney hours, as well as 27.6 paralegal hours (R. 231-4).  Plaintiff had no way of knowing when he submitted his reply that the court was going to misinterpret Defendants' response and make the arithmetic error it made when it rendered its decision of April 24, 2015.  Sadly, Defendants' counsel had an opportunity on May 27, 2015, when the court was rendering its oral decision, to step forward and set the record straight that, indeed, an arithmetic error had been made.  However, defense counsel rode the wave of success and remained silent.

-------

[4]   On Plaintiff's spreadsheet, Plaintiff showed that 77.9 hours that had been deducted by Plaintiff were also part of the 128.5 hours Defendants were deducting.  The reason Plaintiff's computation for the voluntary deduction totaled 84.2 hours, and not 77.9 hours, was that Plaintiff continued deducting hours attributable only to Ghidotti/Reliable Recovery claims after the summary judgment decision of March 28, 2014, while Defendants ceased their spreadsheet deductions after the decision date of March 28, 2014.  R. 244-2 at 13.  Defendants argued in the text of their response to the fee petition that Plaintiff was entitled to no fees at all after the decision on summary judgment and gave the date of October 4, 2013 (R. 244 at 13-14), but, as noted by the district court, that date did not relate to anything.  Appendix A-1 at 15.

[5]   The transcript of the hearing states the hearing date of June 23, 2015.  The correct date of the hearing, however, was May 27, 2015.

Attorney hours for legal work exclusively to prosecute the successful state claim and unsuccessful federal claim against Defendants Ghidotti and Reliable Recovery that had already been voluntarily deducted by Plaintiff from Plaintiff's fee petition (84.2 hours) should not have been doubly discounted by the district court. This error was not harmless. *See* Fed. R. Civ. P. 61. The arithmetic error affected a substantial right and the decision should be reversed. 28 U.S.C. 2111; *see McDonough Power Equipment, Inv. v. Greenwood,* 464 U.S. 548, 554 (1984).

### B. The district court erred as a matter of law in deducting 128.5 hours as legal work solely for Reliable Recovery Defendant claims when it awarded summary judgment to Plaintiff based on much of that legal work.

The standard of review is *de novo* in that the law of the case doctrine would apply here. Rulings that proved decisive in a determination of liability cannot be reviewed or reconsidered in a subsequent proceeding, without reconsideration of that determination of liability or an appeal of that determination of liability. *See Vidimos, Inc. v. Wysong Laser Co., Inc.,* 179 F.3d 1063, 1065 (7th Cir. 1999).

As argued above, this Court should restore the 84.2 hours Plaintiff voluntarily deducted as attributable solely to prosecuting the successful state claim (malicious prosecution) and unsuccessful federal claim (conspiracy) and state claim (trespass) against Defendants Ghidotti and Reliable Recovery. However, the court deducted a total of 128.5 hours, and Plaintiff now addresses the 44.3 additional hours beyond the 84.2 hours that was included in the 128.5 total hours the court deducted.

39

Plaintiff is willing to concede for this appeal that certain additional hours could be attributed solely to Plaintiffs' prosecution of claims against Ghidotti/Reliable Recovery. Thus, Plaintiff is not here arguing for restoration of all 44.3 additional hours. Plaintiff seeks only 24.3 additional hours above the restoration of the 84.2 hours that were doubly discounted.

Of significance here, the district court issued its Memorandum Opinion and Order on the cross-motions for summary judgment on March 28, 2014, based on a factual statement heavily laden with references to Timothy Ghidotti, Reliable Recovery, and Juanita Horton. Appendix A-5 at 1-7. The court stated that "the proffered basis [by police] for probable cause was that Baker threatened Ghidotti with a gun and then Ghidotti felt threatened." Id. at 10. Thus, even if Kenneth Baker had been the only Plaintiff, Plaintiff's counsel would still have had to take the depositions of Timothy Ghidotti (the repossession man who called 911), Boris Jurkovic (Ghidotti's boss who was originally believed to be at the scene and who would not disclose the name of the second employee who was in fact at the scene), Juanita Horton (whose vehicle was the subject of Ghidotti's middle-of-the-night visit to the Baker home), and Oliver Johnson (Juanita's brother and Kenneth Baker's step-son).

The court's entire analysis of probable cause was based on whether what Ghidotti observed and told the police when he came to the Baker home with the hopes of repossessing Juanita Horton's vehicle was sufficient for probable cause to arrest Kenneth Baker for aggravated assault. Id. at 11-14. The court thus relied on

40

the legal work of Plaintiffs' attorney, and her analysis of the deposition transcripts of Ghidotti, Jukovic, Horton, and Johnson, in finding for Plaintiff. Defendants never appealed the court's summary judgment decision. It was thus contrary to the doctrine of law of the case and error for the court to make a determination of liability based on legal work by Plaintiffs' attorney and then deny the necessity of that legal work when determining attorney fees.

By its acceptance of Defendants' lump sum of 128.5 hours, the court adopted Defendants' unfair deduction of time for deposition preparation and for depositions that were critically necessary, and for other legal work that would have been performed, whether Ghidotti and Reliable Recovery had been Defendants or not. Of significance, Defendants thought that Juanita Horton and Oliver Johnson were such important witnesses that they themselves subpoenaed them for trial. R. 220-1 at 3 (claim for $169.00 for process server, witness, and mileage fees). Yet for purposes of determining Plaintiff's attorney fees, they claimed that these witnesses were irrelevant and unnecessary.

Plaintiff asks that his attorney be compensated for the following attorney time deducted by the City attorneys (*see* R. 244-2, Appendix A-2 (251-1)):

|  |  |  |
|---|---|---|
| 9/27/2011 | TC with Timothy Ghidotti | .3 |
| 10/12/2011 | Research Reliable Recovery websites | .4 |
| 10/19/2011 | Court, status hearing | .8 |
| 2/8/2012 | Conference w Timothy Ghidotti | .3 |
| 2/15/2012 | TC with Timothy Ghidotti | .2 |
| 7/2/2012 | Review Rule 26(a)(1) disclosures | .4 |
| 10/8/2012 | TC with Juanita Horton | .6 |
| 10/12/2012 | TC w Juanita Horton | .4 |
| 11/1/2012 | Prepare for deposition | .8 |

41

|  | Deposition of Timothy Ghidotti, incl travel | 7.4 |
|---|---|---|
|  | Google research Boris Jurkovic | .7 |
| 11/12/2012 | TC with Oliver Johnson | 1.1 |
| 11/16/2012 | Conf with Juanita Horton | 1.5 |
| 11/19/2012 | Prepare for deposition | 1.1 |
|  | Deposition of Juanita Horton | 1.8 |
|  | Deposition of Oliver Johnson | 1.3 |
| 2/5/2013 | Prepare for deposition | 1.1 |
|  | Deposition of Boris Jurkovic | 2.5 |
| 3/12/2013 | Court | .8 |
| 12/3/2013 | Draft motion to reset court date | .5 |
|  | Draft notice of motion | .1 |
| 12/20/2013 | Review filed court transcript | .2 |

TOTAL    24.3 hours

It is important to note Plaintiff's good faith here when he submitted his fee petition. Plaintiff's counsel would have had to e-mail and speak to the attorneys for Ghidotti and Reliable Recovery whether they had been Defendants or not, since Ghidotti was one of the important witnesses in the case. Throughout the case, Reliable Recovery attorney Ruth McCoy provided useful information as to why Ghidotti was at the scene, what documentation he had, and what Ghidotti told the police. Nonetheless, as a good faith gesture, when filing Plaintiff's Petition for Attorneys' Fees, Plaintiff's counsel gratuitously deducted *all the time* spent in communicating with the Ghidotti/Reliable Recovery attorneys. R. 231-1. This included all 10.5 hours spent in e-mail messaging, sometimes multiple times each day, on 2/21/12, 5/14/12, 6/28/12, 7/2/12, 7/3/12, 7/19/12, 7/23/12, 7/24/12, 7/25/12, 9/28/12, 10/9/12, 10/13/12, 10/15/12, 10/17/12, 10/18/12, 10/30/12, 11/7/12, 11/28/12, 1/25/13, 1/26/13, 1/30/13, 1/31/13, 2/1/13, 2/4/13, 2/18/13, 2/25/13, 3/5/13, 3/7/13,

42

5/19/13, 5/23/13, 5/24/13, 7/15/13, 7/16/13, 7/25/13, 8/6/13, 8/7/13, 8/8/13, 8/9/13,

8/15/13, 8/16/13, 9/9/13, 9/10/13, 9/20/13, 9/23/13, 9/30/13, 10/1/13, 10/3/13, 10/9/13,

10/29/13, 11/5/13, 11/13/13, 11/14/13, 11/21/13, 11/24/13, 12/2/13, 10/1/14, 10/6/14,

10/8/14, 10/9/14, 10/10/14, 10/15/14, 10/19/14, and 10/23/14.  Thi s also included all

2.4 hours spent in telephone calls on 3/21/12, 6/26/12, 7/10/12, 8/22/12, 10/11/12,

10/12/12, 10/23/12, 11/28/12, 12/17/12, 7/25/13, 10/3/13, and 9/16/14.

Because the district court's summary judgment ruling relied so heavily on

testimony and argument presented by Plaintiff's counsel from depositions and

witness information from Ghidotti and third party witnesses, it was error as a

matter of law for the court to deduct 128.5 hours as legal work solely for Reliable

Recovery Defendant claims.  Plaintiff asks that Plaintiff's counsel receive

compensation for the 84.2 hours doubly discounted, plus an additional 24.3 hours,

thus restoring to Plaintiff 108.5 hours of the 128.5 hours deducted.

## C.   Defendants should be estopped from objecting to the number of Plaintiff's hours where the City of Chicago employed four attorneys in this case and did not provide time and work records for those attorneys.

Defense counsel have submitted no time and work sheets for the four defense

attorneys who worked on this  case, Brandon J. Gibson, Caroline Fronczak, Kristin

Acuff, and Scott Jebson.  Defendants should therefore be barred from contesting

Plaintiff's hours, in that the court has been deprived of meaningful comparison of

time spent in this case.

Given this asymmetry of information, it is unfair for the City to try to pick holes in the reasonableness of Plaintiff's totals. *Cooper v. Casey*, 897 F.Supp. 1136, 1139-40 (N.D. Ill. 1995) ("[I]t is unpersuasive for defendants to cavil at plaintiffs' division of labor as purportedly overlapping and inefficient, when defendants' own expenditure of time cannot be evaluated for comparative purposes because they do not account for their time . . ."); *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 934 (N.D. Ill. 2009) ("As an initial matter, the Court notes that Mostly Memories failed to disclose information pertaining to its own fees incurred in this litigation as required by Local Rule 54.3(d)(5), and so it is on weak footing when arguing in the abstract that the hours spent by FYEO's attorneys were excessive."); *Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006) ("Defendants' counsel claimed before the district court that its billing records were irrelevant. This position is inconsistent with the letter and spirit of Local Rule 54.3. The rule's purpose is to avoid the type of hypocritical objections presented by the defendants" (emphasis added).

It is important to note that when City of Chicago attorneys do disclose their hours, such as when there is outside counsel, not in-house counsel, the hours often far exceed Plaintiff's counsel's hours. As an example, in *Armstrong v. Maloney*, a comparable case in the Northern District of Illinois, the combined total attorney hours expended by Plaintiffs' attorneys (who are the same attorneys in this case) was 907.2, while the total attorney hours for the City of Chicago attorney that was

paid by the City of Chicago was an astounding 1761.2 hours.  *Armstrong v. Maloney*, 08 C 4398, Northern District of Illinois, Doc. 418 at 3.[6]

Defendants should be estopped from objecting to the number of Plaintiff's hours where the City of Chicago employed four attorneys in this case and did not provide time and work records for those attorneys.

### D.  Defendants should be estopped from objecting to the number of Plaintiff's hours because the presentation of their objections is so disorganized, confusing, and self-contradictory that the objections should be stricken.

Defendants' analysis of Plaintiff's timesheets is so disorganized, confusing, and self-contradictory that Defendants' objections should be stricken in their entirety and Defendants should be estopped from arguing that Plaintiff's hours should be reduced.  R. 244-2.

It is virtually impossible to figure out what entries Defendants actually contest.  Defendants' Excel spreadsheets make no sense at all.  Almost all Defendants' spreadsheet pages have a discrepancy between the total proposed reduction of hours for the page and the "page summary" total of deductions, when those two totals should be equal (R. 244-2 (B-1 through B-13)):

---

[6]  *Armstrong* involved the alleged hot pursuit by Chicago police officers of an individual, the illegal entry and search of the Armstrong home, and the illegal detention of Plaintiffs.  The jury found for Plaintiffs on several claims and for Defendants on some claims. The number of depositions and the discovery were comparable to the present case, and the length of the trial was comparable.  The City of Chicago agreed to pay Plaintiffs' attorneys for all 907.2 attorney hours.

| Page | Proposed reduction of hours (difference between Plaintiff and Defendant totals) | Total of deductions in summary |
|------|------------------------------------------------------------------------------|-------------------------------|
| B-1  | **3.5 hours** (29.0 - 25.5) | **8.1 hours** (vague 3.5, clerical 4.6) |
| B-2  | **5.9 hours** (19.4 - 13.5) | **14.6 hours** (excessive .8, vague 4.9, clerical 1.4, RR Def 7.5) |
| B-3  | **7.1 hours** (15.1 - 8.0) | **8.0 hours** (excessive 1.0, vague 2.2, clerical .3, RR Def 3.6, unnecessary .9) |
| B-4  | **7.7 hours** (17.5 - 9.8) | **9.5 hours** (excessive 1.7, vague 4.9, RR Def 2.8, clerical .1) |
| B-5  | **7.5 hours** (39.3 - 31.8) | **3.7 hours** (vague .3, clerical .3, excessive 2.0, RR Def 1.1) |
| B-6  | **11.1 hours** (30.1 - 19.0) | **10.0 hours** (RR Def 4.1, vague 3.8, excessive 1.3, clerical .8) |
| B-7  | **11.5 hours** (24.5 - 13.0) | **11.0 hours** ( RR Def 6.9, vague 1.9, clerical 1.1, excessive 1.1) |
| B-8  | **11.8 hours** (22.1 - 10.3) | **11.7 hours** (RR Def 6.7, vague 3.0, excessive 1.2, unnecessary .8) |
| B-9  | **3.0 hours** (60.6 - 57.6) | **4.3 hours** (RR Def 1.8, vague .6, clerical 1.4, unnecessary .5) |
| B-10 | **9.9 hours** (62.9 - 53.0) | **13.2 hours** (RR Def 13.1, excessive .1) |
| B-11 | **58.1 hours** (90.8 - 32.7) | **58.1 hours** ( RR Def 57.1, excessive .5, unnecessary .5) |
| B-12 | **14.6 hours** (53.0 - 38.4) | **14.6 hours** (RR Def 14.3, excessive .3) |
| B-13 | **10.6 hours** (21.0 - 10.4) | **9.8 hours** (RR Def 9.5, excessive .3) |

In only two pages out of thirteen (B-11 and B-12) do Defendants' totals for the page match the total of the deductions for the page.

Defendants' objections should be stricken in their entirety because they are too disorganized, confusing, and self-contradictory.

46

**E.  The district court erred in deducting 9.9 hours as "lower level" legal work worthy of no fees.**

Defendants argued that certain tasks are "lower level," and should not receive attorney compensation.  Defendants asked that 9.9 hours of attorney time be compensated at paralegal rates.  R. 244 at 8-9.  The court ruled beyond that, that is, that there would be *no* compensation at all for the 9.9 hours, because they should be "absorbed as overhead."  Appendix A-1 at 12-13.

As mentioned above, it is difficult to determine exactly what tasks are being contested.  As explained in Plaintiff's reply, though, the time expended by Plaintiff's attorney on tasks it appears Defendants are complaining about in their response was expended to review the work that was done initially by paralegals.  For example, the relatively small amount of time for drafting retainer agreements (.6 hours), for drafting eight summonses (.5 hour), to review nine affidavits of service (.3 hour), to review social media for Ghidotti that was downloaded by a paralegal (.3 hour), etc., was *the attorney time* spent on the tasks, after drafts were prepared by paralegals or the initial work was done by paralegals.  R. 245 at 8.  Allowing paralegals to prepared the initial drafts of documents or to do the preliminary work is an economical use of time.

Defendants and the court ignored the fact that legal documents need to be reviewed by an attorney before filing or before being signed.  A paralegal may draft a table of exhibits, but the attorney has to review it to make sure it is right before it is filed.  An initial draft of a retainer agreement may be made by a paralegal, but

47

an attorney has to study it and makes changes to be sure it is right. Defendants seek to have a paralegal perform all the work in a case, without supervision or review by an attorney. This is not only unrealistic; it is malpractice.

Defendants asked that the paralegal rate be applied to the 9.9 hours. R. 244 at 8-9. The court, however, not only de-valued the attorney work, but decided that drafting retainer agreements, deposition notices, summonses, and so forth required so little skill or training that *no* compensation was necessary. Appendix A-1 at 12-13. This was error. Plaintiffs' attorneys' fees awards encompass the work of paralegals. *See Richlin Sec. Service Co. v. Chertoff*, 53 U.S. 571 (2008) ("Attorney's fee," as used in the Civil Rights Attorney's Fees Awards Act, embraces paralegal fees).

Plaintiff should be compensated for the 9.9 hours deducted at the attorney rate or, minimally, at the paralegal rate.

### F.   The district court erred in deducting a lump sum of 30 hours that were necessary, clear, and not excessive.

The court decided not to perform an "item-by-item" evaluation of Defendants' objections and instead deducted a lump sum of 30 hours from Plaintiff's fee petition. Appendix A-1 at 13-14. However, this was unfair to Plaintiff, in that Defendants' objections had very little substance.

### 1.   The deduction of 4.1 hours as "unnecessary" was error.

Defendants argued that 4.1 hours should be eliminated as unnecessary. R. 244 at 9. Defendants list the following:

48

.8 hours for Plaintiff's counsel's attendance at a court hearing where she defended a motion to compel

.5 hours for drafting a motion to allow Plaintiff to file extra pages in a brief

.5 hours for drafting agreed orders that the parties could never actually agree to

.9 hours for drafting a motion to reset a date because Plaintiff's counsel had a conflict

1.4 hours for a motion hearing that Defendants claim does not appear on the docket

Defendants give no dates for these tasks in their written response, so it is difficult to determine what the dates are to which they are referring.  Id.  Plaintiff notes that there is no motion hearing for which Plaintiff claims 1.4 hours of attorney time on his work and time records.  There *is* a hearing date, however, that Plaintiff's counsel *failed* to claim on her timesheet: January 17, 2013.  The other tasks listed above totaling 4.1 hours were hardly "unnecessary" and should not have been deducted by the court.

### 2.   The deduction of 25.1 hours as "vague" was error.

Defendants argue that 25.1 hours were too vague to be recoverable.  R. 244 at 10.  Once again, it is difficult to know exactly what Defendants are contesting.  It appears that they contest the review of deposition transcripts and either want to eliminate or want to reduce the following entries:

9/14/2013 Review deposition transcripts      2.3 hours

9/19/2013 Review deposition transcripts      5.5 hours

49

9/23/2013 Review deposition transcripts          3.3 hours

10/4/2013 Review deposition transcripts          2.3 hours

10/5/2013 Review deposition transcripts          2.1 hours

10/6/2013 Review deposition transcripts          3.3 hours

10/7/2013 Review deposition transcripts          3.5 hours

                                   TOTAL     22.3 hours

However, there were 17 depositions taken in this case and some of the
depositions took the full seven hours.  There were over 1500 pages of deposition
transcripts.  Plaintiff's counsel had to read all the deposition transcripts at some
point.  Plaintiff's counsel was reading deposition transcripts and performing
legal research to prepare Plaintiff's summary judgment motion, to defend the
summary judgment motions the City Defendants brought, and to prepare for trial.
Some of the entries for reading deposition transcripts Defendants complained about,
ironically, were on the same dates as the entries for preparing a response to the
City's motion for summary judgment.

Certainly these 22.3 hours to read 17 deposition transcripts were not
unreasonable.  Just because Plaintiff's counsel did not list which of the 17
deposition transcripts she was reading on each particular day does not mean that
the time, when looked at its totality, was unreasonably spent.

Defendants denote Plaintiff's counsel's telephone conference with clients (e.g.,
8/10/2010) and letters to client (e.g., 6/21/2011) as "vague."  Defendants also denote
"review file, plan case strategy" (e.g., 6/15/2011) as "vague."  However, the Local

50

Rules are clear that time and work records of attorneys "may be redacted to prevent disclosure of material protected by the attorney-client privilege or work product doctrine." Local Rule 54.3(d)(1). Plaintiffs' counsel does not have to divulge the substance of her communication with her client, or exactly what her trial strategy was. Defendants denote telephone conferences with defense attorneys (e.g., 9/7/2011) as "vague." However, defense attorneys themselves should already know what the substance of those conferences was.

Defendants also claim that entries such as "Draft response to request to produce - 1.1" and "Draft requests to produce - 1.2" on 6/25/2012, "Prepare for deposition - 1.3" on 10/30/2012, and "Draft answers to interrogatories - 2.1" on 3/15/2013 are so "vague" that Plaintiff should be compensated for zero time. Plaintiff is at a loss as what is vague about these entries and why the nature of the work is not obvious to attorneys who have been working on this case.

### 3. The district court should not have reduced hours for reviewing court orders and conducting settlement discussions after court by more than 50%.

As part of its sweeping reduction of 30 hours, the district court eliminated 4.6 of Plaintiff's attorneys' hours for reviewing court orders and conducting settlement discussions after court. However, the time for these tasks was both necessary and not excessive. It would be bad legal practice for an attorney not to review each court order as it is issued, to ensure its correctness and completeness and ensure new dates are calendared and the new information noted.

51

Defendants complained that Plaintiff added .1 hour for each discussion she had with defense counsel about settlement after court.  Plaintiff's counsel separately listed the court appearance time, including travel, plus the time afterwards for the discussion.  Plaintiffs' counsel was so convinced that this case could and should settle that she actively pursued defense counsel after each court appearance, at times walking with defense counsel to the elevator or running after defense counsel as he or she was walking to the elevator.  Plaintiff's counsel could have added .1 hour to each court appearance after which these discussions took place, but instead listed separately the court time and the discussion time.  It is ironic that not only did those discussions not bear fruit, but now Defendants want to deduct the time spent in those discussions.

A reasonable reduction of the time for reviewing court orders and conducting settlement discussions, 50%, would reduce it from 4.6 hours to 2.3 hours.

### 4.   Plaintiff elects not to contest time reduction for e-mail messaging.

The district court reduced Plaintiff's attorneys' time for e-mail messaging. The reductions of e-mail messaging amounted to a total 6.6 hour deduction. Plaintiff's attorney maintains she did engage in the e-mail messaging listed, and that the time was reasonable.  Counsel also notes that, as a good faith gesture in his fee petition, Plaintiff had already voluntarily deducted time for *all e-mail messages* to and from the attorneys for the Reliable Recovery Defendants and *all telephone conferences* with those defense attorneys, even though at least some of the

52

time for the communication was inevitably attributable to, or aided, the prosecution of the false arrest claim on which Plaintiff prevailed.

Nevertheless, to economize on the Court's time and attorney time, Plaintiff elects not to contest the district court's reduction of these 6.6 hours.

### 5. The district court's 30-hour reduction was excessive.

A district court is allowed to either "strike the problematic entries or. . . reduce the proposed fee by a reasonable percentage." *Harper v. City of Chicago Heights,* 223 F.3d 593, 605 (7th Cir. 2000). The court understandably did not want to take the time to evaluate Plaintiff's counsel's timesheets line by line. However, the objections made by Defendants must have validity, and the reduction must be reasonable.

The court here stated, "Based on these last two objections, the Court reduces Dymkar's time by an additional 30 hours (approximately 4% of the original 699.9 hours billed)." Appendix A-1 at 13-14. It is not clear what "these last two objections" are. If the objections are the objections to e-mail messaging (6.6 hours) and to the reading of court orders and settlement negotiation attempts (4.6 hours), then the total number of hours for the reduction would be far smaller than 30 hours. *See* Id.

While a court is allowed to reduce the proposed fee by a reasonable percentage, in the case at hand a 30-hour reduction was excessive, because Defendants' objections had little substance. It was an abuse of discretion to deduce 30 additional hours from Plaintiff's fee petition. Plaintiff agrees to a 8.9 hour

53

reduction (6.6 for e-mail messaging, and 50% of 4.6 hours for reviewing court orders and attempted settlement negotiations).

# CONCLUSION

Plaintiffs respectfully asks this Court to vacate the district court's

Memorandum Opinion and Order of April 24, 2015, and direct the district court:

1)   to grant Plaintiff Kenneth Baker his Bill of Costs of $7,574.43, minus the $3,500.00 settlement paid by Defendants Ghidotti and Reliable Recovery,

2)   to deny Defendants their Bill of Costs of $6,714.60,

3)   to grant Plaintiff Baker the full lodestar for attorneys' fees,

4)   to reverse the deduction of 128.5 hours for attorney hours spent on Ghidotti and Reliable Recovery claims and replace it with a deduction of 20 hours,

5)   to reverse the deduction of 9.9 hours denoted as "lower level,"

6)   to reverse the lump sum deduction of 30 hours denoted as "unnecessary," "vague," or "excessive," and replace it with a deduction of 8.9 hours, and

7)   to grant attorneys' fees re-computed as follows:

| | | | |
|---|---|---|---|
| Irene K. Dymkar | 671.0 hours | $425/hour | $285,175.00 |
| Torreya L. Hamilton | 156.2 hours | $450/hour | $ 70,290.00 |
| Kevin T. Turkcan | 30.5 hours | $200/hour | $   6,100.00 |
| Paralegal I | 179.0 hours | | |
| Paralegal II | 18.5 hours | | |
| Paralegal III | 2.4 hours | | |
| Paralegal IV | 12.2 hours | | |
| | 212.1 hours total | $125/hour | $ 26,512.50 |
| | | TOTAL | $388,077.50 |

55

Dated: June 21, 2016                    Respectfully submitted,

                                        /s/ Irene K. Dymkar
                                        Irene K. Dymkar

Irene K. Dymkar
Law Offices of Irene K. Dymkar
53 West Jackson, Suite 733
Chicago, IL 60604-3462
(312) 345-0123

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1)    This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B), because it contains 13,329 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii), beginning with the words "Jurisdictional Statement" on page 1 and ending with the words "Respectfully submitted" on page 56.

2)    This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using *WordPerfect X6*, in 12-point Century Schoolbook font.


Dated: June 21, 2016                    /s/ Irene K. Dymkar
                                       Irene K. Dymkar


Attorney for Plaintiffs-Appellants:

Irene K. Dymkar
Law Offices of Irene K. Dymkar
53 West Jackson, Suite 733
Chicago, IL 60604-3462
(312) 345-0123

57

# CIRCUIT RULE 31(e)(1) CERTIFICATION

I, Irene K. Dymkar, attorney for Plaintiffs-Appellants, hereby certify that on June 21, 2016, I filed electronically, pursuant to Circuit Rule 31(e), Appellants' Brief in non-scanned PDF format, except for appendix materials not available in non-scanned PDF format.

Dated: June 21, 2016　　　　　　　 ___/s/ Irene K. Dymkar_____
　　　　　　　　　　　　　　　　　　　　　　Irene K. Dymkar

Attorney for Plaintiffs-Appellants:

Irene K. Dymkar
Law Offices of Irene K. Dymkar
53 West Jackson, Suite 733
Chicago, IL 60604-3462
(312) 345-0123

**PROOF OF SERVICE**

I, Irene K. Dymkar, attorney for Plaintiffs-Appellants, certify that I electronically filed the foregoing Appellants' Brief of Plaintiffs-Appellants with the Clerk for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service was made through the CM/ECF system.

Dated: June 21, 2016                          /s/ Irene K. Dymkar
                                               Irene K. Dymkar

Attorney for Plaintiffs-Appellants:

Irene K. Dymkar
Law Offices of Irene K. Dymkar
53 West Jackson, Suite 733
Chicago, IL 60604-3462
(312) 345-0123

## CIRCUIT COURT RULE 30(d) STATEMENT REGARDING APPENDIX

I, Irene K. Dymkar, attorney for Plaintiffs-Appellants, hereby certify that all of the materials required by Circuit Court Rule 30(a),(b) are included in the Short Appendix.


Dated: June 21, 2016                    /s/ Irene K. Dymkar
                                          Irene K. Dymkar


Attorney for Plaintiffs-Appellants:

Irene K. Dymkar
Law Offices of Irene K. Dymkar
53 West Jackson, Suite 733
Chicago, IL 60604-3462
(312) 345-0123

No. 15-2203

_____

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

_____

**Kenneth Baker, et al.,**
**Plaintiffs-Appellants,**

> **v.**

**Timothy M. Ghidotti, et al.,**
**Defendants-Appellees.**

_____

**Appeal from the United States District Court**
**for the Northern District of Illinois, Eastern Division**
**Case No. 11 C 4197**
**Judge Harry D. Leinenweber**

_____

## REQUIRED SHORT APPENDIX OF
## PLAINTIFF-APPELLANTS, KENNETH BAKER, et al.

_____

**Irene K. Dymkar**
**Attorney for the Plaintiffs-Appellants**
**Kenneth Baker, et al.**

**Irene K. Dymkar**
**Law Offices of Irene K. Dymkar**
**53 West Jackson, Suite 733**
**Chicago, IL 60604-3462**
**(312) 345-0123**

*Baker, et al., v. Ghidotti, et al.,* No. 15-2203

**Appellants' Brief**

**Short Appendix**

## Index

Memorandum Opinion and Order on Attorneys' Fees and Costs
entered April 24, 2015 (R. 250)............................................. .....................*Appendix A-1*

Plaintiffs' Motion to Reconsider Order of April 24, 2015,
filed May 22, 2015 (R. 251, 251-1)............................................................. *Appendix A-2*

Minute Order summarily denying Motion to Reconsider
entered May 27, 2015 (R. 255).................................................................... *Appendix A-3*

Transcript of oral ruling on Motion to Reconsider of
May 27, 2015[1] (R. 266).............................................................................*Appendix A-4*

Memorandum Opinion and Order on Cross-Motions for Summary Judgment
entered March 28, 2014 (R. 178)................................................................ *Appendix A-5*

Judgment after trial entered October 24, 2014 (R. 216).........................*Appendix A-6*

---

[1]    The transcript of the hearing states that the hearing date was June 23, 2015. The correct date is May 27, 2015.

i

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENNETH BAKER, *et al.*,

                    Plaintiffs,            Case No. 11 C 4197

          v.

TIMOTHY M. GHIDOTTI, *et al.*,             Judge Harry D. Leinenweber

                    Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Kenneth Baker (the "Plaintiff") has filed a Petition to recover attorneys' fees against Defendants the City of Chicago (the "City"), Jean M. Lindgren, Jesus Vera, Steven Martin, and Dennis P. Walsh (collectively, "Defendants") [ECF No. 231]. Plaintiff also seeks to recover costs as the prevailing party against the above-mentioned Defendants and Defendants Timothy M. Ghidotti and Reliable Recovery Services, Inc. ("Reliable") [ECF No. 223]. Defendants seek costs as the prevailing party against two other Plaintiffs, Barbara Baker and Camden Baker [ECF No. 220]. Defendants have also moved to strike Plaintiff's attorneys' fees petition [ECF No. 236].

For the reasons stated herein, Plaintiff's Petition for Fees is granted in part and denied in part; Plaintiff's Application for Costs is denied; Defendants' Application for

*Appendix A-1*

Costs is granted in part and denied in part; and Defendants'
Motion to Strike the Fee Petition is denied.

## I.  BACKGROUND

In the underlying litigation, attorneys Irene K. Dymkar
("Dymkar"), Torreya L. Hamilton ("Hamilton"), and Kevin T.
Turkcan ("Turkcan") (collectively, "Counsel") represented
Plaintiffs Kenneth, Barbara, Camden, and Ashley Baker.  The
factual basis for Plaintiffs' claims is detailed in the Court's
March 28, 2014 Order granting in part and denying in part the
parties' Cross-Motions for Summary Judgment [ECF No. 178].  In
that Order, the Court granted Plaintiffs' Motion for Summary
Judgment on one claim only — Kenneth Baker's claim for false
arrest against Defendants Martin, Lindgren, and Vera.

Plaintiffs' remaining claims for trespass, illegal entry,
illegal search, illegal detention, conspiracy, and malicious
prosecution went to trial, along with the issue of damages on
the false arrest claim for which the Court had already
determined liability.  On October 24, 2014, the jury returned a
verdict in favor of Kenneth Baker on his malicious prosecution
claim, awarding him $5,000.00 in damages.  The jury also awarded
Kenneth Baker $25,000.00 in damages on his false arrest claim.
For all remaining claims, the jury found in favor of Defendants.

On January 21, 2015, Plaintiff petitioned for attorneys'
fees pursuant to 42 U.S.C. § 1988.

*Appendix A-1*

## II. ANALYSIS

### A. Attorneys' Fees

The Civil Rights Attorney's Fees Award Act, 42. U.S.C. § 1988, allows the award of "a reasonable attorney's fee to the prevailing party in various kinds of civil rights cases, including suits brought under § 1983." *Fox v. Vice,* 131 S.Ct. 2205, 2213 (2011) (internal quotations omitted). The statute serves the dual purpose of reimbursing plaintiffs for vindicating important civil rights and holding accountable violators of federal law. *See, id.* However, a defendant "need only compensate plaintiff for fees to the extent plaintiff succeeds; losing claims are not compensable." *Kurowski v. Krajewski,* 848 F.2d 767, 776-77 (7th Cir. 1988).

In awarding fees under § 1988, a court's first step is to determine whether the party seeking fees is entitled to "prevailing party" status. *Gibson v. City of Chicago,* 873 F.Supp.2d 975, 982 (N.D. Ill. 2012). Because Defendants do not dispute that Plaintiff prevailed on his § 1983 claim for false arrest, the Court moves immediately to the second step – determining whether the claimed fees are reasonable under the circumstances. *Id.*

To calculate reasonable attorneys' fees under § 1988, courts apply the "lodestar method," which multiplies the attorneys' reasonable hourly rates by the number of hours they

- 3 -

*Appendix A-1*

reasonably expended. *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205,* 90 F.3d 1307, 1310 (7th Cir. 1996) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). The party requesting fees carries the burden of establishing their reasonableness. *McNabola v. Chi. Transit Auth.,* 10 F.3d 501, 518 (7th Cir. 1993). Once the Court has arrived at a base lodestar figure, it may adjust the award in light of the factors identified in *Hensley* that are not already subsumed into the initial lodestar calculation. *See, People Who Care,* 90 F.3d at 1310 (citing *Hensley,* 461 U.S. at 434 n.9). These factors include "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.,* 574 F.3d 852, 856–57 (7th Cir. 2009).

Defendants have moved to strike Plaintiff's Petition in its entirety because of Plaintiff's failure to comply with Local Rule 54.3, which requires the parties to confer and attempt in good faith to reach an agreement on the amount of fees and costs to be awarded prior to filing a fee petition. Rule 54.3 serves two important functions: (1) providing the parties with the time and information necessary to resolve fee disputes without court intervention, and (2) helping them ensure that any disputes are crystalized in the event a fee petition is filed. *Jones v. Ameriquest Mortgage Co.,* No. 05 C 0432, 2008 WL

- 4 -

*Appendix A-1*

4686152, at *3 (N.D. Ill. May 19, 2008).   Plaintiff's failure to comply with Local Rule 54.3 has resulted in a missed opportunity to resolve the issue of fees without unnecessarily burdening the Court.   Although this failure has resulted in inconvenience, and shows disregard for court rules, the parties, by now, have had full opportunity to exchange and review the information that Rule 54.3 requires.   For this reason, Court denies Defendants' Motion to Strike Plaintiff's fee petition.

### 1. Lodestar Calculation

Plaintiff seeks a total of $450,268.00 in attorneys' fees, calculated as follows:

| Attorney | Hourly Rate | Hours | Total per Attorney |
|----------|-------------|-------|--------------------|
| Irene K. Dymkar | $495 | 699.9 | $346,450.50 |
| Torreya L. Hamilton | $450 | 156.2 | $70,290.00 |
| Kevin Turkcan | $230 | 30.5 | $7,015.00 |
| Paralegals | $125 | 212.1 | $26,512.50 |
| | | **TOTAL** | **$450,268.00** |

Dymkar has excluded from her records 84.2 additional hours that were dedicated to the unsuccessful conspiracy claims against Defendant Ghidotti.

### a.  Hourly Rates

The Court begins by examining Counsel's claimed hourly rates.   In determining a reasonable hourly rate, attorneys' fees awarded under Section 1988 "are to be based on market rates for services rendered." *Missouri v. Jenkins by Agyei,* 491 U.S. 274,

- 5 -

*Appendix A-1*

283 (1989).  "The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *People Who Care,* 90 F.3d at 1310 (quoting *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150 (7th Cir. 1993)).  The next best evidence of a reasonable fee is the rate charged by lawyers in the community of comparable skill, experience, and reputation. *Id.*  Previous fee awards are also "useful for establishing a reasonable market rate."  *Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs,* 553 F.3d 487, 491 (7th Cir. 2009).

In support of their claimed hourly rates, each attorney has submitted a declaration detailing his or her experience litigating civil rights cases, as well as affidavits from other civil rights attorneys supporting the proposed rates.  Dymkar and Hamilton have been practicing for 38 and 20 years respectively.  Both are seasoned attorneys with substantial experience litigating civil rights cases.  Turkcan is only in his second year of practice, but has already represented a number of plaintiffs in civil rights cases.  Plaintiff argues that the hourly billing rates he proposes are consistent with the rates awarded to attorneys in other civil rights cases within this district, the rates the City of Chicago has agreed to in other cases, and the Laffey Matrix.  The Laffey Matrix is "a chart of hourly rates for attorneys and paralegals in the Washington, D.C. area that was prepared by the United States

*Appendix A-1*

Attorney's Office for the District of Columbia to be used in fee-shifting cases." *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 649 (7th Cir. 2011).

The Court's first task is to determine the prevailing market rate for the legal services provided. The party seeking fees bears the burden of showing that the hourly rates sought are in line with the prevailing rate in the community. *Id.* at 640. If the applicant satisfies this burden, the burden then shifts to the opposing party to demonstrate why a lower rate should be awarded. *Id.* If a fee applicant fails to meet its initial burden, the Court has the authority to determine a reasonable rate on its own. *Id.*

The Court notes at the outset that the personal declarations Counsel have submitted are of limited value in determining the market rate. *See, Spegon v. Catholic Bishop of Chi.,* 175 F.3d 544, 556 (7th Cir. 1999). Instead, the Court must focus on the other evidence Counsel have provided, such as affidavits from similarly experienced attorneys and evidence of the fee awards that each attorney has received in similar cases. *Id.*

Dymkar seeks a rate of $495 per hour. In support of her rate, she notes that in 2012, Judge Elaine E. Bucklo awarded her a rate of $425 per hour in another civil rights case, *Nelson v. Salgado,* 9 C 5357. Dymkar also states that Judge Susan E. Cox

- 7 -

**Appendix A-1**

recently "suggested" $460 per hour as a compromise in the case of *Edwards v. Joliff-Blake,* 13 C 4558, but it is not clear that that rate was ever agreed to or awarded.

Dymkar has also submitted affidavits from three other civil rights attorneys, Jon Loevy ("Loevy"), Jeffrey J. Neslund ("Neslund"), and Janine H. Hoft ("Hoft"). Loevy and Neslund, who have each been practicing for approximately 20 years, claim rates ranging from $425 to $505 per hour. Loevy cites three civil rights cases in which attorneys were awarded even higher rates of up to $535 per hour. Hoft notes that partners in her firm were recently awarded rates ranging from $325 per hour for a 1997 law graduate to $525 per hour for a 1972 law graduate.

As further support for the hourly rates sought, Dymkar points to the Laffey Matrix. Under the Laffey Matrix, the appropriate rate for an attorney of Dymkar's experiences is $520 per hour. The Seventh Circuit has never formally adopted the Laffey Matrix, however, and the rates charged within the matrix are "significantly higher than those charged in this district." *Gibson v. City of Chicago,* 873 F.Supp.2d 975, 984 (N.D. Ill. 2012). For this reason, the Court finds that the Laffey Matrix is not, on its own, persuasive evidence of the actual market rate for Dymkar's services.

The affidavits Dymkar has submitted speak more to the attesting attorneys' experience than they do to Dymkar's. As

- 8 -

***Appendix A-1***

many courts have noted, Loevy is "an attorney whose experience, skill, and record of success in representing plaintiffs in police misconduct cases place him at the apex of attorneys who practice in that field." *Wells v. City of Chicago,* 925 F.Supp.2d 1036, 1041 (N.D. Ill. 2013). Dymkar has not presented sufficient evidence to show that her rates are on par with Loevy's, even though she has practiced longer. As Judge Virginia M. Kendall noted in 2012, when she adopted Magistrate Judge Sidney I. Shenkier's recommendation of an hourly rate of $330 for Dymkar, "Ms. Dymkar's record, while extended in time, lacks the experience and jury verdicts in police misconduct cases to warrant such an excessive hourly rate." *Ragland v. Ortiz,* No. 08 C 6157, 2012 WL 4060310, at *3 (N.D. Ill. Sept. 14, 2012). Indeed, Dymkar only began to focus exclusively on civil rights cases in 2006. (Dymkar Aff., Ex. E to Pl.'s Mem., ECF No. 231-5, ¶ 12.) Based on the hourly rates Dymkar has been awarded in the past, which range from $330-$425 per hour, and the affidavits she has submitted, which suggest fees ranging from $425-$535 per hour, the Court finds $425 per hour to be a reasonable rate placed firmly within the middle of the spectrum. Given that Dymkar was awarded rates as low as $330 in 2012, the Court finds that this award adequately reflects the increased experience Dymkar has gained since then.

*Appendix A-1*

Hamilton seeks a rate of $450 per hour.  In support of her rate, she notes that she has consistently been awarded rates of $395–$425 within this district from 2010 to 2014.  Hamilton has also submitted affidavits from three civil rights attorneys, Christopher R. Smith ("Smith"), Neslund, and Lawrence Jackowiak ("Jackowiak"), who have been awarded fees ranging from $395–$450 per hour.  Although Smith, Neslund, and Jackowiak have worked closely with Hamilton in the past, and comment briefly on her skill as an attorney, the Court finds most persuasive Hamilton's previously awarded hourly rates of $395 to $425.  Based on this evidence, the Court finds that the requested fee award of $450 per hour — a $25–$55 increase over previous rates — reasonable.

Turkcan seeks a rate of $230 per hour.  Half of Turkcan's experience predates his admission to the bar.  During law school, Turkcan worked as a law clerk for Hamilton and also represented clients under a 711 license.  Turkcan states that, to date, he has represented plaintiffs in 43 civil rights cases. Turkcan has submitted two affidavits from more experienced civil rights attorneys attesting to his qualifications.  The Court finds these affidavits to be of limited value, however. Although both attorneys are familiar with Turkcan's work, their affidavits largely chronicle their own experience and prior billing rates.  One attorney, Jared Kosoglad ("Kosoglad"), urges this Court to adopt the Meckler Report's recommendation of $230

*Appendix A-1*

per hour as the average rate for attorneys with two to three years experience. As Judge Charles P. Norgle has noted, "that report was prepared for and submitted in conjunction with a complex civil rights class action lawsuit challenging the use of unjustified and sexually-intrusive search procedures on men and women at the Cook County Jail" and is specific to that case. *Cavada v. City of Chicago,* No. 13 CV 1916, 2014 WL 4124273, at *3 (N.D. Ill. Aug. 18, 2014). Reliance on the Meckler Report is not appropriate here.

Turkcan was admitted to the bar in 2013 and has been practicing for less than two years. Courts within this district have found a rate of $200 to be in the middle of the range for similarly experienced attorneys in civil rights cases. *See, Wells,* 925 F.Supp.2d at 1042. Accordingly, the Court reduces Turkcan's requested hourly rate to $200 per hour.

Defendants do not object to the claimed paralegal and law clerk rates of $125 per hour, which the Court finds to be reasonable.

### b.  Hours Billed

The Court next turns its attention to the number of hours billed, which cannot be "excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434. Defendants object to the hours Counsel — specifically Dymkar — have billed on four grounds.

- 11 -

*Appendix A-1*

First, Defendants argue that the hours billed still include 128.5 hours of attorney time attributed exclusively to Ghidotti, an employee of Reliable, that were entered prior to the date of the Court's summary judgment ruling. Counsel has already agreed not to bill litigation hours attributable to Ghidotti, and for this reason, Dymkar has already reduced her initial calculation by 84.2 hours. Dymkar argues that she has excluded time "when it was clear that only the Reliable Recover [*sic*] defendants were involved." (Pl.'s Reply, ECF No. 245, at 8.) Defendants, however, have combed through Plaintiff's billing records and singled out individual entries that pertain only to Reliable. Many are clearly labeled "RRS." The Court agrees that these entries should have been eliminated along with the other 84.2 hours. The Court finds that a reduction of Dymkar's hours by 128.5 to be appropriate.

Second, Defendants argue that certain lower level tasks included in the billing must be compensated at paralegal rates. Plaintiff counters that even when a paralegal performs work, an attorney must still spend time reviewing it. As the Seventh Circuit has made clear, "the court cannot award fees at attorneys' rates for work that does not require that level of skill." *O'Brien v. Panino's, Inc.,* No. 10 C 2991, 2011 WL 3610076, at *2 (N.D. Ill. Aug. 16, 2011) (citing *Spegon,* 175 F.3d at 553. Such tasks are "absorbed as overhead into the

*Appendix A-1*

attorneys' billing rate." *Id.* Accordingly, the Court finds that it is appropriate to reduce Dymkar's hours by 9.9 for tasks such as setting up a file, reviewing social media, and preparing exhibits, based on her contention that she was reviewing paralegal work.

Third, Defendants argue that some entries should be removed because they are unnecessary to the litigation or too vague to evaluate. Defendants cite multiple instances of "unnecessary" billing, such as "1.4 hours for a motion hearing when nothing appears on the docket." (Defs.' Opp., ECF No. 244, at 9.) Defendants have also indicated multiple entries it deems to be vague, such as "review order," "review deposition transcripts," and "review file." (*See,* Ex. B. to Defs.' Resp, ECF No 244-2.) Finally, Defendants argue that argue that Plaintiff billed excessively for reviewing emails and minute orders, billing at least .1 hours each time an email was sent or received, and each time a minute order was read.

"[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper v. City of Chicago Heights,* 223 F.3d 593, 605 (7th Cir. 2000). Based on these last two

*Appendix A-1*

objections, the Court reduces Dymkar's time by an additional 30 hours (approximately 4% of the original 699.9 hours billed).

Based on the corrected hourly rates and hours billed, Plaintiff's lodestar is recalculated as $328,790.00.

| Attorney | Hourly Rate | Hours | Total per Attorney |
|---|---|---|---|
| Irene K. Dymkar | $425 | 531.5 | $225,887.50 |
| Torreya L. Hamilton | $450 | 156.2 | $70,290.00 |
| Kevin Turkcan | $200 | 30.5 | $6,100.00 |
| Paralegals | $125 | 212.1 | $26,512.50 |
| | | **TOTAL** | **$328,790.00** |

### 2. Lodestar Adjustment

Having determined Plaintiff's initial lodestar, the Court must now determine whether an adjustment is appropriate based on the *Hensley* factors, including the results obtained, the complexity of the case, and the public interest. *See, Schlacher,* 574 F.3d at 856–57. The most important factor is the "results obtained," which becomes particularly significant in cases where a prevailing party succeeds on only some claims for relief. *Jaffee v. Redmond,* 142 F.3d 409, 413 (7th Cir. 1998). A plaintiff is not entitled to fees for time expended in pursuit of unsuccessful, unrelated claims. *Id.* (citing *Hensley,* 461 U.S. at 434–35). However, "when claims are interrelated, as is often the case in civil rights litigation, time spent pursuing an unsuccessful claim may be compensable if it also contributed

*Appendix A-1*

to the success of other claims." *Id.* (citing *Hensley,* 461 U.S. at 435).

Because Plaintiff did not actually prevail on any of his federal claims at trial, "Defendants propose excluding all of Irene Dymkar's attorney fees after October 4, 2013 and reducing her fees up to that point by 50%." (Defs.' Opp., ECF No. 244, at 13.) It is unclear why Defendants have chosen October 4, 2013 as the cutoff date, as Plaintiffs did not file their Reply in support of summary judgment until November 22, 2013 [ECF No. 153], and the Court did not enter its summary judgment ruling until March 28, 2014 [ECF No. 178]. Defendants further state that Hamilton's time should be reduced by 90% because she did not join this case until after the Court granted summary judgment and, if anything, only helped secure Plaintiff's damages at trial. Turckan likewise did not join the trial until after the Court's ruling on summary judgment. Defendants argue that his time should be stricken in its entirety because Defendants fail to see "what value, if any, Mr. Turckan added to this case." (Defs.' Opp., ECF No. 244, at 7.)

Plaintiff argues that he was forced to trial because of the City's refusal to settle the case. Plaintiff notes that although the Court initially awarded him summary judgment on his false arrest claim (*see,* ECF No. 178, at 10–14), the City refused to engage in settlement talks, pushing resolution of

*Appendix A-1*

damages to trial. According to Plaintiff, "[t]he City seemed to be oblivious to the fact that if the jury awarded plaintiff damages on the claim for which liability . . . was established at summary judgment, plaintiff would be a prevailing party, entitled to attorneys' fees." (Pls.' Mem., ECF No. 231, at 5.) The City contends it did engage in settlement negotiations, and that its October 6, 2014 settlement offer of $100,000.00 is actually a reason to reduce Plaintiff's lodestar because it was a substantial offer that greatly exceeded the amount ultimately recovered at trial.

Here, reduction of the lodestar is appropriate in light of Plaintiff's limited success. "A plaintiff who achieves excellent results should receive the entire lodestar, but where a plaintiff has achieved only partial or limited success, the lodestar may be an excessive amount." *Montanez v. Simon,* 755 F.3d 547, 556 (7th Cir. 2014) (citations and internal quotations omitted), *cert. denied sub nom., Montanez v. Chi. Police Officers FICO,* 135 S.Ct. 459 (2014). Plaintiff did not receive an "excellent result" when he lost four of the six claims that went to trial and took home a judgment of $30,000.00.

Moreover, it is not clear that these claims were the central or most important claims at issue in the lawsuit. Counsel did not prevail on any of the core claims shared among all four Plaintiffs: illegal entry, illegal search, conspiracy,

*Appendix A-1*

and trespass.  Rather, Counsel only succeeded on two claims specific to Kenneth Baker, which seek unique relief for false arrest and subsequent police misconduct.

In addition, the Court notes that this case did not present any particularly complex legal issues, nor is it likely to result in any broad social impact that will affect persons other than Kenneth Baker.  These factors also support a downward adjustment of the lodestar.  *See, Schlacher,* 574 F.3d at 856–57.

Although the Seventh Circuit has cautioned against the use of the so-called "meat-axe" approach in reducing the lodestar, it has also noted that there is no precise formula for reducing a lodestar to reflect partial or limited success.  *Montanez,* 755 F.3d at 556.  In such cases, "there is nothing to do but make an across-the-board reduction that seems appropriate in light of the ratio between winning and losing claims."  *Richardson v. City of Chicago,* 740 F.3d 1099, 1103 (7th Cir. 2014).  Taking into account the fact that Dymkar's hours have already been reduced as to the conspiracy and trespass claims against Ghidotti and Reliable, the Court concludes that Plaintiff's limited success justifies a 50% reduction of Plaintiff's $328,790.00 lodestar.  Because Defendants have failed to establish why Dymkar's fees should be cut by 50% prior to October 4, 2013, and cut entirely after that point — and why

***Appendix A-1***

Turkcan's fees should be eliminated altogether — the Court finds a 50% overall reduction more appropriate.

Plaintiff's Petition for Fees is granted in part and denied in part in the amount of $164,395.00.

### 3. *Prejudgment Interest*

Plaintiff seeks prejudgment interest on any fee award, assessed from November 3, 2014, at the prevailing prime rate of 3.25%. Defendants argue the prejudgment interest is not appropriate here because Plaintiff failed to comply with Local Rule 54.3, which requires the parties to confer and attempt in good faith to reach an agreement on the amount of fees and costs to be awarded prior to the filing of a fee petition. Plaintiff made no effort to confer with Defendant before filing his fee petition on January 21, 2015, one day short of the 90-day deadline imposed under Local Rule 54.3(b).

Although prejudgment interest is "presumptively available to the victims of federal law violations," whether it is ultimately awarded rests within the sound discretion of the district court. *United States v. Bd. of Educ. of Consol. High Sch. Dist. 230, Palos Hills, Ill.,* 983 F.2d 790, 799 (7th Cir. 1993). "[P]rejudgment interest typically accrues from the date of the loss or from the date on which the claim accrued." *Am. Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.,* 325 F.3d 924, 935 (7th Cir. 2003).

*Appendix A-1*

However, courts within this district have routinely held that it is reasonable for the party opposing a fee petition to have time to review it without being charged interest. *Blackwell v. Kalinowski,* No. 08 C 7257, 2012 WL 469962, at *12 (N.D. Ill. Feb. 13, 2012). Consistent with these rulings, courts often do not assess interest until 30 days after a fee petition has been filed. *See, id.*

Here, because Plaintiff filed his fee petition on January 21, 2015, interest will begin to accrue from February 21, 2015.

### B.  Costs

Federal Rule of Civil Procedure Rule 54(d)(1) provides that a prevailing party may obtain reimbursement for certain litigation costs at the conclusion of a lawsuit. The rule establishes a "presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Trust Co.,* 411 F.3d 854, 864 (7th Cir. 2005).

Here, both parties seek to recover costs as a prevailing party on separate claims against separate parties. Plaintiff seeks $7,574.43 in costs as a prevailing party against Defendants Lindgren, Vera, Martin, Walsh, the City, Ghidotti, and Reliable on the false arrest and malicious prosecution

*Appendix A-1*

claims, while Defendants seek $6,714.60 in costs as the prevailing party against Plaintiffs Barbara and Camden Baker. Under Rule 54(d), the "prevailing party" is the party who prevails on a substantial part of the litigation. *Testa v. Vill. of Mundelein, Ill.,* 89 F.3d 443, 447 (7th Cir. 1996). However, a party may receive substantial relief even if it doesn't prevail on every claim. *Slane v. Mariah Boats, Inc.,* 164 F.3d 1065, 1068 (7th Cir. 1999).

District courts have broad discretion in awarding reasonable costs, particularly in cases that result in a "mixed outcome." *Gavoni v. Dobbs House, Inc.,* 164 F.3d 1071, 1075 (7th Cir. 1999). Where a verdict is split fairly evenly, a court may decline to award costs to either party. *See, e.g., Testa,* 89 F.3d at 447 (requiring each party to bear its own costs where plaintiff had prevailed on one of two claims).

Here, the jury was asked to return a verdict on 22 claims distributed among four Plaintiffs. Kenneth Baker prevailed on two of the six claims he asserted, recovering a judgment of $30,000.00 — an award that is more than nominal, "but certainly not substantial." *Gonzalez v. City of Elgin,* No. 06 C 5321, 2010 WL 4636638, at *2 (N.D. Ill. Nov. 8, 2010). Defendants, on the other hand, prevailed on all remaining claims. Although this is a "mixed outcome" case, the verdict indicates that Defendants — not Plaintiff — prevailed on a "substantial part"

- 20 -

*Appendix A-1*

of the litigation.    The Court therefore denies Plaintiff's application for costs.

Turning to Defendants' application for costs, the Court must assess whether the fees sought are both (1) recoverable, and (2) reasonable.  *Majeske v. City of Chicago,* 218 F.3d 816, 824 (7th Cir. 2000).  Costs recoverable under Rule 54(d) are set out in 28 U.S.C. § 1920.  Here, Defendants seek to recover the following amounts: (1) $169.00 for fees incurred in serving two subpoenas, (2) $5,444.64 in transcript fees, (3) $615.00 in copying fees, and (4) $485.00 in "other costs" incurred in obtaining Plaintiffs' employment and education records.  The Court addresses each category in turn.

First, Defendants seek $169.00 in subpoena fees.  Under § 1920, courts may award costs for "[f]ees of the clerk and marshal."  28 U.S.C. § 1920(1).  This provision enables a prevailing party to recover costs for using a private process server, "as long as those costs do not exceed the fees charged by a marshal."  *Dishman v. Cleary,* 279 F.R.D. 460, 466 (N.D. Ill. 2012).  The allowable fee charged by a marshal is $65.00 per hour plus travel costs and out-of-pocket expenses.  28 C.F.R. § 0.114(a)(3).  The invoice Defendants have provided do not break down the $209.00 in "services rendered," so the Court cannot determine whether the subpoena fees exceed the standard hourly rate of $65.00.  The Court will therefore limit the

- 21 -

*Appendix A-1*

subpoena fees sought to $65.00 per witness, for a total of $130.00.

Second, Defendants seek $5,444.64 in transcript fees. The costs of transcripts "necessarily obtained for use in the case" are recoverable pursuant to § 1920 as long as they do not exceed the regular per-page rate of $3.65 per page established by the Judicial Conference of the United States. *See,* 28 U.S.C. § 1920(2); L.R. 54.1(b). Only one of the transcripts Defendants seek rises above this rate — a 233-page trial transcript, requested while the trial was pending, and produced at a rate of $4.25 per page. Defendants do not explain why this transcript was "obtained for use in the case," although presumably it was used to support their Motion for Judgment as a Matter of Law (*see,* ECF No. 221). The Court reduces the per-page cost of this transcript to $3.65, lowering Defendants' transcript fees by $139.80, from $5,444.64 to $5,306.84.

Third, Defendants seek $615.00 in copying fees. Section 1920 expressly authorizes "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Extra copies of filed papers, produced for attorney convenience, are not recoverable. *Young v. City of Chicago,* No. 00 C 4478, 2002 WL 31118328, at *2 (N.D. Ill. Sept. 24, 2002). Defendants — not the district court — bear the burden of

- 22 -

***Appendix A-1***

showing that the copies for which they seek reimbursement were "necessarily obtained for use in the case." *See, Rice v. Sunrise Express, Inc.,* 237 F.Supp.2d 962, 980 (N.D. Ind. 2002). Defendants have not made this showing here. Their tally of photocopying charges reads much like the docket in this case, and it is unclear when Defendants were photocopying papers for their own convenience and when they were doing so out of necessity. Accordingly, the Court reduces Defendants' photocopying costs by 20%, from $615.00 to $492.00.

Finally, Defendants seek $485.96 in "other costs," namely, the costs incurred in obtaining the employment records of Kenneth and Barbara Baker, and the education records of Ashley Baker. These records were relevant to defending against Plaintiffs' intentional infliction of emotional distress claims, although those claims did not ultimately proceed to trial. The costs of subpoenaing records is recoverable under § 1920. *See, e.g., Falcon v. City of Chicago,* No. 98 C 4028, 2000 WL 1231403, at *2 (N.D. Ill. Aug. 28, 2000) (allowing defendant to recover subpoena fees incurred in obtaining plaintiff's medical and employment records). The Court therefore awards Defendants their request for the fees related to the employment and education records in full.

Defendants' Application for Costs is granted in part and denied in part in the total amount of $6,414.80.

*Appendix A-1*

### III.    CONCLUSION

For the reasons stated herein, the Court rules as follows:

1.    Plaintiff's Petition for Fees [ECF No. 231] is granted in part and denied in part, in the total amount of $164,395.00, plus interest assessed at a rate of 3.25% from February 21, 2015;

2.    Plaintiff's Application for Costs [ECF No. 223] is denied;

3.    Defendants' Application for Costs [ECF No. 220] is granted in part and denied in part, in the total amount of $6,414.80; and

4.    Defendants' Motion to Strike Plaintiff's Fee Petition [ECF No. 236] is denied.

**IT IS SO ORDERED.**


_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 4/24/2015

*Appendix A-1*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **KENNETH BAKER, BARBARA BAKER,** | ) |
| **CAMDEN BAKER, and A. B., Minor, by Parent** | ) |
| **BARBARA BAKER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) **Case No. 11 C 4197** |
| | ) |
| **TIMOTHY M. GHIDOTTI, BORIS JURKOVIC,** | ) **Judge Harry D. Leinenweber** |
| **RELIABLE RECOVERY SERVICES, INC.,** | ) |
| **JEAN M. LINDGREN, JESUS VERA,** | ) |
| **STEVEN MARTIN, JUAN M. CABRALES,** | ) |
| **DENNIS P. WALSH, MICHAEL A. FLORES,** | ) |
| **UNKNOWN OFFICERS OF THE CHICAGO** | ) |
| **POLICE DEPARTMENT, and CITY OF** | ) |
| **CHICAGO,** | ) |
| | ) |
| **Defendants.** | ) |

**PLAINTIFF'S MOTION TO RECONSIDER THE COURT'S DECISION**
**OF APRIL 24, 2015**

Plaintiff, Kenneth Baker, by and through his attorneys, Irene K. Dymkar, Torreya L.

Hamilton, and Kevin T. Turkcan, hereby moves the Court to reconsider its decision of April 24,

2015, regarding attorneys' fees and costs, because plaintiff submits there was a misapprehension

by the Court of the law or facts, the application of an incorrect standard, and the adoption of

defendants' erroneous arithmetic, double deductions, and incorrect allegations.

**Introduction**

Following almost three-and-a-half years of litigation and a five-day jury trial ending

on October 24, 2014, the jury awarded plaintiff Kenneth Baker $25,000.00 in compensatory

damages in his false arrest claim against defendants Steven Martin, Jean M. Lindgren, and Jesus

Vera, and the jury found in favor of plaintiff Kenneth Baker and awarded him $5,000.00 in his

malicious prosecution claim against defendants Timothy M. Ghidotti and Steven Martin.

*Appendix A-2*

On April 24, 2015, the Court issued a decision regarding plaintiff's petition for attorneys' fees and costs. Plaintiff respectfully asks the Court to reconsider its decision for the reasons set forth herein.

### The Court erred in denying costs to plaintiff

Plaintiff filed a Bill of Costs, with costs totaling $7,574.43. *Document 223.* In addition, plaintiff submitted additional costs with his petition, totaling $182.00. *Document 231-20.*

Rule 54(d)(1) provides that "costs . . . should be allowed to the prevailing party." *Fed.R.Civ.P. 54(d)(1).* The Seventh Circuit has recognized only two situations in which the denial of costs might be warranted: the first involves misconduct of the party seeking costs, and the second involves a pragmatic exercise of discretion to deny or reduce a costs order if the losing party is indigent. *Mother and Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir.2003). Neither of those two exceptions applies here.

A party prevails when it is awarded substantial relief. *Smart v. Local 702 Int'l Bhd. of Electrical Workers,* 573 F.3d 523, 525 (7th Cir.2009). The Court appears to have erred in its interpretation of "substantial" as meaning "the most claims." Kenneth Baker alleged Fourth Amendment violations and he prevailed on Fourth Amendment violations. The jury awarded him $25,000.00. That amount is substantial. It is not nominal. It is not *de minimus.*

Costs of $7,574.43, plus $182.00, should be awarded to plaintiff as the prevailing party.

### The Court erred in granting costs to defendants

The Court granted costs to defendants in the amount of $6,414.80. Plaintiff submits this was error.

Three observations are important: First, the exact same defendants who won claims brought by plaintiffs also lost claims brought by plaintiff Kenneth Baker. In other words, unlike

*Appendix A-2*

in *Gonzalez v. City of Elgin,* 2010 WL 4636638 *2 (N.D.Ill.Nov. 8, 2010), cited by the Court,

there are no City defendants in the present case who proceeded to trial who were not found liable

on some claim.

Second, as this Court correctly noted in *Gilfand v. Planey,* 2012 WL 5845530 *6

(N.D.Ill.Nov.19, 2012), where defendants cannot segregate their costs by the claims they won,

they cannot claim costs.   In other words, because the facts and claims are interrelated,

defendants Martin, Lindgren, and Vera have not and, in fact, cannot state which costs are

attributable solely to the illegal entry and search of the home claims (which they won), as

opposed to the claim of the arrest that took place after defendants entered the home (which they

lost).  In *Gilfand,* this Court cited *Edwards v. Rogowski,* 2009 WL 742871 (N.D.Ill.March 18,

2009) for the holding that defendant should be denied costs in that the defendant failed to show

that "the defendants would not have incurred the same expenses had [the defendant not found

liable] not been named as a defendant."  This Court also cited *Shatner v. Cowan,* 2009 WL

5210528 *1-2 (S.D.Ill.Dec.28, 2009) for the holding that "the liable Defendants benefitted from

the use of all deposition transcripts and would have incurred these costs whether or not [the

plaintiff] prevailed against the dismissed Defendants," and further, that "[a]ll of the Defendants -

dismissed or liable - were jointly represented in this matter and they jointly incurred expenses."

This is an even stronger case than *Gilfand, Edwards,* or *Shatner.*  The City of Chicago

defended all defendants.  All defendants who proceeded to trial were found liable on at least one

claim.  The City of Chicago benefitted from the use of the material it obtained, most notably the

deposition transcripts, and would have incurred those costs whether the entry and search claims

had been brought or not.

The costs incurred by the City of Chicago thus would have been incurred by the City of

Chicago whether Barbara Baker and Camden Baker were also plaintiffs, or not, and whether the

*Appendix A-2*

defendants who had been found liable on Kenneth Baker's claim had won the entry and search claims or not. There is not one cost the City, or any defendant, can point to that it incurred solely because Barbara Baker and Camden Baker were plaintiffs, or because the entry and search claims were brought.

Costs to defendants should be denied.

**The Court did not give sufficient weight to a previous agreement entered into by the City of Chicago when determining the reasonableness of plaintiff's attorneys' fee request**

Plaintiff informed the Court of an agreement reached through Seventh Circuit mediation between two of the plaintiff's counsel and the City of Chicago in an unrelated case, *Armstrong v. Maloney,* (14-1571 7th Circuit, 08 C 4398 N.D.Ill.). Plaintiff asks the Court to give sufficient weight to the agreement defendant City of Chicago entered into regarding these two attorneys, when determining their attorneys' fees in the present case. The Seventh Circuit held in *Johnson v. GDF, Inc., d/b/a Domino's Pizza,* 668 F.3d 927, 933 (7th Cir.2012), citing *Pickett v. Sheridan Health Care,* 664 F.3d 632, 640 (7th Cir. 2011) that an award for similar work is relevant to the Court's determination of a lodestar, whether the award results from a court determination of a dispute of the parties or from an agreement of the parties.

As submitted to this Court (see *Document 245, 245-1*), plaintiffs made the following lodestar calculation in *Armstrong*:

| Attorney/Paralegal | Rate | Number of hours | Lodestar |
|---|---|---|---|
| Irene K. Dymkar | $495/hour | 739.1 hours | $365,854.50 |
| Torreya L. Hamilton | $425/hour | 168.1 hours | $71,442.50 |
| Amy Kaliski (Paralegal) | $100/hour | 171.4 hours | $17,140.00 |
| Sarah D. Brandt (Paralegal) | $100/hour | 3.1 hours | $310.00 |
| Kevin Turkcan (Paralegal) | $100/hour | 6.6 hours | $660.00 |
| | | **Total legal fees** | **$455,407.00** |

*Appendix A-2*

The City of Chicago agreed on November 26, 2014, to pay $473,000.00 on this petition. It thus paid the lodestar (the demanded hourly rate times the reported hours) fully, plus interest. It specifically agreed that plaintiff's counsel could "refer[] to this stipulation as an agreement that $473,000 is a reasonable fee for plaintiffs' counsel in this case." *Document 245-2.*

If plaintiffs' lodestar was reasonable in the *Armstrong* case in November 2014, plaintiff's comparable lodestar in the present case should be reasonable now. The Court should not allow the City of Chicago to relitigate every issue every time it loses at trial and plaintiff files a fee petition. The circumstances between *Armstrong* and the present case are similar. The plaintiffs' attorneys were the same as in the present case and the City of Chicago was the defendant. There was no offer from the City of Chicago before trial in *Armstrong*. *Armstrong* involved the illegal entry and search of the Armstrong home, and the illegal detention of plaintiffs. The jury found for plaintiffs on several claims and for defendants on some claims. The *Armstrong* verdict was higher than here ($300,000.00). However, the number of depositions and the discovery were comparable. The length of the trial was comparable.

Plaintiff asks the Court to reconsider its decision and give weight to the stipulations made by the City of Chicago in *Armstrong.*

**It is anomalous for the Court to award attorney Dymkar a rate of $425/hour**

The Court found that both Irene K. Dymkar and Torreya L. Hamilton are "seasoned attorneys with substantial experience litigating civil rights cases." *Document 250 at 6.* Attorney Dymkar has been practicing law 38 years. She sought an hourly rate of $495. She was previously awarded $425/hour by Judge Elaine Bucklo three years ago, in 2012. As this Court noted for the attorneys in *Gilfand v. Planey,* 2012 WL 5845530 *9-14, a request for an increase in hourly rate over time is reasonable.

*Appendix A-2*

The Court references Magistrate Judge Schenkier's comment in the 2008 case of *Ragland v. Ortiz,* 2012 WL 4060310 *3 (Sept. 14, 2012) that Ms. Dymkar "lacks the experience" in police misconduct cases. Unfortunately, the Magistrate Judge incorrectly de-valued attorney Dymkar's practice in New York State, starting in 1977, which included the prosecution and defense of murder and other violent felony cases, civil rights litigation, medical malpractice, and other serious personal injury litigation. The same year Magistrate Judge Schenkier awarded Ms. Dymkar only $330/hour, Judge Bucklo awarded her the more reasonable $425/hour, thus more correctly accounting for Ms. Dymkar's experience.

 Practice exclusively in the Northern District of Illinois is not a prerequisite for a reasonable hourly rate. Neither is the exclusive practice in civil rights law a prerequisite for a reasonable hourly rate. However, this Court stated in its decision: "Indeed, Dymkar only began to focus exclusively on civil rights cases in 2006" (*Document 250 at 9*). The Court presumably considered this a big negative factor.

Having a shift in practice or having a hybrid practice, however, is not at all unusual. To the contrary, it is common. For example, Arthur Loevy of Loevy and Loevy was a labor lawyer from 1963 until 1970, then a union officer (not a practicing attorney) for *27 years,* until 1997, after which he resumed the practice of law. He has been practicing civil rights law only since 1998. Yet he has been awarded $550/hour several times by the Court and in *Fox v. Barnes,* N.D.Ill. 09 C 5453, was awarded $565/hour, by agreement. This is comparable to the $535/hour awarded in 2012 in the case of *Foltin v.Ugarte,* 09 C 5237 N.D.Ill. to attorney Thomas Morrissey, an attorney who has been practicing since 1979 and exclusively engaged in civil rights litigation longer than Mr. Loevy.[1]

---

[1]   There are other examples of hybrid practices. Attorney Christopher Smith was a public defender until 2003, when he established his civil rights and criminal defense firm. Attorney Gregory E. Kulis has a hybrid practice in which he focuses on civil rights and commercial law. In *Gay v. City of Chicago,* 08C 6472, the City *agreed* to pay Mr. Kulis, a 1981 law graduate, $475/hour. Many civil rights

***Appendix A-2***

Plaintiff asks the Court to reconsider, and set Ms. Dymkar's hourly rate at $495.

### The Court was not correct in saying that "Plaintiff did not actually prevail on any of his federal claims at trial"

The Court was not correct in saying that "Plaintiff did not actually prevail on any of his federal claims at trial." *Document 250 at 15.* Plaintiff was forced to trial because defendants refused to engage in reasonable settlement negotiations. Had plaintiff Kenneth Baker not proceeded to trial, he would have received $0 for having his constitutional rights violated, despite the summary judgment decision. Liability without a damages determination is only half a loaf. Mr. Baker thus *did* prevail on a federal claim at trial.

Defendants do not deny that plaintiffs' counsel tried to settle this case several times early in the case, starting *three years before trial.* Plaintiff's counsel lists the dates and the attorney she spoke to: July 19, 2011 (Fronczak), September 7, 2011 (Gibson), October 13, 2011 (Gibson), October 19, 2011 (Fronczak), December 21, 2011 (Gibson), February 8, 2012 (Gibson), and May 23, 2012 (Fronczak). After the March 28, 2014, summary judgment decision, plaintiff's counsel again approached the defendants about settlement, but the City of Chicago was not interested. At that point, attorneys' fees was near $200,000.00 (over 478 hours expended). Thus, even if plaintiff had accepted the City's offer of $100,000.00 on October 6, 2014, two weeks before trial (when over 550 attorney hours had already been expended), *plaintiff would still have received $0,* in that the $100,000.00 would have gone towards attorneys' fees and costs.

This Court was correct in *Gilfand v. Planey,* 2012 WL 5845530 *16 (N.D.Ill. November 19, 2012), when it said:

---

attorneys, such as Jeffrey J. Neslund, Michael Robbins, and Brendan Shiller, practice both criminal defense law and civil rights law. Civil rights attorney Edward Fox practices nursing home negligence and medical malpractice, as well as civil rights law pertaining to police misconduct and employment discrimination.

> While the Court recognizes that this settlement award is clearly great than the
> jury's compensatory and punitive damage award, the Court does take into account
> that $34,000 plus attorneys' fees "could produce a higher total" than $100,000
> without attorneys' fees.

Kenneth Baker would not have won his case if he did not have an attorney. However, when an attorney works on a case, time and money are expended. The whole purpose of awarding attorney's fees under 42 U.S.C. § 1988 is to provide an incentive for competent and skilled attorneys to take on unpopular cases and indigent clients. *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 578 (1992) (O'Connor, J. concurring) ("[I]t is a tool that ensures the vindication of important rights, even when large sums of money are not at stake, by making attorney's fees available under a private attorney general theory"); see *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986); *Newman v. Piggie Park Enters*., 390 U.S. 400, 402 (1968); *Kerr v. Quinn,* 692 F.2d 875, 877 (2nd Cir.1982) ("The function of an award of attorneys' fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel.")

The Court's statement that "Plaintiff did not actually prevail on any of his federal claims at trial" implies a finding by the Court that plaintiff prolonged the litigation unnecessarily. Certainly, the Court would not hold that Mr. Baker should have abandoned his claim and not proceeded to trial. The City forced plaintiff to trial in order for him to obtain any compensation whatsoever, and plaintiff would not have been able to succeed at summary judgment and at trial without the assistance of his attorneys.

**The Court did not apply the right standard in finding that plaintiff was not successful**

The Court held that plaintiff's lodestar should be reduced because of plaintiff's "limited success," and further that "[p]laintiff did not receive an 'excellent result' when he lost four of the six claims that went to trial and took home a judgment of $30,000." *Document 250 at 16.* The

Court said that the award of $30,000.00 "is more than nominal, 'but certainly not substantial.'"
*Id.* at 20.

This was not a million dollar case, however, and plaintiff did not ask for a million dollars. In fact, plaintiff's counsel did not ask for any specific amount. A jury award of $30,000.00 *does* constitute a substantial success.

There has long been no proportionality requirement to Section 1988. See *Grosvenor v. Brienen,* 801 F.2d 944, 946 (7th Cir.1986) ("The Supreme Court has rejected the proposition that fee awards under §1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers because such a rule 'would seriously undermine Congress' purpose in enacting §1988'.") (citations omitted); *Dunning v. Simmons Airlines, Inc.,* 62 F.3d 863 (7th Cir. 1995) ("In determining the reasonableness of attorney's fees, this court has rejected the notion that the fees must be calculated proportionally to damages. . . As we understand §1988's provision for allowing a 'reasonable attorney's fee,' it contemplates reasonable compensation, in light of all of the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less."); *Littlefield v. McGuffey,* 954 F.2d 1337, 1350-51 (7th Cir. 1992) ("The size of the damage award, however, is not the gauge of a plaintiff's victory").

As this Court held in *Gilfand v. Planey,* 21012 WL 5845530 *8-9 (N.D.Ill.November 19, 2012), citing the Seventh Circuit: "Neither the Supreme Court nor this Court has required any correspondence between the degree to which a plaintiff has financially prevailed and the attorney fees awarded to him" [citing cases]. An attorneys' fee award need not be proportionate to the damages award.

The Court was in error in saying that the award to plaintiff was not "excellent" and not "substantial" and in applying a proportionality standard. With all due respect, the Court applied the wrong standard.

9

*Appendix A-2*

**The 50% reduction in attorneys' fees is not warranted and unfairly punishes plaintiff's attorneys, who tried to work ethically and in good faith to prosecute all plausible and viable claims for their clients**

The Supreme Court and Seventh Circuit have held that the law does not award less than the lodestar simply because plaintiff did not win every possible legal claim against every possible defendant. That is simply not the way that Section 1988 operates. As the Supreme Court said in *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983):

> [T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

As the Seventh Circuit said in *Lenard v. Argento*, 808 F.2d 1242, 1245–46 (7th Cir. 1987):

> For tactical reasons and out of caution lawyers often try to state their client's claim in a number of different ways, some of which may fall by the wayside as the litigation proceeds. [If the lawyer]. . . presents a congeries of theories each legally and factually plausible, he is not to be penalized just because some, or even all but one, are rejected, provided that the one or ones that succeed give him all that he reasonably could have asked for.

The Court was not correct in holding "it is not clear that these claims [false arrest and malicious prosecution] were the central or most important claims at issue in the lawsuit. Counsel did not prevail on any of the core claims shared among all four Plaintiffs: illegal entry, illegal search, conspiracy, and trespass." *Document 250 at 16.* The false arrest *was* central to the case. Moreover, and more importantly, all of plaintiffs' claims revolved around the same nucleus of facts.

There was not a single attorney hour spent on one claim or one party that would not also have been necessary for the successful claims against the losing defendants. Kenneth Baker's false arrest took place after the police barged into the Baker home and searched the home. The

10

*Appendix A-2*

facts of the false arrest are not separable from the facts of the police entry and search. Whether plaintiffs Barbara Baker, Camden Baker, and Ashley Baker prevailed at trial or not, and whether Timothy Ghidotti was found liable or not, they were all critical witnesses who had to be deposed and who had to be called to the stand at trial.

Where the claims all concern the same common nucleus of facts, it does not matter that some of the different legal claims may have dropped out along the way. *Dunning v. Simmons Airlines*, Inc., 62 F.3d 863, 872 (7th Cir.1995) ("Because of the interrelated nature of the two claims, her attorneys had to prepare for the 'litigation as a whole'") (quoting *Rivera*, 477 U.S. at 569). Just as this Court held in *Gilfand,* the unsuccessful claims here "were sufficiently related to the claims in which Plaintiffs were successful." *Gilfand,* 2012 WL 5845530 at *10. See *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998) ("*Hensley* makes clear that when claims are interrelated, as is often the case in civil rights litigation, time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other claims"); *Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997) (disapproving of a "meat-axe approach" to reducing lodestar fees, and stating that "[p]ercentage reductions of the kind the district court used are not a good way to make adjustments for partial success").

Plaintiffs' attorneys should not be punished for being diligent in pursuing nonfrivolous claims that were interrelated and intertwined with the claims on which plaintiff was successful. There are important policy reasons why this should not happen, because "[i]f arguments that do not contribute to a plaintiff's ultimate success were not eligible for compensation for that reason alone, then attorneys might be discouraged from raising novel but reasonable arguments in support of their clients' claims and a disincentive for strong advocacy could result." *Partington v. Broyhill Furniture Indus.*, 999 F.2d 269, 273–74 (7th Cir.1993) ("A lawyer who figures out the likeliest outcome in his favor, and aims only for that, is likely to fall short. The good lawyer aims

higher, and is not improvident to do so"). See *Jaffee*, 142 F.3d at 415-17 ("The ethics of the legal profession counsel an opposite approach," that is, the vigorous pursuit of clients' rights).

According to the Supreme Court and the Seventh Circuit, the lodestar is the *presumptive* fee. E.g., *Perdue v. Kenny A.*, 130 S.Ct. 1662, 1633 (2010) (lodestar calculation is presumptively reasonable, and fees may be adjusted only in "those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee"); *Johnson v. GDF, Inc. d/b/a Domino's Pizza*, 668 F.3d 927, 929 (7th Cir.2012) (*In limited circumstances*, once calculated, the lodestar amount may be adjusted).

The 50% reduction in attorneys' fees is not warranted and unfairly punishes plaintiff's attorneys, who tried to work ethically and in good faith to prosecute all plausible and viable claims for their clients.

**The Court erred in adopting defendants' erroneous arithmetic, their double deductions, and their incorrect allegations**

*A. The Court's deduction for time spent on Reliable Recovery claims included the hours that plaintiff had already deducted for Reliable Recovery claims*

Defendants have misled the Court. This resulted in the Court finding as follows:

> First, Defendants argue that the hours billed still include 128.5 hours of attorney time attributable exclusively to Ghidotti, an employee of Reliable, that were entered prior to the date of the Court's summary judgment ruling . . .

> Defendants, however, have combed through Plaintiff's billing records and singled out individual entries that pertain only to Reliable. Many are clearly labeled "RRS." The Court agrees that these entries should have been eliminated *along with the other 84.2 hours* (Emphasis added). The Court finds that a reduction of Dymkar's hours by 128.5 to be appropriate.

*Document 250 at 12.*

***Appendix A-2***

However, as can be seen from Exhibit A attached hereto, defendants' 128.5 hours included 77.9 hours that plaintiff *had already deducted.*[2]  In other words, those hours were deducted twice.  Those 77.9 hours should be added back in.

B.   *The Court's adoption of defendants' deduction for time spent on Reliable Recovery claims included the hours that plaintiff would have had to spend whether Ghidotti had been a defendant or not*

The Court adopted defendants' unfair deduction of time for deposition preparation and for depositions that were necessary, and for other legal work that would have been performed, whether Ghidotti had been a defendant or not.  Defendants, for example, deducted:

| | | |
|---|---|---|
| 9/27/2011 | TC with Timothy Ghidotti | .3 |
| 10/12/2011 | Research Reliable Recovery websites | .4 |
| 10/19/2011 | Court | .8 |
| 2/8/2012 | Conference w Timothy Ghidotti | .3 |
| 2/15/2012 | TC with Timothy Ghidotti | .2 |
| 7/2/2012 | Review Rule 26(a)(1) disclosures | .4 |
| 10/8/2012 | TC with Juanita Horton | .6 |
| 10/12/2012 | TC w Juanita Horton | .4 |
| 11/1/2012 | Prepare for deposition | .8 |
| | Deposition of Timothy Ghidotti | 7.4 |
| | Google research Boris Jurkovic | .7 |
| 11/12/2012 | TC with Oliver Johnson | 1.1 |
| 11/16/2012 | Conf with Juanita Horton | 1.5 |
| 11/19/2012 | Prepare for deposition | 1.1 |
| | Deposition of Juanita Horton | 1.8 |
| | Deposition of Oliver Johnson | 1.3 |
| 2/5/2013 | Prepare for deposition | 1.1 |
| | Deposition of Boris Jurkovic | 2.5 |
| 3/12/2013 | Court | .8 |
| 12/3/2013 | Draft motion to reset court date | .5 |
| | Draft notice of motion | .1 |
| 12/5/2013 | Court | .8 |
| 12/20/2013 | Review filed court transcript | .2 |
| 2/19/2014 | Court | .9 |
| | TOTAL | 26.0 hours |

---

[2]   Plaintiff identified 84.2 hours attributable to Reliable Recovery claims and deducted them. 77.9 of those hours (indicated in Exhibit A in green) were double-deducted by defendants as being attributable to Reliable Recovery claims.

*Appendix A-2*

If Kenneth Baker had been the only plaintiff, plaintiff's counsel would still have had to take the depositions of Timothy Ghidotti (the repossession man who called the police to begin with), Boris Jurikovic (Ghidotti's boss who was originally believed to be at the scene and who would not disclose the name of the second employee who was in fact at the scene), Juanita Horton (whose vehicle was the subject of Ghidotti's middle-of-the-night visit to the Baker home), and Oliver Johnson (Juanita's brother and Kenneth Baker's step-son).

In addition, plaintiff's counsel would have had to e-mail and speak to attorney Ruth McCoy whether Ghidotti had been a defendant or not. He was one of the important witnesses in the case. While plaintiff made a good faith deduction of attorney time she spent in communications directly regarding the claims against Ghidotti and his summary judgment motion, it would be wrong to deduct ALL the time spent in communication with Ms. McCoy. Throughout the case, Ms. McCoy provided useful information as to why Ghidotti was at the scene, what documentation he had, and what Ghidotti told the police.

Time spent on legal work that was necessary, whether Ghidotti had been a defendant or not, should not be deducted.

C. *The Court should not have accepted defendants' deduction for time they claim was "unnecessary" or "vague," in that the deduction was not documented and was duplicative*

It was error for the Court to reduce plaintiff's hours by 30 hours, as a "percentage" deduction, based on defendants' arguments that the time was "unnecessary" or "vague." Once again, defendants misled the Court and also engaged in double deductions.

The only instance of "unnecessary" billing to which the Court gives credence is defendants' claim that plaintiffs billed "1.4 hour for a motion hearing when nothing appears on the docket." *Document 250 at 13.* However, plaintiff's time and work records contain *no entry for a motion hearing for 1.4 hours.* Moreover, none of the dates in the footnote in defendants'

response (*Document 244 at 9, fn 6*) corresponds to a motion hearing date at all. Plaintiff is in the dark as to what defendants are complaining about, and the basis on which the Court deducted the time.

The Court states that defendants "cite multiple instances of 'unnecessary' billing," in addition to the 1.4 hours discussed above. However, the time specifically listed by defendants in their response (*Document 244 at 9*) was all reasonably spent. Defendants complained about the following:

> .8 for plaintiff's counsel's attendance at a court hearing where she defended a motion to compel
> .5 for drafting a motion to allow plaintiff to file extra pages in a brief
> .5 for drafting agreed orders that the parties could never actually agree to
> .9 for drafting a motion to reset a date because plaintiff's counsel had a conflict

These activities (totaling 1.4 + 2.7, or 4.1 hours) were hardly "unnecessary."

The Court held that certain entries such as "review order," "review deposition transcripts," and "review file" were vague. However, there were 17 depositions taken in this case and some of the depositions took the full seven hours. Plaintiff's counsel had to read all the deposition transcripts at some point. Plaintiff's counsel was reading deposition transcripts and performing legal research to prepare plaintiff's summary judgment motion, to defend the summary judgment motions the City defendants brought, and to prepare for trial. Some of the entries defendants complained about, ironically, were even *on the same dates* as the entries for preparing a response to the City's motion for summary judgment:

| | | |
|---|---|---|
| 9/10/2013 | Legal research MSJ issues | .8 |
| 9/14/2013 | Review deposition transcripts | 2.3 |
| 9/16/2013 | Legal research MSJ issues | 1.3 |
| 9/19/2013 | Review deposition transcripts | 5.5 |
| 9/23/2013 | Review deposition transcripts | 3.3 |
| 9/30/2013 | Review deposition transcripts | .8 |

15

***Appendix A-2***

| 10/4/2013 | Review deposition transcripts | 2.3 |
| 10/5/2013 | Review deposition transcripts | 2.1 |
| 10/6/2013 | Review deposition transcripts | 3.3 |
| 10/7/2013 | Review deposition transcripts | 3.5 |
| | TOTAL | 25.2 hours |

Certainly these additional 25.2 hours to read 17 deposition transcripts and perform legal research were not unreasonable. Just because plaintiff's counsel did not list which of the 17 deposition transcripts she was reading on each particular day does not mean that the time, when looked at its totality, was unreasonably spent. Moreover, "time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other claims." *Jaffee v. Redmond,* 142 F.3d 409, 413 (7th Cir.1998).

Also important, defendants sought and succeeded in making double deductions by complaining *both* that plaintiff's counsel's review of deposition transcripts should be attributable to working on Ghidotti claims, and also that an entry that reads "Review deposition transcripts" is vague. Defendants' claims of "unnecessary" or "vague" entries led the Court to deduct an additional 30 hours off as a "percentage" (*Document 250 at 13-14*), after it had already deducted 128.5 hours (*Document 250 at 12*), more than half of which plaintiff's counsel had already in good faith deducted before submitting their time and work records. Defendants' attempt to make double deductions thus actually resulted in *a triple deduction* for some entries, because plaintiff had already in good faith deducted for the time.

Plaintiff submits that it was error for the Court to reduce plaintiff's hours by 30 hours as a "percentage" based on defendants' arguments that the time was "unnecessary" or "vague." Thirty hours of uncompensated time is a huge loss for plaintiff's counsel.

16

*Appendix A-2*

WHEREFORE, plaintiff, Kenneth Baker, respectfully requests that the Court

reconsider its decision of April 24, 2015, as set forth herein, and grant the following:

1)   An order granting costs to plaintiff in the amount of $7,574.43, plus $182.00,

2)   An order denying costs to defendants,

3)   An order granting plaintiff the full lodestar requested, that is, 699.9 hours at $495/hour for Irene K. Dymkar, 156.2 hours at $450/hour for Torreya Hamilton, 30.5 hours at $200/hour (the Court's set rate) for Kevin Turkcan, and 212.1 hours at $125/hour for the paralegals, with no reduction of hours and with no percentage reduction of the lodestar.


Dated: May 22, 2015                    /s/    Irene K. Dymkar
                                              Irene K. Dymkar

Attorneys for Plaintiff:

Irene K. Dymkar                        Torreya L. Hamilton
Law Offices of Irene K. Dymkar         Kevin T. Turkcan
53 W. Jackson Street, Suite 562        The Hamilton Law Office, LLC
Chicago, IL 60604-3420                 53 W. Jackson, Suite 452
(312) 345-0123                         Chicago, IL 60603
                                       (312) 726-3173

*Appendix A-2*

*Irene K. Dymkar*
*53 West Jackson, Suite 562*
*Chicago, IL 60604-3420*
*(312) 345-0123*

**LEGAL SERVICES FOR PLAINTIFFS IN** *BAKER v. GHIDOTTI, et al* **., 11 C 4197**

| Date | Service provided | Time expended (in hours) | |
|---|---|---|---|
| 7/6/2010 | Initial TC w client | 0.7 | |
| 7/8/2010 | Conf w clients | 2.1 | |
| | Draft retainer agreement (3) | 0.6 | |
| 7/9/2010 | Set up file | 0.7 | |
| | Review police records | 0.5 | |
| | Develop plan for case | 0.6 | |
| 7/23/2010 | Obtain criminal court file for incident | 0.5 | |
| | Obtain criminal court file for prior arrest | 0.5 | |
| | Review criminal court file for incident | 0.4 | |
| | Review criminal court file for prior arrest | 0.3 | |
| 8/10/2010 | TC w client | 0.4 | |
| 8/12/2010 | Review file, plan case strategy | 0.5 | |
| | Conf w Porsche Baker | 1.1 | |
| | Draft retainer agreement | 0.2 | |
| 9/15/2010 | Obtain criminal court transcripts | 0.4 | |
| | Review criminal court transcripts | 0.7 | |
| 1/17/2011 | Review file, plan case strategy | 0.9 | |
| 1/18/2011 | Review file, plan case strategy | 0.8 | |
| 1/19/2011 | Review file, plan case strategy | 0.4 | |
| 1/24/2011 | Review file, plan case strategy | 0.2 | |
| 5/25/2011 | TC w Porsche Baker | 0.8 | |
| 6/15/2011 | Review file, plan case strategy | 0.5 | |
| 6/17/2011 | Legal research regarding claims | 1.2 | |
| | Draft complaint | 3.3 | |
| 6/20/2011 | Research claims | 2.2 | |
| | Draft complaint | 4.1 | |
| | Draft attorney appearance | 0.2 | |
| | Draft cover sheet | 0.2 | |
| 6/21/2011 | Review court assignment | 0.1 | |
| | Letter to client | 0.3 | |
| | Draft summonses (8) | 0.5 | |
| 7/1/2011 | Draft amended complaint | 0.8 | |
| 7/5/2011 | Review OEMC CD | 0.9 | |
| | Review police records and file | 0.7 | |
| | Draft summons for amended complaint (3) | 0.3 | |
| | Review affidavit of service (City) | 0.1 | |
| 7/15/2011 | Review affidavits of service (8 individuals) | 0.2 | |

*Appendix A-2*

| | | | |
|---|---|---|---|
| | Review atty appearance | 0.1 | |
| 7/19/2011 | TC w atty C Fronczak | 0.2 | |
| 7/21/2011 | Review defs' motion to extend | 0.2 | |
| 7/26/2011 | Review order | 0.2 | |
| | Review atty appearance | 0.1 | |
| 8/12/2011 | Review atty appearance | 0.1 | |
| | Review City answer to complaint | 0.6 | |
| 9/7/2011 | TC w atty B Gibson | 0.2 | |
| 9/8/2011 | Draft motion to extend | 1.0 | |
| | Draft notice of motion | 0.2 | |
| | Review file, plan case strategy | 0.5 | |
| 9/9/2011 | Review court order | 0.1 | |
| 9/27/2011 | TC w M Ghidotti | 0.3 | |
| 9/30/2011 | Review RRS affidavits of service (2) | 0.3 | 0.3 |
| | Draft waivers of service | 0.3 | |
| 10/12/2011 | Research Reliable Recovery websites | 0.4 | |
| 10/13/2011 | TC w atty B Gibson (2) | 0.4 | |
| | Draft motion to extend | 0.4 | |
| | Draft motion for default judgment | 0.4 | |
| 10/14/2011 | TC w Court Deputy | 0.2 | |
| | Review file, plan case strategy | 0.2 | |
| 10/18/2011 | Legal research | 0.9 | |
| | Draft M to extend | 1.3 | |
| | Draft notice of motion | 0.2 | |
| | Draft motion for default judgment | 1.2 | |
| | Draft notice of motion | 0.1 | |
| | TC w Kenneth Baker | 0.7 | |
| 10/19/2011 | Court including travel | 0.8 | |
| | Conf w atty C Fronczak | 0.2 | |
| 10/25/2011 | Review court order | 0.1 | |
| 11/22/2011 | Draft deposition notices | 0.3 | |
| 12/8/2011 | Review court order | 0.1 | |
| | Review affidavits of service | 0.2 | |
| 12/15/2011 | TC w Stern Process Service (3) | 0.8 | |
| 12/16/2011 | TC w Stern Process Service (2) | 0.5 | |
| | TC w atty B Gibson | 0.3 | |
| | TC w Court Deputy | 0.1 | |
| 12/19/2011 | TC w B Gibson | 0.3 | |
| | Draft joint discovery schedule | 0.8 | |
| | Review revised joint discovery schedule | 0.2 | |
| | TC w Kenneth Baker | 0.2 | |
| | Review affidavit of service | 0.1 | |
| | Email to def attys (2) | 0.2 | |
| | Review email fr atty B Gibson | 0.1 | |
| 12/20/2011 | E-mail to Court Deputy | 0.1 | |
| | E-mail to atty B Gibson | 0.1 | |
| 12/21/2011 | Court including travel | 1.0 | |
| | Conf w atty B Gibson | 0.2 | |
| | Review court order | 0.2 | |
| 1/5/2012 | Review interrogatories | 0.5 | |
| | Review requests to produce | 0.4 | |

*Appendix A-2*

| Date | Description | | |
|---|---|---|---|
| 1/26/2012 | Draft motion for default judgment | 0.9 | |
| | Draft notice of motion | 0.1 | |
| | TC w Court Deputy | 0.2 | |
| | TC w atty B Gibson | 0.2 | |
| | Review email fr atty B Gibson | 0.1 | |
| 1/27/2012 | Review court order | 0.1 | |
| 2/1/2012 | Review e-mail fr atty C Fronczak | 0.1 | |
| 2/3/2012 | TC w atty B Gibson | 0.2 | |
| | Email to atty C Fronczak | 0.2 | |
| | Review email fr atty C Fronczak | 0.1 | |
| 2/6/2012 | Draft answers to interrogatories for K Baker | 0.5 | |
| | Draft answers to interrogatories for B Baker | 0.5 | |
| | Draft answers to interrogatories for A Baker | 0.5 | |
| | Conf w K Baker, B Baker, A Baker | 1.7 | |
| | Review court orders (3) | 0.1 | |
| 2/7/2012 | Review file, plan case strategy | 0.9 | |
| | Draft 26(a)(1) disclosures | 0.7 | |
| 2/8/2012 | Redact discovery attachmetns | 0.2 | |
| | Draft 26(a)(1) disclosures | 0.5 | |
| | Court including travel | 0.8 | |
| | Conf w T Ghidotti | 0.3 | |
| | Conf w atty B Gibson | 0.2 | |
| | Review court order | 0.1 | |
| 2/13/2012 | Conf w Porsche Baker | 1.1 | |
| 2/15/2012 | TC w T Ghidotti | 0.2 | |
| 2/16/2012 | TC w atty T Young | 0.3 | 0.3 |
| | Review email fr atty T Young | 0.2 | 0.2 |
| 2/17/2012 | Review email fr atty T Young (2) | 0.2 | 0.2 |
| | Email to atty T Young | 0.2 | 0.2 |
| 2/21/2012 | Review motion to vacate judgment | 0.2 | 0.2 |
| | Email to atty T Young (2) | 0.2 | 0.2 |
| | Review atty appearances (2) | 0.1 | 0.1 |
| | Review email fr atty B Gibson (2) | 0.2 | |
| | Review email fr atty R McCoy (2) | 0.2 | 0.2 |
| 3/7/2012 | Draft motion to reset date | 0.4 | |
| | Draft notice of motion | 0.2 | |
| 3/9/2012 | Review answer to complaint | 0.7 | |
| 3/13/2012 | Review court order | 0.1 | |
| 3/21/2012 | TC w atty R McCoy | 0.2 | 0.2 |
| | Review court order | 0.1 | |
| 3/27/2012 | Review court order | 0.1 | |
| | Review email fr atty C Fronczak | 0.1 | |
| 4/3/2012 | Review defs' motion to withdraw | 0.1 | |
| 4/4/2012 | Review court order | 0.1 | |
| 4/24/2012 | Review court order | 0.1 | |
| 4/25/2012 | Review email fr atty C Fronczak | 0.1 | |
| 5/2/2012 | Email to atty C Fronczak | 0.2 | |
| | Review email fr atty C Fronczak | 0.1 | |
| 5/4/2012 | Motion to reset status date | 0.7 | |
| | Draft notice of motion | 0.1 | |
| 5/8/2014 | Review court order | 0.1 | |

*Appendix A-2*

| | | | |
|---|---|---|---|
| 5/14/2012 | Review file, plan case strategy | 0.2 | |
| | Email to def attys | 0.2 | |
| | Review email fr atty C Fronczak | 0.1 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 5/15/2012 | Court including travel | 0.8 | |
| | Conf w atty R McCoy and C Fronczak | 0.2 | |
| 5/18/2012 | Review defs' answer to complaint | 0.6 | |
| 5/23/2012 | Court including travel | 0.9 | |
| | Conf w atty C Fronczak | 0.1 | |
| | Review court order | 0.1 | |
| 6/18/2012 | Review email fr atty C Fronczak | 0.1 | |
| 6/20/2012 | Email to atty C Fronczak | 0.2 | |
| 6/25/2012 | Review file | 0.8 | |
| | Draft response to request to produce | 1.1 | |
| | Draft request to produce | 1.2 | |
| 6/26/2012 | TC w atty R McCoy | 0.3 | 0.3 |
| | Review file, plan case strategy | 0.5 | |
| | Review email fr atty C Fronczak (2) | 0.2 | |
| | Email to atty C Fronczak | 0.1 | |
| 6/28/2012 | Review email fr atty C Fronczak (2) | 0.2 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 6/29/2012 | Review motion to extend | 0.3 | |
| | Review court order | 0.1 | |
| 7/2/2012 | Review email fr atty R McCoy (2) | 0.2 | 0.2 |
| | Email to atty R McCoy (2) | 0.3 | 0.3 |
| | Review Rule 26(a)(1) disclosures | 0.4 | |
| | Review atty appearance | 0.1 | |
| 7/3/2012 | Review email fr atty R McCoy | 0.1 | 0.1 |
| 7/5/2012 | TC w atty K Acuff | 0.3 | |
| | Review email fr atty K Acuff | 0.1 | |
| 7/10/2012 | TC w atty R McCoy | 0.1 | 0.1 |
| | Review email fr atty K Acuff | 0.1 | |
| 7/11/2012 | TC w atty K Acuff | 0.3 | |
| | Review email fr atty K Acuff | 0.1 | |
| 7/12/2012 | Court including travel | 0.8 | |
| | Conf w atty C Fronczak and R McCoy | 0.2 | |
| | Review court order | 0.1 | |
| | Review email fr atty C Fronczak | 0.1 | |
| 7/16/2012 | Review email fr atty K Acuff | 0.1 | |
| 7/19/2012 | Email to atty R McCoy | 0.2 | 0.2 |
| | Review email fr atty R McCoy | 0.2 | 0.2 |
| | Conf w K Baker, B Baker, A Baker | 2.7 | |
| | Review file, plan case strategy | 0.7 | |
| 7/23/2012 | Email to def attys | 0.2 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| | Review email fr atty K Acuff | 0.1 | |
| 7/24/2012 | Review proposed protective order | 0.5 | |
| | Email def attys re protective order | 0.3 | |
| | Email def attys re depositions | 0.2 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| | Review email fr atty K Acuff (2) | 0.2 | |

*Appendix A-2*

| | | | |
|---|---|---|---|
| | TC w Porsche Baker | 0.3 | |
| 7/25/2012 | Conf w clients | 1.5 | |
| | Prepare for deposition | 1.2 | |
| | Deposition of Kenneth Baker, incl travel | 4.7 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 7/26/2012 | Review file, plan case strategy | 0.5 | |
| | Review 911 transcript, listen to 911 CD | 0.6 | |
| | Review answer to complaint | 0.4 | |
| | Review email fr atty K Acuff (3) | 0.3 | |
| | Review email fr atty C Fronczak (2) | 0.2 | |
| 8/22/2012 | TC w atty K Acuff | 0.1 | |
| | TC w atty C Fronczak | 0.2 | |
| | TC w atty R McCoy | 0.2 | 0.2 |
| 8/23/2012 | Conf w K Baker, B Baker, A Baker | 1.5 | |
| | Prepare for deposition | 0.9 | |
| | Deposition of Ashley Baker, including travel | 2.4 | |
| | Deposition of Barbara Baker, including travel | 2.7 | |
| 8/29/2012 | Conf w clients | 0.7 | |
| | Prepare deposition questions | 1.8 | |
| | Deposition of J Lindgren | 3.6 | |
| | Deposition of J Vera | 1.7 | |
| 9/5/2012 | Review email fr atty K Acuff | 0.1 | |
| 9/7/2012 | Review file, plan case strategy | 0.2 | |
| | Review supp Rule 26(a)(1) disclosures | 0.3 | |
| | TC w atty C Fronczak | 0.1 | |
| | Review email fr atty K Acuff (2) | 0.2 | |
| | Review email fr atty C Fronczak | 0.1 | |
| 9/25/2012 | Review email fr atty C Fronczak (2) | 0.2 | |
| 9/26/2012 | Prepare for deposition | 0.6 | |
| | TC w Kenneth Baker | 0.3 | |
| | TC w atty C Fronczak | 0.2 | |
| | Review email fr atty C Fronczak (2) | 0.2 | |
| 9/27/2012 | Prepare for deposition | 1.3 | |
| | Conf w clients | 0.9 | |
| | Depositions of Doody, Cabrales, Flores | 3.6 | |
| | Letter to atty K Acuff | 0.5 | |
| 9/28/2012 | Review motion for protective order | 0.7 | |
| | Review email fr atty C Fronczak (3) | 0.3 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 10/2/2012 | Review email fr atty C Fronczak | 0.1 | |
| 10/3/2012 | Review atty appearance | 0.1 | |
| 10/4/2012 | Court including travel | 1.2 | |
| | Conf w atty C Fronczak | 0.1 | |
| | Review orders | 0.2 | |
| | Review email fr atty C Fronczak | 0.1 | |
| 10/8/2012 | Review email and deposition notices | 0.3 | |
| | TC w Kenneth Baker | 0.8 | |
| | TC w Juanita Horton | 0.6 | |
| 10/9/2012 | Review email fr atty C Fronczak | 0.1 | |
| | Review email fr atty R McCoy (2) | 0.2 | 0.2 |
| 10/10/2012 | Review email fr atty C Fronczak (2) | 0.2 | |

*Appendix A-2*

| | | | |
|---|---|---|---|
| 10/11/2012 | TC w atty R McCoy | 0.1 | 0.1 |
| | TC w atty C Fronczak | 0.1 | |
| | Email to def attys (3) | 0.5 | |
| | Review proposed protective order | 0.3 | |
| | Review email fr atty K Acuff (2) | 0.2 | |
| | Review email fr atty C Fronczak | 0.2 | |
| 10/12/2012 | TC w Juanita Horton | 0.4 | |
| | TC w Kenneth Baker | 0.7 | |
| | Email to def attys (3) | 0.5 | |
| | TC w atty R McCoy | 0.1 | 0.1 |
| | Review email fr atty C Fronczak | 0.1 | |
| 10/13/2012 | Email to def attys | 0.2 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 10/15/2012 | Review email fr atty R McCoy | 0.1 | 0.1 |
| | Review email fr atty K Acuff | 0.1 | |
| 10/17/2012 | Review file, plan case strategy | 0.5 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| | Review email fr atty K Acuff | 0.1 | |
| 10/18/2012 | Review email fr atty K Acuff | 0.1 | |
| | Review email fr atty C Fronczak | 0.1 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 10/19/2012 | Review file, plan case strategy | 0.7 | |
| | Conf w Porsche Baker | 1.0 | |
| | Review email fr atty C Fronczak (2) | 0.2 | |
| 10/22/2012 | Review file | 0.2 | |
| | Review email and deposition notices | 0.2 | |
| | TC w Kenneth Baker | 0.4 | |
| | TC w Porsche Baker (2) | 0.4 | |
| | Review order | 0.1 | |
| 10/23/2012 | TC w atty R McCoy | 0.1 | 0.1 |
| | Email to def attys | 0.2 | |
| | Draft 1st supp Rule 26(a)(1) disclosures | 1.0 | |
| | Draft deposition notices | 0.3 | |
| | Conf w Camden Baker | 0.7 | |
| | Prepare for deposition | 0.8 | |
| | Deposition of Camden Baker, including travel | 2.9 | |
| 10/30/2012 | Prepare for deposition | 1.3 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 10/31/2012 | Prepare for motion hearing | 0.8 | |
| | Prepare timeline | 0.6 | |
| | Court including travel | 0.8 | |
| 11/1/2012 | Legal research | 0.7 | |
| | Prepare for deposition | 0.8 | |
| | Conf w K Baker, B Baker | 1.1 | |
| | Review Facebook page for T Ghidotti | 0.3 | |
| | Deposition of T Ghidotti, including travel | 7.4 | |
| | Google research B Jurkovic | 0.7 | |
| 11/7/2012 | Review email fr atty K Acuff (2) | 0.2 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 11/12/2012 | Review file, plan case strategy | 0.4 | |
| | Conf w Oliver Johnson | 1.1 | |

*Appendix A-2*

| Date | Description | Hours | |
|---|---|---|---|
| 11/15/2012 | Review email fr atty K Acuff | 0.1 | |
| 11/16/2012 | Conf w Juanita Horton | 1.5 | |
| | Review file | 0.3 | |
| 11/19/2012 | Conf w B Baker | 0.8 | |
| | Prepare for deposition | 1.1 | |
| | Deposition of Juanita Horton, including travel | 1.8 | |
| | Deposition of Oliver Johnson, including travel | 1.3 | |
| 11/21/2012 | Review email fr atty K Acuff (2) | 0.2 | |
| | Email to atty K Acuff | 0.1 | |
| 11/28/2012 | Review file, plan case strategy | 0.8 | |
| | TC w atty R McCoy | 0.1 | 0.1 |
| | TC w atty K Acuff | 0.3 | |
| | Draft deposition notices | 0.3 | |
| | Review file | 0.5 | |
| | Email to atty R McCoy | 0.1 | 0.1 |
| | Email to def attys | 0.2 | |
| | Review email fr atty R McCoy (2) | 0.2 | 0.2 |
| 11/29/2012 | Court including travel | 0.8 | |
| | Prepare deposition questions | 1.5 | |
| | Conf w clients | 1.1 | |
| | Email to atty T Hamilton | 0.3 | |
| | Review email fr atty T Hamilton (2) | 0.3 | |
| | Deposition of S Martin, including travel | 2.7 | |
| 12/6/2012 | TC w def attys (4) | 0.4 | |
| 12/10/2012 | Review email fr atty K Acuff | 0.1 | |
| 12/11/2012 | Review order | 0.1 | |
| 12/17/2012 | TC w atty R McCoy | 0.3 | 0.3 |
| | TC w atty K Acuff | 0.2 | |
| | Email to def attys | 0.3 | |
| | Review email fr atty C Fronczak | 0.1 | |
| 12/18/2012 | Email to def attys | 0.1 | |
| 12/28/2012 | Draft motion to extend | 0.8 | |
| | Draft notice of motion | 0.1 | |
| | Draft amended complaint | 1.1 | |
| 1/1/2013 | Draft amended complaint | 0.7 | |
| 1/3/2013 | Draft re-notice of motion | 0.1 | |
| 1/6/2013 | Draft amended complaint | 0.9 | |
| | Draft motion to amend complaint | 0.9 | |
| | Draft notice of motion | 0.1 | |
| 1/18/2013 | Prepare and file amended complaint | 0.2 | |
| 1/25/2013 | Review email fr atty R McCoy | 0.1 | 0.1 |
| 1/26/2013 | Review email fr atty R McCoy | 0.1 | 0.1 |
| 1/28/2013 | Review email fr atty K Acuff (2) | 0.2 | |
| 1/29/2013 | Draft deposition notices | 0.3 | |
| 1/30/2013 | Review email fr atty K Acuff | 0.1 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 1/31/2013 | Review email fr atty K Acuff | 0.1 | |
| | Email to atty K Acuff | 0.1 | |
| | Review file, plan case strategy | 0.2 | |
| | Review email fr atty R McCoy (2) | 0.2 | 0.2 |
| | Review email fr atty K Acuff | 0.1 | |

*Appendix A-2*

| Date | Description | Hours | |
|---|---|---|---|
| 2/1/2013 | Review email fr atty K Acuff | 0.1 | |
| | Email to atty K Acuff | 0.1 | |
| | Review email fr R McCoy | 0.1 | 0.1 |
| 2/4/2013 | Review email fr atty K Acuff (3) | 0.3 | |
| | Email to atty K Acuff | 0.1 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 2/5/2013 | Prepare for deposition | 1.1 | |
| | Deposition of B Jurkovic | 2.5 | |
| | Deposition of D Walsh | 1.3 | |
| 2/18/2013 | Review docket and prior orders | 0.1 | |
| | Email to def attys | 0.2 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 2/19/2013 | Review email fr atty C Fronczak | 0.1 | |
| 2/22/2013 | Review email fr atty K Acuff | 0.1 | |
| 2/25/2013 | Review email fr atty C Fronczak | 0.1 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 3/5/2013 | Email to atty K Acuff (2) | 0.2 | |
| | Review email fr atty K Acuff (4) | 0.4 | |
| | Review email fr atty R McCoy (3) | 0.3 | 0.3 |
| 3/6/2013 | Court including travel | 0.8 | |
| | Conf w atty C Fronczak | 0.1 | |
| 3/7/2013 | Prepare for deposition | 0.5 | |
| | Deposition of Giangrosso | 0.8 | |
| | Conf w atty R McCoy and C Fronczak | 0.1 | |
| | Review email fr atty K Acuff | 0.1 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 3/8/2013 | Draft motion to compel | 1.0 | |
| | Draft notice of motion | 0.1 | |
| 3/12/2013 | Court including travel | 0.8 | |
| | Conf w atty K Acuff | 0.1 | |
| | Prepare for deposition | 0.6 | |
| | Deposition of J Butney | 0.9 | |
| 3/15/2013 | Draft answers to interrogatories | 2.1 | |
| | TC w atty C Fronczak | 0.5 | |
| | Email to def attys | 0.2 | |
| 3/18/2013 | Review and revise answers to interrogatories | 0.4 | |
| 5/6/2013 | TC w Court Deputy | 0.2 | |
| | Review file, plan case strategy | 0.5 | |
| 5/7/2013 | Court including travel | 0.7 | |
| | Conf w atty K Acuff | 0.2 | |
| 5/19/2013 | Email to def attys | 0.1 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 5/20/2013 | Review email fr atty K Acuff | 0.1 | |
| 5/22/2013 | Review email fr atty K Acuff | 0.1 | |
| 5/23/2013 | Review email fr atty K Acuff | 0.1 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 5/24/2013 | Review email fr atty R McCoy | 0.1 | 0.1 |
| | Email to def attys | 0.1 | |
| 6/4/2013 | Prepare deposition questions | 1.0 | |
| | Deposition of B Woods | 1.3 | |
| 6/6/2013 | Court including travel | 0.8 | |

***Appendix A-2***

| Date | Description | | |
|---|---|---|---|
| 7/15/2013 | Review email fr atty R McCoy | 0.1 | 0.1 |
| 7/16/2013 | Review email fr atty R McCoy | 0.1 | 0.1 |
| 7/18/2013 | Review file, plan case strategy | 0.5 | |
| | TC w Kenneth Baker | 0.5 | |
| 7/19/2013 | Review abstract, deposition transcripts | 2.7 | |
| 7/21/2013 | Review abstract, deposition transcripts | 2.5 | |
| 7/23/2013 | Review abstract, deposition transcripts | 2.0 | |
| 7/24/2013 | Review abstract, deposition transcripts | 3.7 | |
| | Legal research MSJ issues | 1.5 | |
| | Draft 56.1 statements of fact | 1.6 | |
| | Review discovery documents | 0.4 | |
| 7/25/2013 | Legal research MSJ issues | 1.1 | |
| | Review deposition transcripts | 2.0 | |
| | Draft 56.1 statements of fact | 1.3 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| | Review email fr atty K Acuff | 0.1 | |
| | TC w atty R McCoy | 0.3 | 0.3 |
| | TC w atty K Acuff | 0.3 | |
| | Review motion to extend | 0.1 | |
| 7/26/2013 | Review deposition transcripts | 0.8 | |
| 7/29/2013 | Review email fr atty K Acuff | 0.1 | |
| 8/5/2013 | Review emal fr Court and fr atty R McCoy | 0.1 | |
| 8/6/2013 | Review email fr atty R McCoy | 0.1 | 0.1 |
| 8/7/2013 | Email to atty R McCoy | 0.1 | 0.1 |
| 8/8/2013 | Review deposition transcripts | 6.6 | |
| | Draft 56.1 statements of fact | 3.9 | |
| | Draft motion for summary judgment | 0.3 | |
| | Draft notice of motion | 0.1 | |
| | Draft table of exhibits | 0.4 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 8/9/2013 | Review deposition transcripts | 2.7 | |
| | Draft 56.1 statements of fact | 1.9 | |
| | Legal research MSJ issues | 3.5 | |
| | Draft memo of law | 2.1 | |
| | Prepare exhibits | 0.8 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 8/10/2013 | Legal research MSJ issues | 0.5 | |
| | Draft memo of law | 1.8 | |
| | Review deposition transcripts | 0.7 | |
| 8/12/2013 | Legal research MSJ issues | 4.4 | |
| | Draft memo of law | 5.6 | |
| | Draft motion for excess pages | 0.5 | |
| | Draft notice of motion | 0.1 | |
| | Review City defs MSJ | 1.1 | |
| | Review RRS defs MSJ | 0.7 | 0.7 |
| | Review email fr atty K Acuff | 0.1 | |
| 8/15/2013 | Review email fr atty K Acuff | 0.1 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 8/16/2013 | Review email fr atty R McCoy | 0.1 | 0.1 |
| 9/9/2013 | Review prior orders | 0.1 | |
| | TC w Court Deputy | 0.1 | |

*Appendix A-2*

| | | | |
|---|---|---|---|
| | Review order | 0.1 | |
| | Review City defs MSJ | 1.0 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 9/10/2013 | Review City defs MSJ | 1.1 | |
| | Review RRS defs MSJ | 0.9 | 0.9 |
| | Legal research MSJ issues | 0.8 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 9/11/2013 | Review City defs 56.1 statement of facts | 0.9 | |
| | Review RRS defs 56.1 statement of facts | 0.6 | 0.6 |
| | Legal research MSJ issues (City MSJ) | 0.7 | |
| 9/12/2013 | Legal research MSJ issues (City MSJ) | 0.9 | |
| 9/14/2013 | Review deposition transcripts | 2.3 | |
| 9/16/2013 | Legal research MSJ issues | 1.3 | |
| | Review deposition transcripts | 2.7 | |
| 9/17/2013 | Legal research MSJ issues (City MSJ) | 1.3 | |
| | Review deposition transcripts | 1.7 | |
| | Draft response to City defs 56.1 statements | 2.0 | |
| 9/18/2013 | Draft response to City defs 56.1 statements | 1.7 | |
| | Review deposition transcripts | 1.6 | |
| 9/19/2013 | Draft response to City defs 56.1 statements | 3.7 | |
| | Draft memo of law in resp to City MSJ | 0.9 | |
| | Review deposition transcripts | 5.5 | |
| | Legal research MSJ issues (City MSJ) | 2.3 | |
| 9/20/2013 | Legal research MSJ issues (City MSJ) | 1.4 | |
| | Draft response to City defs 56.1 statements | 4.1 | |
| | Draft memo of law in resp to City MSJ | 1.6 | |
| | Email to atty R McCoy | 0.2 | 0.2 |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| | TC w atty K Acuff (2) | 0.4 | |
| | TC w Court Deputy | 0.2 | |
| | Review email fr atty K Acuff | 0.1 | |
| 9/21/2013 | Legal research MSJ issues (City MSJ) | 0.7 | |
| | Draft response to City defs 56.1 statements | 0.5 | |
| | Draft response to City MSJ | 1.1 | |
| | Draft memo of law in resp to City MSJ | 1.3 | |
| | Draft statement of addl facts (City MSJ) | 0.9 | |
| 9/22/2013 | Legal research MSJ issues (City MSJ) | 0.8 | |
| 9/23/2013 | Draft agreed orders (2) | 0.8 | |
| | Email to defense attys | 0.1 | |
| | Review email fr atty K Acuff | 0.2 | |
| | Review deposition transcripts | 3.3 | |
| | Email to Court Deputy | 0.2 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 9/28/2013 | Legal research MSJ issues (City MSJ) | 2.2 | |
| | Draft memo of law in resp to City MSJ | 1.8 | |
| 9/29/2013 | Legal research MSJ issues (City MSJ) | 1.6 | |
| | Draft memo of law in resp to City MSJ | 1.4 | |
| 9/30/2013 | Review deposition transcripts | 0.8 | |
| | Email to defense attys re redactions | 0.2 | |
| | Draft addl statement of facts (City MSJ) | 2.5 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |

*Appendix A-2*

| | | | |
|---|---|---|---|
| | Review email fr atty C Fronczak | 0.1 | |
| 10/1/2013 | Email to defense attys | 0.2 | |
| | Review email fr defense attys (2) | 0.2 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| | Review email fr atty K Acuff | 0.1 | |
| | Draft statement of addl facts (City MSJ) | 3.0 | |
| | Draft response to City defs 56.1 statements | 1.9 | |
| | Review deposition transcripts | 2.9 | |
| | Draft memo of law in resp to City MSJ | 1.8 | |
| | Legal research MSJ issues (City MSJ) | 0.7 | |
| 10/2/2013 | Legal research MSJ issues (City MSJ) | 1.3 | |
| | Draft memo of law in resp to City MSJ | 5.9 | |
| | Draft addl statement of facts (City MSJ) | 1.1 | |
| 10/3/2013 | Draft agreed orders (2) | 0.5 | |
| | TC w Court Deputy | 0.2 | |
| | TC w atty R McCoy | 0.2 | 0.2 |
| | TC w atty K Acuff (2) | 0.2 | |
| | Email to defense attys (2) | 0.2 | |
| | Draft memo of law in resp to City MSJ | 8.3 | |
| | Legal research MSJ issues (City MSJ) | 3.1 | |
| | Review email fr atty K Acuff (2) | 0.2 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 10/4/2013 | Draft memo of law in resp to City MSJ | 1.8 | |
| | Legal research MSJ issues (RRS MSJ) | 1.7 | 1.7 |
| | Draft response to RRS defs 56.1 statement | 1.5 | 1.5 |
| | Review deposition transcripts | 2.3 | |
| 10/5/2013 | Legal research MSJ issues (RRS MSJ) | 1.6 | 1.6 |
| | Review deposition transcripts | 2.1 | |
| | Draft response to RRS defs 56.1 statement | 2.0 | 2.0 |
| | Draft addl statement of facts (RRS MSJ) | 1.1 | 1.1 |
| 10/6/2013 | Legal research MSJ issues (RRS MSJ) | 1.3 | 1.3 |
| | Draft memo of law in resp to RRS MSJ | 1.6 | 1.6 |
| | Draft response to RRS defs 56.1 statement | 2.2 | 2.2 |
| | Draft addl statement of facts (RRS MSJ) | 1.9 | 1.9 |
| | Review deposition transcripts | 3.3 | |
| 10/7/2013 | Legal research MSJ issues (RRS MSJ) | 1.2 | 1.2 |
| | Draft memo of law in resp to RRS MSJ | 2.0 | 2.0 |
| | Draft response to RRS defs 56.1 statement | 2.5 | 2.5 |
| | Draft addl statement of addl facts (RRS MSJ) | 2.8 | 2.8 |
| | Review deposition transcripts | 3.5 | |
| 10/8/2013 | Draft response to RRS defs 56.1 statement | 1.1 | 1.1 |
| | Draft statement of addl facts (RRS MSJ) | 1.8 | 1.8 |
| | Draft exhibit list for resp to RRS MSJ | 0.4 | 0.4 |
| | Draft memo of law in resp to RRS MSJ | 3.9 | 3.9 |
| | Draft motion to strike RRS motion | 2.0 | 2.0 |
| | Draft notice of motion | 0.1 | 0.1 |
| | Draft motion to extend time to file RRS resp | 0.6 | 0.6 |
| | Draft notice of motion | 0.1 | 0.1 |
| | TC w atty K Acuff | 0.1 | |
| | Legal research MSJ issues (RRS MSJ) | 2.2 | 2.2 |
| 10/9/2013 | Draft memo of law in resp to RRS MSJ | 7.8 | 7.8 |

*Appendix A-2*

| Date | Description | | |
|---|---|---|---|
| | Legal research MSJ issues (RRS MSJ) | 2.1 | 2.1 |
| | Review email fr atty R McCoy (2) | 0.2 | 0.2 |
| 10/10/2013 | Draft memo of law in resp to RRS MSJ | 3.9 | 3.9 |
| | Legal research MSJ issues (RRS MSJ) | 1.6 | 1.6 |
| | Review def RRS motion re redactions | 0.4 | 0.4 |
| 10/14/2013 | Prepare for motion hearing | 0.4 | |
| 10/15/2013 | Court including travel | 0.9 | |
| | Conf w defense attys | 0.2 | |
| 10/24/2013 | Review filed court transcript 2/8/12 | 0.2 | |
| 10/28/2013 | Review email fr atty K Acuff | 0.1 | |
| | Email to atty K Acuff | 0.1 | |
| 10/29/2013 | Review email fr atty R McCoy (2) | 0.2 | 0.2 |
| | Review email fr atty K Acuff | 0.1 | |
| | Email to atty K Acuff | 0.1 | |
| 10/30/2013 | Review defs' motion to extend | 0.2 | |
| 11/5/2013 | Review Court order | 0.1 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 11/13/2013 | Review resp to pl's MSJ | 0.8 | |
| | Draft resp to defs' st of addl facts (City MSJ) | 1.7 | |
| | Review deposition transcripts | 2.1 | |
| | Review email fr atty R McCoy (2) | 0.2 | 0.2 |
| 11/14/2013 | Review email fr atty R McCoy (2) | 0.2 | 0.2 |
| | Email to atty R McCoy | 0.1 | 0.1 |
| | Legal research MSJ issues (City MSJ) | 0.4 | |
| | Review deposition transcripts | 2.3 | |
| | Draft resp to defs' statement of addl facts (City) | 3.7 | |
| | Draft reply memo of law (City MSJ) | 0.5 | |
| | Review defs' motion to extend | 0.1 | |
| 11/15/2013 | Legal research MSJ issues (City MSJ) | 0.9 | |
| | Draft resp to defs' st of addl facts (City MSJ) | 2.5 | |
| | Draft reply memo of law (City MSJ) | 2.3 | |
| 11/16/2013 | Draft reply memo of law (City MSJ) | 2.0 | |
| 11/17/2013 | Legal research MSJ issues (City MSJ) | 1.3 | |
| | Draft reply memo of law (City MSJ) | 3.7 | |
| 11/18/2013 | Draft reply memo of law (City MSJ) | 5.6 | |
| | Legal research MSJ issues (City MSJ) | 0.9 | |
| 11/19/2013 | Draft reply memo of law (City MSJ) | 2.6 | |
| 11/21/2013 | Review email fr atty R McCoy (2) | 0.2 | 0.2 |
| | Review email fr atty K Acuff | 0.1 | |
| 11/22/2013 | Review defs MSJ (RRS MSJ) | 0.7 | 0.7 |
| | Review email fr atty R McCoy (4) | 0.4 | 0.4 |
| | Email to atty R McCoy (2) | 0.2 | 0.2 |
| | Draft reply memo of law (City MSJ) | 0.6 | |
| | Draft resp to defs' st of addl facts (City MSJ) | 0.7 | |
| 11/25/2013 | Review email fr atty K Acuff | 0.1 | |
| 11/26/2013 | Review City's reply to City MSJ | 0.7 | |
| | Review City's resp to pls' st of addl facts | 0.8 | |
| 11/27/2013 | Review RRS reply to RRS MSJ | 1.1 | 1.1 |
| 11/29/2013 | Review RRS reply to resp to 56.1 st of facts | 1.2 | 1.2 |
| | Draft M to strike RRS reply to resp to 56.1 st | 1.5 | 1.5 |
| | Legal research MSJ issues (RRS MSJ) | 0.8 | 0.8 |

*Appendix A-2*

| Date | Description | Hours | Hours |
|---|---|---|---|
| 11/30/2013 | Draft M to strike RS reply to resp to 56.1 st | 1.2 | 1.2 |
| 12/2/2013 | Review Court order | 0.1 | |
| | Email to Court Deputy | 0.1 | |
| | Email to atty R McCoy | 0.1 | 0.1 |
| 12/3/2013 | Draft M to strike RRS reply to resp to 56.1 st | 0.7 | 0.7 |
| | Draft notice of motion | 0.1 | 0.1 |
| | Legal research MSJ issues (RRS MSJ) | 0.5 | 0.5 |
| | Draft M to reset date | 0.5 | |
| | Draft notice of motion | 0.1 | |
| 12/5/2013 | Court including travel | 0.8 | |
| | Review Court order | 0.1 | |
| 12/9/2013 | Review file, plan case strategy | 0.4 | |
| 12/11/2013 | Review Court order | 0.1 | |
| 12/13/2013 | Review RRS motion to reconsider | 0.4 | 0.4 |
| | Review RRS motion to reset ruling date | 0.1 | 0.1 |
| 12/20/2013 | Review filed court transcript 12/5/2013 | 0.2 | |
| 1/7/2014 | Court including travel | 1.0 | |
| | Review Court order | 0.1 | |
| 1/13/2014 | Review file, plan case strategy | 0.4 | |
| 1/28/2014 | Review amd reply memo of law (RRS MSJ) | 1.0 | 1.0 |
| 2/6/2014 | Draft M to strike RRS amd reply memo of law | 2.6 | 2.6 |
| | Draft notice of motion | 0.1 | 0.1 |
| 2/7/2014 | Review Court order | 0.1 | |
| 2/12/2014 | Review RRS resp to motion to strike | 0.5 | 0.5 |
| 2/19/2014 | Prepare for motion hearing | 0.6 | |
| | Court including travel | 0.9 | |
| | Review Court order | 0.1 | |
| 3/28/2014 | Review Court decision | 1.7 | |
| | Legal research re Court decision | 0.7 | |
| 3/29/2014 | Email to atty T Hamilton | 0.3 | |
| 3/31/2014 | Review email fr atty T Hamilton | 0.1 | |
| | Email to atty T Hamilton | 0.1 | |
| | Draft motion for leave for atty appearance | 0.6 | |
| | Draft notice of motion | 0.1 | |
| 4/1/2014 | Draft email to Court Deputy | 0.1 | |
| | Review email fr atty C Fronczak | 0.1 | |
| 4/2/2014 | Court including travel | 0.9 | |
| | Conf w defense attys | 0.1 | |
| | Email to atty T Hamilton | 0.1 | |
| | Review atty appearance | 0.1 | |
| | Review Court order | 0.1 | |
| 4/8/2014 | TC w clients | 0.7 | |
| | Review file, plan case strategy | 0.8 | |
| 4/10/2014 | Letter to clients | 0.4 | |
| 4/25/2014 | Letter to clients | 0.3 | |
| | Email to atty T Hamilton | 0.1 | |
| | Review email fr atty T Hamilton | 0.1 | |
| 4/29/2014 | Email to atty T Hamilton | 0.1 | |
| | Review email fr atty T Hamilton (2) | 0.2 | |
| 4/30/2014 | Court including travel | 0.8 | |
| | Conf w atty T Hamilton | 0.5 | |

***Appendix A-2***

| | | | |
|---|---|---|---|
| | Conf w defense attys | 0.2 | |
| | Review Court order | 0.1 | |
| 6/30/2014 | Review email fr atty T Hamilton | 0.1 | |
| 7/1/2014 | Review email fr atty T Hamilton | 0.1 | |
| 7/21/2014 | Email to atty T Hamilton | 0.3 | |
| 7/22/2014 | Email to atty T Hamilton | 0.1 | |
| 7/25/2014 | Conf w atty T Hamilton | 0.2 | |
| | Prepare witness list | 0.7 | |
| 7/31/2014 | Conf w atty T Hamilton | 0.5 | |
| 8/1/2014 | Email to atty T Hamilton | 0.1 | |
| | Letter to clients | 0.2 | |
| 8/7/2014 | Letter to J Horton | 0.3 | |
| | Letter to O Johnson | 0.3 | |
| | Review email fr atty T Hamilton | 0.1 | |
| 8/8/2014 | Review file, plan case strategy | 0.2 | |
| 8/19/2014 | Letter to clients | 0.4 | |
| 8/20/2014 | Letter to defense attys | 0.2 | |
| 8/28/2014 | Email to defense attys | 0.1 | |
| | Review disc documents for missing documents | 0.5 | |
| 9/10/2014 | Draft address change notification | 0.1 | |
| 9/16/2014 | TC w atty R McCoy | 0.4 | 0.4 |
| | Review email fr atty T Hamilton | 0.1 | |
| 9/19/2014 | Conf w atty T Hamilton | 0.3 | |
| 9/22/2014 | TC w Barbara Baker | 0.4 | |
| | TC w atty T Hamilton | 0.2 | |
| | Email to atty T Hamilton (2) | 0.3 | |
| | Review email fr atty T Hamilton (2) | 0.2 | |
| 9/23/2014 | TC w atty T Hamilton | 0.3 | |
| | Review file, plan case strategy | 0.7 | |
| | Review again court decision | 0.5 | |
| | Conf w clients at clients' home, photos, incl travel | 4.6 | |
| 9/24/2014 | Email to atty T Hamilton and K Turkcan | 0.3 | |
| | Email to defense attys | 0.1 | |
| | Review email fr atty C Fronczak | 0.1 | |
| | Review email fr atty T Hamilton | 0.1 | |
| 9/25/2014 | Review email fr atty K Acuff | 0.1 | |
| 9/29/2014 | Review email fr atty C Fronczak (2) | 0.2 | |
| 9/30/2014 | Review email fr atty K Acuff | 0.1 | |
| 10/1/2014 | Review City defs' motion for reconsideration | 0.8 | |
| | Review email fr atty C Fronczak (2) | 0.2 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 10/2/2014 | Draft motion to extend time to file PTO | 0.8 | |
| | Draft notice of motion | 0.1 | |
| | Review email fr defense attys | 0.1 | |
| | Email to atty T Hamilton and K Turkcan | 0.1 | |
| | Draft motion to strike motion for reconsideration | 1.1 | |
| | Draft notice of motion | 0.1 | |
| | Legal research, reconsideration issues | 1.3 | |
| | Review email fr atty C Fronczak | 0.1 | |
| 10/3/2014 | Draft Pre-Trial Order | 0.8 | |
| | Email to defense attys | 0.1 | |

*Appendix A-2*

| | | | |
|---|---|---|---|
| 10/4/2014 | Email to atty T Hamilton and K Turkcan | 0.2 | |
| | Review entire file for Pre-Trial Order | 1.2 | |
| | Legal research, reconsideration issues | 0.8 | |
| | Draft pl's witness list | 1.3 | |
| | Draft pl's exhibit list | 1.4 | |
| | Review deposition transcripts | 1.1 | |
| 10/5/2014 | Review deposition transcripts | 1.5 | |
| | Revise pl's witness list | 0.5 | |
| | Draft pl's exhibit list | 0.7 | |
| | Email to atty T Hamilton and K Turkcan | 0.1 | |
| 10/6/2014 | Conf w atty K Turkcan | 0.1 | |
| | Review email fr atty C Fronczak (2) | 0.2 | |
| | Emails to defense attys re PTO (5) | 0.5 | |
| | Revise pl's witness list | 0.4 | |
| | Revise pl's exhibit list | 0.4 | |
| | Draft jury instructions | 5.9 | |
| | Legal research, jury instr issues | 2.3 | |
| | Review defs' witness lists | 0.3 | |
| | Review defs' exhibit lists | 0.4 | |
| | Draft motions in limine | 0.9 | |
| | Review letter fr defense attys | 0.2 | |
| | Email to atty T Hamilton and K Turkcan (5) | 0.5 | |
| | Review email fr atty T Hamilton (9) | 0.9 | |
| | Review email fr atty K Acuff (3) | 0.3 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 10/7/2014 | Court including travel | 0.9 | |
| | Review K Turkcan research report | 0.4 | |
| | Email to atty T Hamilton and K Turkcan (2) | 0.8 | |
| | Review email fr atty T Hamilton (3) | 0.2 | |
| | Draft jury instructions | 4.8 | |
| | Con w attys T Hamilton and K Turkcan | 0.6 | |
| | Review Court order | 0.1 | |
| | Review email fr atty C Fronczak | 0.1 | |
| | Review email fr atty K Turkcan | 0.3 | |
| | Review email fr atty K Acuff | 0.1 | |
| 10/8/2014 | Email to attys T Hamilton and K Turkcan | 0.2 | |
| | Draft verdict sheet | 1.0 | |
| | Review email fr C Fronczak (2) | 0.2 | |
| | Review email fr R McCoy | 0.1 | 0.1 |
| 10/9/2014 | Review file, preparation for trial | 1.7 | |
| | Review defs' obj to pl's witness list | 0.2 | |
| | Draft verdict sheet | 0.8 | |
| | Review trial exhibits | 1.2 | |
| | TC w atty K Turkcan | 0.6 | |
| | TC w atty T Hamilton | 0.5 | |
| | Review email fr atty E Winiarski | 0.1 | 0.1 |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| | Review email fr atty T Hamilton (2) | 0.2 | |
| | Email to atty T Hamilton (8) | 0.8 | |
| | Review email fr atty C Fronczak | 0.1 | |
| 10/10/2014 | Email to defense attys (4) | 0.4 | |

*Appendix A-2*

|  |  |  |  |
|---|---|---|---|
|  | Review and draft obj to City witness list | 0.7 |  |
|  | Review and draft obj to RRS witness list | 0.8 |  |
|  | Review and draft obj to City exhibit list | 0.9 |  |
|  | Review and draft obj to RRS exhibit list | 0.9 |  |
|  | Review City obj to pl's witness list | 0.3 |  |
|  | Review RRS obj to pl's witness list | 0.3 |  |
|  | Review City obj to pl's exhibit list | 0.5 |  |
|  | Review RRS obj to pl's exhibit list | 0.4 |  |
|  | Revise Pre-Trial Order | 0.6 |  |
|  | Draft jury instructions | 1.1 |  |
|  | Review and draft obj to City jury instructions | 3.3 |  |
|  | Review and draft obj to RRS jury instructions | 3.1 |  |
|  | Review City obj to pl's jury instructions | 0.8 |  |
|  | Review RRS obj to pl's jury instructions | 0.7 |  |
|  | Review City's motions in limine | 0.3 |  |
|  | Review email fr atty R McCoy (15) | 1.5 | 1.5 |
|  | Review email fr atty K Acuff (5) | 0.5 |  |
|  | Review email fr atty C Fronczak (5) | 0.5 |  |
|  | Review email fr atty T Hamilton (6) | 0.6 |  |
|  | Emails to defense attys (7) | 0.7 |  |
| 10/11/2014 | TC w Kenneth Baker | 0.6 |  |
|  | TC w Barbara Baker | 0.6 |  |
|  | TC w Camden Baker | 0.5 |  |
|  | TC w atty T Hamilton | 0.4 |  |
|  | Email atty T Hamilton | 0.2 |  |
|  | Review and draft obj to City jury instructions | 3.8 |  |
|  | Review and draft obj to RRS jury instructions | 2.2 |  |
| 10/12/2014 | TC w Juanita Horton | 0.3 |  |
|  | TC w Oliver Johnson | 0.2 |  |
|  | Legal research, motion in limine issues | 2.4 |  |
|  | Draft motions in limine | 7.6 |  |
|  | Email to atty T Hamilton | 0.3 |  |
| 10/13/2014 | TC w Camden Baker | 0.1 |  |
|  | Draft motions in limine | 1.9 |  |
|  | Conf w atty T Hamilton | 0.8 |  |
|  | Email to def attys (4) | 0.4 |  |
|  | Conf w Camden Baker, trial preparation | 2.7 |  |
|  | Review email fr atty T Hamilton | 0.2 |  |
| 10/14/2014 | Email to Court Deputy | 0.1 |  |
|  | Conf w Kenneth Baker, trial preparation | 3.9 |  |
|  | Review email fr Court Deputy | 0.1 |  |
|  | Review email fr C Fronczak (4) | 0.4 |  |
|  | Review email fr T Hamilton | 0.3 |  |
| 10/15/2014 | Review JB Hunt records | 0.5 |  |
|  | Review Chicago Public School records | 0.6 |  |
|  | Draft resp to City defs' motions in limine | 3.7 |  |
|  | Draft resp to RRS defs' motions in limine | 2.5 | 2.5 |
|  | Review City defs' resp to pls' motions in limine | 0.9 |  |
|  | Review RRS defs' resp to pls' motions in limine | 0.7 | 0.7 |
|  | Review deposition transcripts | 1.5 |  |
|  | Review email fr atty C Fronczak (4) | 0.4 |  |

*Appendix A-2*

| | | | |
|---|---|---|---|
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| | Review email fr atty T Hamitlon | 0.3 | |
| 10/16/2014 | Court including travel | 1.0 | |
| | Conf w atty T Hamilton and K Turkcan | 0.7 | |
| | Review file, preparation for trial | 1.5 | |
| | Conf w Kenneth Baker, trial prep, court visit | 3.4 | |
| | Conf w B Baker and A Baker, trial prep, court visit | 1.2 | |
| | Conf w Juanita Horton, trial prep, court visit | 1.1 | |
| | Conf w atty T Hamilton | 0.8 | |
| | TC w atty T Hamilton | 0.4 | |
| | Email and text mess to atty T Hamilton (4) | 0.8 | |
| | Review deposition transcripts | 1.1 | |
| | Review email fr atty T Hamilton (4) | 0.6 | |
| | Email to atty T Hamilton (3) | 0.4 | |
| | Review email fr atty K Turkcan | 0.1 | |
| | Review email fr atty K Acuff (2) | 0.2 | |
| 10/17/2014 | TC w Juanita Horton | 0.2 | |
| | Prepare questions for trial | 2.0 | |
| | Conf w atty T Hamilton (2), trial strategies | 2.6 | |
| | Draft motion re claims | 2.2 | |
| | Draft notice of motion | 0.1 | |
| | Review email fr atty C Fronczak (3) | 0.3 | |
| | Email to atty T Hamilton (4) | 0.8 | |
| | Review email fr atty K Acuff | 0.1 | |
| 10/18/2014 | Prepare questions for trial, prepare for trial | 6.7 | |
| | Conf w Camden Baker, trial preparation | 2.1 | |
| | TC w Kenneth Baker | 0.2 | |
| | TC w atty T Hamilton (2) | 0.4 | |
| | Review resp fr RRS defs | 0.3 | 0.3 |
| | Review file, preparation for trial | 1.3 | |
| | Prepare exhibits | 2.2 | |
| | Review email fr atty T Hamilton (2) | 0.6 | |
| | Email to atty T Hamilton | 0.3 | |
| 10/19/2014 | Conf w Kenneth Baker, trial preparation | 4.6 | |
| | Conf w Juanita Horton, trial preparation | 2.3 | |
| | Prepare for trial, prepare questions for trial, organize file and exhibits | 3.1 | |
| | Prepare opening statement | 4.7 | |
| | Review email fr atty C Fronczak | 0.1 | |
| | Email to atty T Hamilton | 0.1 | |
| | Email to defs attys | 0.1 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| 10/20/2014 | Prepare opening statement | 2.0 | |
| | Trial including travel | 6.6 | |
| | Conf w atty T Hamilton and clients | 2.1 | |
| | Prepare questions for trial, prepare for trial | 5.5 | |
| | Review email fr atty T Hamilton (3) | 0.5 | |
| | Email to atty T Hamilton (2) | 0.4 | |
| 10/21/2014 | Prepare witnesses for trial | 2.8 | |
| | Trial including travel | 6.7 | |

*Appendix A-2*

| | | | |
|---|---|---|---|
| | Prepare questions for trial | 5.9 | |
| | Review email fr atty T Hamilton | 0.2 | |
| | Review email fr atty K Turkcan (3) | 0.6 | |
| 10/22/2014 | Conf w clients | 1.7 | |
| | Trial including travel | 6.7 | |
| | Prepare questions for trial, legal arguments | 7.5 | |
| | Review email fr atty T Hamilton | 0.2 | |
| | Email to atty T Hamilton | 0.4 | |
| 10/23/2014 | Prepare questions for trial | 2.2 | |
| | Trial and jury instr conference, including travel | 8.9 | |
| | Revise verdict sheet, jury instructions | 2.9 | |
| | Prepare summation | 5.4 | |
| | Email to atty T Hamilton (2) | 0.4 | |
| | Email to def attys | 0.1 | |
| | Review email fr atty R McCoy | 0.1 | 0.1 |
| | Review email fr atty T Hamilton | 0.3 | |
| 10/24/2014 | Prepare summation before court | 2.0 | |
| | Revise jury instructions | 1.1 | |
| | Review defs' verdict sheet | 0.5 | |
| | Trial including travel | 4.8 | |
| | Trial including travel, jury question, verdict | 0.7 | |
| | Review detailed judgment and order entered | 0.6 | |
| | Email to Court Deputy | 0.1 | |
| | Email to atty T Hamilton (3) | 0.6 | |
| | Review email fr atty T Hamilton (4) | 0.6 | |
| | Review email fr atty S Jebson (2) | 0.2 | |
| 10/28/2014 | Email to atty T Hamilton | 0.1 | |
| 10/29/2014 | Conf w atty T Hamilton | 0.2 | |
| | Review email fr atty T Hamilton | 0.1 | |
| 11/7/2015 | Review email fr atty T Hamilton (2) | 0.2 | |
| 11/14/2014 | Conf w atty T Hamilton | 0.2 | |
| | Review defs' bill of costs | 0.7 | |
| | Review email fr atty T Hamilton | 0.1 | |
| 11/20/2014 | Review receipts for costs | 0.6 | |
| | Draft bill of costs | 1.4 | |
| | Review email fr atty T Hamilton | 0.1 | |
| 11/21/2014 | Draft bill of costs | 1.1 | |
| | Review defs' motion for j as a matter of law | 1.2 | |
| | Legal research, post-trial motion issues | 1.0 | |
| | Review timesheets for accuracy and completeness | 1.9 | |
| 12/5/2014 | Draft motion to reset | 0.5 | |
| | Draft notice of motion | 0.1 | |
| | TC w atty C Fronczak | 0.1 | |
| 12/7/2014 | Review timesheets for accuracy and completeness | 1.1 | |
| | Legal research, fee petition issues | 1.5 | |
| 12/11/2014 | Email to Court Deputy | 0.1 | |
| | TC w Court Deputy (2) | 0.2 | |
| | Review order | 0.1 | |
| 12/15/2014 | Review defs' motion for reconsideration | 0.9 | |

***Appendix A-2***

| | | | |
|---|---|---|---|
| | Review email fr atty T Hamilton | 0.1 | |
| 12/16/2014 | Prepare for motion hearing | 0.8 | |
| | Court including travel | 1.0 | |
| | Review order | 0.1 | |
| | Conf w atty T Hamilton | 0.2 | |
| 12/20/2014 | Legal research, fee petition issues | 0.6 | |
| 12/31/2014 | Review timesheets, separate time attributable to City and RRS defenses | 1.8 | |
| 1/2/2015 | Legal research, fee petition issues | 0.8 | |
| 1/5/2015 | Draft fee petition | 0.7 | |
| 1/12/2015 | Draft fee petition | 0.8 | |
| | Review timesheets for accuracy, completeness | 2.2 | |
| 1/13/2015 | Email to atty T Hamilton | 0.1 | |
| | Review email fr atty K Turkcan | 0.1 | |
| 1/14/2015 | TC w atty T Hamilton | 0.4 | |
| | Review email fr atty T Hamilton (3) | 0.3 | |
| | Email to T Hamilton | 0.2 | |
| 1/15/2015 | Review attorney affidavits | 0.8 | |
| | Email to atty J Loevy | 0.2 | |
| | Email to atty J Hoft | 0.2 | |
| | Review email fr atty J Hoft (2) | 0.2 | |
| | Review email fr atty T Hamilton | 0.1 | |
| | Review email fr atty K Turkcan | 0.1 | |
| | Email to atty T Hamilton (2) | 0.2 | |
| 1/16/2015 | Draft fee petition w exhibits | 0.6 | |
| | Review email fr atty C Fronczak | 0.1 | |
| | Review email fr atty T Hamilton | 0.1 | |
| | Review email fr atty K Turkcan | 0.1 | |
| 1/17/2015 | Draft fee petition w exhibits | 2.7 | |
| | Legal research, fee petition issues | 1.0 | |
| | Review attorney affidavits | 0.8 | |
| | Review email fr atty J Loevy | 0.1 | |
| | Revise Dymkar declaration | 1.0 | |
| 1/18/2015 | Draft fee petition w exhibits | 4.4 | |
| | Legal research, fee petition issues | 1.3 | |
| | Review attorney affidavits | 0.6 | |
| 1/19/2015 | Email to Court Deputy | 0.1 | |
| | Draft fee petition w exhibits | 1.1 | |
| | Review email fr atty T Hamilton (2) | 0.1 | |
| | Review email fr atty J Loevy | 0.1 | |
| 1/20/2015 | Draft fee petition w exhibits | 0.9 | |
| | Legal research, fee petition issues | 0.7 | |
| | Review email fr atty T Hamilton | 0.2 | |
| | Review email fr attyJ Loevy | 0.1 | |
| | Review email fr atty C Fronczak (2) | 0.2 | |
| | Review email fr Court Deputy | 0.1 | |
| | Email to atty C Fronczak | 0.2 | |
| | Email to atty T Hamilton | 0.1 | |
| 1/21/2015 | Draft fee petition w exhibits | 5.4 | |
| | Legal research, fee petition issues | 1.2 | |

*Appendix A-2*

| | TOTAL HOURS | 784.1 | |
|---|---|---|---|
| | HOURS ATTRIBUTABLE EXCLUSIVELY TO GHIDOTTI AND RELIABLE RECOVERY SERVICES, INC. | | 84.2 |
| | ADJUSTED TOTAL HOURS | 699.9 | |
| | TOTAL ADJUSTED FEES AT $495/HOUR | $  346,450.50 | |

| | DEFENDANTS' OBJECTIONS TO TIME ENTRIES THEY CLAIM PERTAIN TO CLAIMS AGAINST GHIDOTTI / RELIABLE | | |
|---|---|---|---|
| | | | |
| | HOURS PREVIOUSLY DEDUCTED BY PLAINTIFF | 77.9 | |
| | | | |
| | HOURS NOT PREVIOUSLY DEDUCTED BY PLAINTIFF | 57.8 | |
| | | | |

*Appendix A-2*

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6,1**
**Eastern Division**

Kenneth Baker, et al.
                              Plaintiff,

v.                                          Case No.: 1:11−cv−04197
                                            Honorable Harry D. Leinenweber

Timothy M. Ghidotti, et al.
                              Defendant.

---

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Wednesday, May 27, 2015:

        MINUTE entry before the Honorable Harry D. Leinenweber:Motion hearing held
on 5/27/2015. Motion for order accepting motion to reconsider in excess of 15 pages[253]
is granted. For the reasons stated in open court, Plaintiff's Motion for reconsideration
[251] is denied. Mailed notice(wp, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at *www.ilnd.uscourts.gov*.

*Appendix A-3*

Case: 15-2203        Document: 25        Filed: 06/21/2016        Pages: 176        (134 of 176)



Assistant DymkarLaw <assistant.dymkarlaw@gmail.com>

## Activity in Case 1:11-cv-04197 Baker et al v. Ghidotti et al transcript

1 message

**usdc_ecf_ilnd@ilnd.uscourts.gov** <usdc_ecf_ilnd@ilnd.uscourts.gov>        Tue, Jun 23, 2015 at 3:54 PM
To: ecfmail_ilnd@ilnd.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### United States District Court

### Northern District of Illinois - CM/ECF LIVE, Ver 6,1

### Notice of Electronic Filing

The following transaction was entered on 6/23/2015 at 3:54 PM CDT and filed on 6/23/2015
**Case Name:**        Baker et al v. Ghidotti et al
**Case Number:**      1:11-cv-04197
**Filer:**
**WARNING: CASE CLOSED on 10/24/2014**
**Document Number:** 266

Docket Text:
**TRANSCRIPT OF PROCEEDINGS held on May 27, 2015 before the Honorable Harry D. Leinenweber. Court Reporter Contact Information: Kelly Fitzgerald, 312-818-6626, kelly_fitzgerald@ilnd.uscourts.gov.**

**IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.**

Redaction Request due 7/14/2015. Redacted Transcript Deadline set for 7/24/2015. Release of Transcript Restriction set for 9/21/2015. (Fitzgerald, Kelly)

**1:11-cv-04197 Notice has been electronically mailed to:**

Caroline Jane Fronczak &nbsp &nbsp caroline.fronczak@cityofchicago.org

Elizabeth Diane Winiarski &nbsp &nbsp ewiniarski@jonesday.com, koneill@jonesday.com

Irene K. Dymkar &nbsp &nbsp dymkarlaw@ameritech.net, assistant.dymkarlaw@gmail.com, idymkar@ameritech.net, office.dymkarlaw@ameritech.net

*Appendix A-4*

Kevin Thomas Turkcan &nbsp &nbsp  ktt@thehamiltonlawoffice.com

Kristin Linn Acuff &nbsp &nbsp  kristin.acuff@cityofchicago.org

Ruth E. Goldwater McCoy &nbsp &nbsp  ruth.mccoy@lewisbrisbois.com, DReilly@lbbslaw.com,
lkapelinski@lbbslaw.com, trish.whitlock@lewisbrisbois.com

Scott J. Jebson &nbsp &nbsp  sjebson@cityofchicago.org

Timothy J. Young &nbsp &nbsp  tim.young@lewisbrisbois.com, amanda.coppoletta@lewisbrisbois.com

Torreya Lyn Hamilton &nbsp &nbsp  tlh@thehamiltonlawoffice.com, emd@thehamiltonlawoffice.com

Zoran Stanoev &nbsp &nbsp  zstanoev@lbbslaw.com, jnelson@lbbslaw.com

**1:11-cv-04197 Notice has been delivered by other means to:**

Alice Ye
SedgwickLP
One North Wacker Drive
Suite 4200
Chicago, IL 60661

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1040059490 [Date=6/23/2015] [FileNumber=14650471-
0] [72ed87877f041e5e6ba01f66535e76f61c08a5a5f412ae3e22f20a2f29990932c1
a0bdec607278eb2fe94669c1d5cf98d4f22fec37637be8b8650fec96bf5893]]

*Appendix A-4*

```
 1                 IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3
     KENNETH BAKER, et al.,          )
 4                                   )
                                     )   Docket No. 11 C 4197
 5               Plaintiff,          )
                                     )
 6          vs.                      )
                                     )
 7   TIMOTHY M. GHIDOTTI, et al.,    )
                                     )  Chicago, Illinois
 8                                   )  June 23, 2015
                 Defendant.          )  9:29 a.m.
 9

10                TRANSCRIPT OF PROCEEDINGS - MOTION
             BEFORE THE HONORABLE HARRY D. LEINENWEBER
11
     APPEARANCES:
12
     For the Plaintiffs:        MS. IRENE K. DYMKAR
13                              53 W. Jackson Boulevard, Suite 452
                                Chicago, Illinois  60604
14
     For the Defendants City    CITY OF CHICAGO
15   of Chicago and named       BY:  MS. CAROLINE JANE FRONCZAK
     Chicago police officers:   30 N. LaSalle Street
16                              Chicago, Illinois  60602

17

18

19

20

21
     Court Reporter:           KELLY M. FITZGERALD, RMR, CRR
22                             Official Court Reporter
                               219 S. Dearborn Street, Suite 1420
23                             Chicago, Illinois  60604
                               312-818-6626
24                             kelly_fitzgerald@ilnd.uscourts.gov

25
```

*Appendix A-4*

```
 1              THE CLERK:  11 C 4197, Baker versus Ghidotti.

 2              THE COURT:  Good morning.

 3              MS. DYMKAR:  Good morning, Your Honor.  Irene Dymkar

 4    for plaintiff.

 5              MS. FRONCZAK:  Good morning, Your Honor.  Caroline

 6    Fronczak on behalf of the City of Chicago and Chicago police

 7    officer defendants.

 8              THE COURT:  All right.

 9         The plaintiff has moved for a motion to reconsider

10    and to -- motion for leave to file a motion in excess of 15

11    pages.

12         The first motion is granted, allowing the filing of

13    the motion.

14         Before the Court is -- now before the Court is

15    plaintiff Kenneth Baker's motion to reconsider.  For the

16    following reasons the motion is denied.

17         On April 24, 2015, the Court entered an order

18    partially granting plaintiff's petition for attorneys' fees in

19    the amount of $164,395, plus interest.  The Court denied

20    plaintiff's application for costs and partially granted

21    defendants' application for costs in the total amount of

22    $6,414.80.  Because the plaintiff filed the instant motion on

23    May 22, the Court construes it as a motion brought pursuant to

24    Federal Rule 59(e).  A 59(e) motion, quote, "must clearly

25    establish either a manifest error of law or fact or must
```

*Appendix A-4*

1  present newly discovered evidence"; see *LB Credit Corp v.*

2  *Resolution Trust*.

3         Plaintiff first argues that the Court erred in

4  denying costs to him and awarding costs to defendants.  Here,

5  both parties claimed to be the prevailing party under

6  54(d)(1).  Noting the broad discretion afforded to district

7  courts in awarding reasonable costs, see *Gavoni v. Dobbs*

8  *House, Inc.,* the Court concluded that defendants, not

9  plaintiff, prevailed on a substantial part of the litigation

10 and were thus the prevailing party.  In a case involving 22

11 claims distributed among four plaintiffs, Kenneth Baker

12 prevailed on only two of his six claims.  Plaintiff has not

13 identified any manifest error of law in deeming defendants the

14 prevailing party.

15        Plaintiff argues for the first time in his motion to

16 reconsider that defendants should be denied costs because they

17 cannot segregate their costs based on the claims they won.

18 However, "arguments that he raised for the first time in a

19 motion to reconsider are waived"; *Brooks v. City of Chicago*.

20 The Court thus rejects plaintiff's claim that its award of

21 costs to defendants and denial of costs to the plaintiff is a

22 basis for reconsideration.

23        Hourly Rates.  Plaintiff next argues that the Court

24 erred in setting attorney Dymkar's hourly rates for two

25 reasons:

*Appendix A-4*

1          (1) the Court failed to give sufficient weight to a

2     settlement agreement in which Dymkar was awarded a rate of

3     $495 per hour, and

4          (2) the Court failed to increase Dymkar's rate beyond

5     the $425 per hour Judge Bucklo awarded in 2012.

6          The Court recognized in its order that prevailing fee

7     awards are useful for establishing a reasonable market rate.

8     Indeed, the Court awarded attorney Hamilton a rate higher than

9     that agreed upon in the settlement plaintiff references.

10    However, the Court also noted that Dymkar's hourly rates

11    ranged from 330 to 425 in 2012 and thus found 425 reasonable,

12    even when adjusted for Dymkar's increased experience.  For

13    this reason, the Court again rejects plaintiff's argument that

14    the appropriate rate is 495 per hour.

15         Hours billed.  Plaintiff's next series of arguments

16    concern the number of hours billed in this case.  Recognizing

17    that Dymkar had already reduced her time by 84.2 hours where,

18    quote, "it was clear only the Reliable Recovery defendants

19    were involved," the Court reduced Dymkar's time by an

20    additional 128.5 hours based on its finding that Dymkar's

21    records still contained entries pertaining to Reliable and

22    defendant Ghidotti, a Reliable employee.  Defendants' proposed

23    128.5-hour reduction was set forth fully in its response to

24    plaintiff's fee petition.

25         For the first time, plaintiff argues that defendants

*Appendix A-4*

```
 1   misled the Court into twice deducting 77.9 hours from Dymkar's
 2   time.   In addition, plaintiff argues that the Court erred in
 3   deducting time for certain work that would have been
 4   performed, quote, "whether Ghidotti had been a defendant or
 5   not."  However, plaintiff neglected to raise either of these
 6   arguments or supply any clarifying documentation at the
 7   appropriate juncture on reply.  As previously noted, an
 8   argument raised for the first time on a motion to reconsider
 9   is deemed waived.  This new argument provides no basis for the
10   Court to reconsider its prior ruling.
11          Plaintiff further contends that the Court erred in
12   making an additional reduction of 30 hours based on its
13   determination that the time records submitted contained vague,
14   unnecessary or excessive entries.  Plaintiff quibbles with the
15   particular example of 1.4 hours that the Court plucked from
16   the defendants' response brief and cited in its opinion.
17   Plaintiff also argues, here again for the first time, that
18   reducing hours on these bases is duplicative of the 128.5-hour
19   reduction.
20          Indicating individual objections next to each time
21   entry, defendants urged the Court to reduce plaintiff's
22   counsel's time by more than 40 hours, plus additional time for
23   excessive e-mailing.  After discussing each of defendants'
24   objections and reviewing their objections, the Court reduced
25   counsel's time by a lump sum of 30 hours, or 4 percent of
```

*Appendix A-4*

1    Dymkar's original billing.  Because a line-by-line accounting

2    is often practical, district courts may, within their

3    discretion, quote, "trim the fat from a fee application" by

4    reducing a fee request by a lump sum; see *Hackett v. Xerox*.

5    Instead of engaging in a line-by-line accounting, the Court

6    made a lump sum reduction that was less than defendants'

7    request, taking into account the fact that a 128.5-hour

8    reduction had already been made.  Thus, the Court calculations

9    did not result in duplicative deductions, as the plaintiff

10   contends.  The motion to reconsider on this basis is also

11   rejected.

12          Lodestar Adjustment.  Plaintiff's last three

13   arguments deal with the Court's 50 percent reduction of the

14   lodestar based on counsel's limited success at trial.

15          First, plaintiff argues that he prevailed on a

16   federal claim at trial, even though the issue of liability had

17   been resolved at summary judgment and the only question before

18   the jury was that of damages.

19          Second, plaintiff argues that the Court erred in

20   applying a proportionality standard in making a downward

21   adjustment to the lodestar.

22          Finally, plaintiff contends that the Court's lodestar

23   reduction unfairly punished his attorneys.

24          Courts have broad discretion in adjusting a lodestar

25   calculation; see *Montanez v. Simon*.  Here, the Court exercised

**Appendix A-4**

1  its discretion in making a downward adjustment to the lodestar

2  based on the factors identified in *Hensley*, including the

3  complexity of the case, potential social impact, and, most

4  importantly, the degree of success achieved at trial; see

5  *Jaffee v. Redmond*.  What matters most here is that counsel

6  prevailed on only two claims unique to Kenneth Baker but did

7  not succeed on any of the other claims shared among all four

8  plaintiffs.  In short, counsel prevailed on only two of 22

9  claims, only one of which was federal.  And on that single

10 claim, the issue of liability had already been resolved at

11 summary judgment.  Here, disagreement with the Court's

12 application of the, quote, "limited success" factor provides

13 no basis for reconsideration.

14     The Court did not apply a strict or proportionality

15 standard between fees and claims.  Indeed, the Court

16 explicitly noted the Seventh Circuit's disapproval of a

17 meat-axe approach to lodestar reductions.  However, the Court

18 also noted that there is no precise formula for reducing a

19 lodestar to reflect partial or limited success, see *Montanez*,

20 and that in some cases, as here, quote, "there is nothing to

21 do but make an across-the-board reduction that seems

22 appropriate in light of the ratio between winning and losing

23 claims"; *Richardson v. City of Chicago*.

24     For all these reasons, the Court denies the motion to

25 reconsider.

**Appendix A-4**

1           Thank you.

2            MS. DYMKAR:   Thank you, Your Honor.

3            MS. FRONCZAK:   Thank you, Your Honor.

4

5        *      *      *      *      *

6

7

8    I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

9

     /s/ Kelly Fitzgerald                    June 23, 2015
10   Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Appendix A-4*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

KENNETH BAKER, BARBARA BAKER,
CAMDEN BAKER, and A.B., a
Minor, by Parent BARBARA BAKER,

               **Plaintiffs,**

    **v.**

TIMOTHY M. GHIDOTTI, BORIS
JURKOVIC, RELIABLE RECOVERY
SERVICES, INC., JEAN M.
LINDGREN, JESUS VERA, STEVEN
MARTIN, JUAN M. CABRALES,
DENNIS P. WALSH, MICHAEL A.
FLORES, UNKNOWN OFFICERS OF THE
CHICAGO POLICE DEPARTMENT, and
THE CITY OF CHICAGO,

               **Defendants.**

        **Case No. 11 C 4197**

    **Hon. Harry D. Leinenweber**

## MEMORANDUM OPINION AND ORDER

Before the Court are three Cross-Motions for Summary Judgment. For the reasons stated herein, each Summary Judgment Motion is granted in part and denied in part. Also pending are various Motions to Strike, all of which are denied as moot.

### I.  BACKGROUND

This case arises out of attempts by Defendant Reliable Recovery Services, Inc. and its employee, Timothy Ghidotti (collectively, the "Recovery Defendants"), to repossess a Chevrolet Impala owned by Juanita Horton. Ms. Horton is the stepdaughter of Plaintiff Kenneth Baker ("Baker"). Around 4:30 a.m. on January 11,

*Appendix A-5*

2010, Ghidotti went to the Baker house looking for the Impala. When he knocked on the front door, the door came open and a security alarm went off. Ghidotti saw several officers of the Chicago Police Department ("CPD") down the street, so he got the officers to talk to Baker, who told them that there was a problem with the front door. Ghidotti spoke with a woman at the Baker home who told him that Juanita Horton did not live there but did stay there occasionally.

The next day, at 6:30 a.m., thirteen-year-old Plaintiff Ashley Baker ("Ashley") emerged from a shower and saw a white man peering in through the window of the Baker back door. Ashley heard this man go down the back outdoor stairs, close the gate to the yard, and come up the front stairs to the home. Ashley was so terrified that she ran into a closet to hide and could not stop herself from urinating all over herself and her clothes. For reasons that are not entirely clear, she then ran outside into the Chicago winter wearing nothing but her soiled pajamas. Ashley's older brother, Oliver Johnson, was driving to the Baker house to give Ashley a ride to school and saw her running down the street. Oliver helped the distraught Ashley back to the house, where they found a business card from a company with the name "Recovery" in it. Ghidotti does not remember whether he went to the Baker house that day, and stated that he never would have looked through the window of a back door.

- 2 -

*Appendix A-5*

Two weeks later, on January 27, the ADT alarm company contacted Baker to tell him that the alarm at the Baker home had been activated. The police arrived and found the front door wide open, so they entered with guns drawn, which woke and frightened Plaintiffs Ashley and Camden Baker.

In the middle of the night on February 1, 2010, Ghidotti arrived at the Baker house looking for the Impala. Even though the car was nowhere to be seen, Ghidotti rang the doorbell. Baker answered the door and Ghidotti asked about Juanita and the Impala. Baker told Ghidotti that Juanita did not live there. Ashley Baker looked out the window and recognized Ghidotti as the man who had been peering through the back door on January 12. Ghidotti testified that Baker disappeared for a moment and returned holding a gun, although the gun was barely visible. Baker and his family all testified that Baker was not holding a gun, and police officers testified that Ghidotti later told them that he did not actually see a gun but just believed, based on Baker's demeanor, that Baker was holding one. Either way, Baker shouted at Ghidotti to get off his porch, saying such things as "get the hell off my porch" and "don't come back on my property no more." Apparently, Baker also said that if Ghidotti kept coming back looking for the car, he would "have something for him." There is no suggestion that Baker pointed a gun at Ghidotti or made any threatening movements or gestures.

- 3 -

*Appendix A-5*

Ghidotti returned to his truck and called 911. He told the dispatcher that he had been threatened by a man with a gun. Defendants Jean Lindgren and Jesus Vera, both CPD officers, arrived at the scene. Lindgren and Vera spoke with Ghidotti, who told them that he thought Baker had been holding a handgun, although he caught only a glimpse of it and could not offer many specifics – in his deposition, Ghidotti could not decide whether he had seen part of the trigger or part of the barrel. Lindgren and Vera knocked on the front door to determine whether Baker knew anything about the missing vehicle. More officers arrived at the scene, including Sergeant Steven Martin. The officers asked Baker for identification, and he presented a Firearm Owner's Identification ("FOID") Card, although the parties dispute whether the card was valid or expired.

The parties agree that the police entered the home but dispute the circumstances that led them to do so. Sergeant Martin says that he asked Baker if he could step inside to get out of the cold, and Baker allowed him in. Lindgren and Vera were a few feet away and could not hear anything, but nonetheless did not hear Baker give them permission to enter. According to Baker, Martin and another officer came running up the front stairs, pushed Baker out of the way, opened the screen door and inner door, and barged into the Baker house uninvited. Plaintiffs testified that Sergeant Martin and Officers Lindgren and Vera corralled the Baker family

- 4 -

*Appendix A-5*

into one room and began scouring the house.  To prevent the police from tearing up his house any further, Baker informed Martin that he owned a gun and stored it in his bedroom, under his mattress. Martin retrieved a shotgun from the bedroom.

Martin then went outside to speak with Ghidotti.  It appears that at that point, Ghidotti denied that he had seen a shotgun and informed these officers that he did not actually see a gun, but believed based on Baker's demeanor and actions that Baker was holding a gun.  The CPD "incident report" from that night reflects that Ghidotti told the police that he did not actually see Baker holding a gun.  Sergeant Martin testified that he does not believe that as a police officer he is supposed to determine whether an alleged victim's story is credible, except in extreme situations.

Martin next engaged in some back and forth negotiations between Baker and Ghidotti.  When at the car, Martin asked Ghidotti whether he wanted to press charges, and Ghidotti said that he would decline to press charges if Baker told him where the car was. Martin returned to the house and relayed this proposition to Baker, but Baker either did not know or did not offer any information about the car.  Baker testified that Martin shuttled between him and Ghidotti four times.  At one point, Martin tried unsuccessfully to talk Ghidotti out of signing a complaint against Baker.  When Martin came back to the house after talking to Ghidotti for the

- 5 -

**Appendix A-5**

last time, Martin relayed to Baker that Ghidotti intended to sign a complaint.  Baker was then arrested for aggravated assault.

It is unclear exactly how much time elapsed, but it appears that the Defendant Officers were probably in the home for at least twenty minutes, if not longer.  Plaintiffs testified that they were detained in their living room during this time.

The police took Baker to the police station, where Lindgren and Vera inventoried the shotgun and were told by "someone at the gun desk" that the shotgun was not registered properly.  Lindgren testified that when they arrested Baker, they did not have any reason to think that the gun was not registered properly.  At the station, however, a charge of having an expired gun registration was added.  Baker attended nine court hearings in two different courts before the charges of aggravated assault and possession of a firearm with an expired registration were dismissed.

Plaintiffs have submitted evidence of the distress they suffered in the wake of these events.  Baker works two jobs that require security clearance:  one for the City of Chicago in the Aviation Department (one of his responsibilities is meeting Air Force One to let the president on and off the plane) and another with J.B. Hunt Transportation where he helps transport poison gas, explosives, and other hazardous or dangerous materials.  Baker's arrest was picked up promptly by Homeland Security, and the arrest and prosecution threatened his security clearance and credentials.

- 6 -

*Appendix A-5*

Baker feared for his jobs and his safety.  Baker also worried about the toll that these events took on his daughter, Ashley.  Baker has suffered from crying fits and lost sleep.

As to the other Plaintiffs, Barbara Baker testified that she is upset and angry and stays up all night because she cannot sleep. She lost her job because she fell asleep at the wheel of a company van.  Ashley Baker was distraught at the series of events in this case:  the incident with someone who may have been Ghidotti peering through a window after her shower, the police waking her up at gunpoint, the police searching her house, and her father's arrest. In addition to the trauma described above, she suffered bed-wetting, fear of being alone (which led her to sleep on the floor of her parents' bedroom for four months), anger at authority, failing grades, and fights and suspensions at school.  Camden Baker, like his sister, was upset that he was woken up and gunpoint and had to watch the police search his house.  He had trouble sleeping and, when he did sleep, he suffered from nightmares.  He was so afraid of the police returning to the house that he moved out and visits only rarely.

## II.  MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a). The Court construes all facts and draws all reasonable inferences

**Appendix A-5**

in favor of the non-moving party. *Ricci v. DeStefano,* 557 U.S. 557, 586 (2009).

## A. Defendants Cabrales and Flores

Defendant Officers Cabrales and Flores move for summary judgment on the ground that they were neither at the scene nor involved in the incident. By this, they mean that they were in their police vehicle on the street near the Baker house but never left the vehicle and did not interact with Plaintiffs. Plaintiffs oppose this Motion and note that multiple witnesses, including Ghidotti and Plaintiffs, testified that somewhere between six and nine officers entered and searched the home. Plaintiffs offer no identifying characteristics for those other officers whom they saw enter the house. They hope to prove circumstantially that Cabrales and Flores – who concede that they were in their police car parked at the curb – were some of the other officers who entered the house. This argument relies entirely on speculation, and "[i]nferences that are supported only by speculation or conjecture will not defeat a summary judgment motion." *McDonald v. Village of Winnetka,* 371 F.3d 992, 1001 (7th Cir. 2004); *Billups v. Kinsella,* No. 08 CV 3365, 2010 WL 5110121 (N.D. Ill. Dec. 9, 2010) (speculative evidence linking police officer to the alleged violation "is not enough to allow the claim to proceed to trial"). Summary judgment is granted in favor of Defendants Cabrales and Flores on all counts for which they are named.

- 8 -

*Appendix A-5*

## B.  Search

Defendants Lindgren, Vera, Martin, and Walsh (the "Defendant Officers") argue that they are entitled to summary judgment on the Fourth Amendment search claim because Baker consented to the search.  However, it is quite clear that the parties dispute the circumstances of the police entry to the house and the subsequent search of the bedroom, where Martin found the shotgun.  Both Baker and Camden testified that Martin and one of the police officers ran up the front stairs, pushed Baker out of the way, and barged into the house.  ECF No. 105-5 at 70:15-18.  Plaintiffs testified that Defendants began searching the house, and Baker told them where his gun was hidden only because he did not want them to tear up his entire house.  *Id.* at 73:15-20.  Consent is an exception to both the warrant requirement and the probable cause requirement, but consent must be given voluntarily.  *See, Bumper v. North Carolina,* 391 U.S. 543, 548 (1968).  Genuine factual disputes preclude the Court from concluding whether the entry of the home and the search for the gun were reasonable based on valid consent.

Plaintiffs move for summary judgment on the ground that even if the entry was consensual, the scope and duration of the police occupation of the home made the search unreasonable.  But it is difficult to evaluate this argument without knowing the circumstances under which the Defendants entered the house.  As discussed above, Martin testified that Baker invited him in, but

- 9 -

*Appendix A-5*

Baker testified that Martin and another officer barged in uninvited. Martin testified that none of the officers searched the house except for when Baker told Martin where the gun could be found. Plaintiffs all testified that the officers were rummaging through the entire house. Thus, it is unclear how long the police were in the house, what took place during that time, and whether Baker allowed the police into the house in the first place. A twenty-minute stay could have been reasonable, depending on the circumstances. With critical facts disputed, the Court cannot grant summary judgment for either party on the Fourth Amendment search claim.

### C.  False Arrest

The parties have filed cross-motions for summary judgment on the false arrest claim, asking the Court to determine whether the arrest was supported by probable cause. "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon County, Ill.,* 705 F.3d 706, 714 (7th Cir. 2013). Probable cause does not require evidence sufficient to sustain a conviction or to demonstrate that it is more likely than not that the suspect committed a crime. *United States v. Sawyer,* 224 F.3d 675, 679 (7th Cir. 2000). Probable cause exists where the totality

- 10 -

*Appendix A-5*

of the circumstances reveals a substantial chance that the suspect was engaged in criminal activity.  *Id.*

In this case, the underlying crime was aggravated assault, and Defendants do not argue that they had probable cause to arrest Baker for any other crimes.  In Illinois, an individual commits assault when he "knowingly engages in conduct which places another in reasonable apprehension of receiving a battery."  720 Ill. Comp. Stat. 5/12-1(a).  Assault involves either a threatening gesture or an otherwise innocent gesture made threatening by accompanying words, such that it creates a reasonable apprehension of an imminent battery.  *Kijonka v. Seitzinger,* 363 F.3d 645, 647 (7th Cir. 2004).

Here, the proffered basis for probable cause was that Baker threatened Ghidotti with a gun and then Ghidotti felt threatened. Of course, it is not enough that the victim feel threatened, as that feeling "must have a measure of objective reasonableness." *People v. Floyd,* 663 N.E.2d 74, 76 (Ill. App. Ct. 1996).  And it is not enough to say that Baker threatened Ghidotti, because that argument assumes the conclusion:  that there was a threat.  Rather, the Court must consider "the words employed by the person charged with assault."  *Id.*  Here, Baker said such things as "get the hell off my porch" and "don't come back on my property no more."  Baker also apparently said that if Ghidotti kept coming back looking for the car, he would "have something for him."  Even if these words

- 11 -

*Appendix A-5*

are taken to mean that Baker would shoot Ghidotti if Ghidotti ever returned, these words do not add up to a threat because they speak to only indefinite action at some indefinite point in the future. *Kijonka,* 363 F.3d at 647 (explaining that verbal threats of "indefinite action in the indefinite future" fail to meet the imminence requirement in the assault statute).

The requisite threatening gesture is similarly missing. The Defendant Officers admit that Ghidotti told them that he did not actually see a weapon; instead, Ghidotti *thought* that Baker was holding a weapon because of Baker's demeanor and actions. This admission came after Ghidotti had told the 911 dispatcher that he had seen a gun. In addition, Ghidotti told the officers that he had seen a handgun, but the police recovered a shotgun. These circumstances – a victim with a changing story and physical evidence that does not match the story – should have alerted the officers to the possibility that Ghidotti might not be credible. Officers Lindgren and Vera indicated in their narrative in the police case incident report that Ghidotti told them that he did not actually see a gun; later, the officers testified that this incident report was accurate. There is no evidence that Baker made any other threatening gestures, such as raising his fist, pointing a gun, or moving to grab a weapon. Subject to limited exceptions not relevant here, some action or gesture is required before threatening words can amount to an assault. *People v. Floyd,* 663

- 12 -

**Appendix A-5**

N.E.2d 74, 76 (Ill. App. Ct. 1996) (explaining that "words alone are not usually enough to constitute an assault").

There can be no genuine dispute that Baker's statements to Ghidotti were not threatening enough to give Ghidotti a reasonable fear of an imminent battery. Moreover, even assuming that Baker held a gun at his side, it appears that Baker did his best to hide that gun from Ghidotti, who caught only a glimpse of it. And there is no indication from the record that Baker made any threatening gesture. This conduct does not amount to an assault under Illinois law.

The Defendant Officers knew all of this yet nonetheless arrested Baker for aggravated assault. Defendants repeat *ad nauseum* that they "reasonably relied on information provided to them by Ghidotti," ECF No. 125 at 8, and arrested Baker based on the "threat" that Ghidotti described. Even if police need not establish every element of an offense, they will have probable cause to arrest only if the facts known to the officers at the time would have led to a reasonable belief that the suspect had committed a crime. The police cannot simply rely on a victim who reports that he was "threatened" or feared for his safety; before police officers conclude that they have probable cause to arrest a suspect, they must determine whether the words and conduct amounted to an assault and that the victim's fear was reasonable. Conclusory assertions that Baker threatened Ghidotti are

- 13 -

*Appendix A-5*

insufficient.   Defendants do not even attempt to argue that the Baker's words amounted to a threat or that there was any threatening gesture – they merely assert that there was a threat.

On this record, there can be no genuine dispute that the arresting officers should have known at the time that no assault had been committed.   Thus, the Defendant Officers lacked probable cause to arrest Kenneth Baker.   *United States v. McDonald,* 453 F.3d 958, 962 (7th Cir. 2006) ("A stop based on a subjective belief that a law has been broken, when no violation actually occurred, is not objectively reasonable.").   The Court grants summary judgment in favor of Plaintiff Kenneth Baker on the false arrest claim, Count VIII.

### D.  Failure to Investigate

Plaintiffs' Count IX is brought against the Defendant Officers for failure to investigate.   The parties have filed cross-motions for summary judgment on this issue.

When it is unclear whether a crime has been committed, a police officer may not arrest a suspect without first pursuing "[r]easonable avenues of investigation" to determine whether a crime has actually taken place.   *BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir. 1986) ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest."). But Plaintiffs have not cited, and the Court could not find, any authority for the idea that a police officer's failure to

- 14 -

*Appendix A-5*

investigate can constitute a distinct constitutional violation, apart from the false arrest claim. Plaintiffs' failure to investigate claim is not cognizable, and therefore it is dismissed.

### E.  Failure to Intervene

The Defendant Officers have moved for summary judgment on Count X for failure to intervene. The only support that Defendants offer is their contention that there was no underlying constitutional violation. But as discussed above, the Court grants summary judgment in favor of Plaintiff Kenneth Baker on one of his constitutional claims. Thus, Defendants' Motion for Summary Judgment is denied as to this Count as well.

### F.  Conspiracy

Count XIII, brought against Ghidotti and the Defendant Officers, is a conspiracy claim brought pursuant to 42 U.S.C. § 1983. The conspiracy claim is brought by all four Defendants to remedy four alleged constitutional violations:  the entry into the Baker home, the search of the Baker home, the detention of Plaintiffs while the police negotiated with Baker, and the custodial arrest of Baker.

#### 1.  *Ghidotti*

A private citizen can be held liable under § 1983 only if his conduct is attributable to the state. *See, West v. Atkins,* 487 U.S. 42, 49 (1988). One way for a plaintiff to forge the requisite connection between the private conduct and the state is to prove

- 15 -

**Appendix A-5**

that the private defendant was "a willful participant in joint action with the State or its agents." *Dennis v. Sparks,* 449 U.S. 24, 27 (1980). "To establish § 1983 liability through a conspiracy, a plaintiff must establish that (1) a state official and private individual(s) reached an understanding to deprive plaintiff of his constitutional rights; and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Logan v. Wilkins,* 644 F.3d 577, 583 (7th Cir. 2011).

Ghidotti argues that there is no evidence of a conspiracy or joint action. Ghidotti notes correctly that the fact that he called the police to report a crime – even if he lacked grounds to do so – does not make him a co-conspirator with agents of the state. *See, Gramenos v. Jewel Cos.,* 797 F.2d 432, 435 (7th Cir. 1986). But Ghidotti appears to have done more than report a crime; facts in the record suggest that Ghidotti sought police assistance with a purely private matter, recovering the car. It appears that the officers conducted a coordinated effort to coerce Baker to reveal information about the missing car. Ghidotti took the position that he would sign a criminal complaint against Baker unless Baker gave him the car or told him where it was. The police told Baker that if he gave Ghidotti the car, or told him where it was, they would not arrest him.

Although it does not appear that the Seventh Circuit has addressed this issue, district courts applying the law of this

*Appendix A-5*

circuit and other circuit courts have held that state action can be found where a police officer takes an active role in repossessing property. *Niemeyer v. Williams,* 910 F.Supp.2d 1116, 1127 (C.D. Ill. 2012); *Barrett v. Harwood,* 189 F.3d 297, 302 (2d Cir. 1999). The Sixth Circuit has explained that "[a] police officer's arrival and close association with the creditor during the repossession may signal to the debtor that the weight of the state is behind the repossession and that the debtor should not interfere by objecting." *Hensley v. Gassman,* 693 F.3d 681, 690 (6th Cir. 2012). Here, disputed facts viewed in the light most favorable to Plaintiff show that the police, after conferring with Ghidotti, took an active role in the repossession by relaying messages from Ghidotti to Baker and trying to find out more information about the car. Based on testimony from a variety of deponents, it appears that the police were trying to convince Baker to reveal information about the location of the car — that is, the police were helping Ghidotti do his job. These facts are evidence of a conspiracy and thus summary judgment is not warranted.

### 2.   Defendant Officers

The Defendant Officers have moved for summary judgment on the conspiracy claim on the ground that Plaintiffs have failed to point to evidence showing a genuine issue of material fact regarding the existence of a conspiracy. As discussed above, there is ample evidence that, based on discussions with Ghidotti, the Defendant

*Appendix A-5*

Officers agreed to help find out information about the car. Sergeant Martin negotiated with Baker and Ghidotti, and told Baker that he would put the gun back under the mattress and not arrest Baker if Baker would reveal where Juanita Horton lived and where her vehicle could be found.  Apparently, Martin took four round trips between the house, where he spoke with Baker, and the curb, where he spoke with Ghidotti.  Sergeant Martin threatened to arrest Baker if Baker did not reveal where the car was, and that arrest would have been unlawful if not supported by probable cause. Martin's participation in a cooperative effort to recover the car and coerce information from Baker is evidence of a conspiracy. *Richardson v. City of Indianapolis,* 658 F.2d 494, 500 (7th Cir. 1981) (explaining that a conspiracy involves "[a] combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means").  As to the conspiracy count against the Defendant Officers, the Motion for Summary Judgment is denied.

### G.  Malicious Prosecution

Counts XV and XVI are brought against all Defendants for malicious prosecution of the aggravated assault and weapons registration charges, respectively.  Both sets of Defendants have moved for summary judgment.

- 18 -

*Appendix A-5*

### 1.  *Defendant Officers*

The Defendant Officers argue that they are entitled to summary judgment on Count XV because they had probable cause to arrest Baker for aggravated assault.  But as discussed above, the Defendant Officers lacked probable cause for the arrest.

Defendants argue that they had probable cause to arrest Baker for failing to register his firearm, the basis of Count XVI.  They support that argument with the unsworn statement of Sergeant Schaff – but unsworn statements are not appropriate evidence on summary judgment.  FED. R. CIV. P. 56(c)(1)(A) (requiring affidavits or declarations).  Defendants contend that someone at the "gun desk" told them that Baker's gun was not registered – but that statement, offered to prove the truth of the matter asserted, is inadmissible hearsay.  *Gunville v. Walker,* 583 F.3d 979, 985 (7th Cir. 2009) (explaining that a party may not rely upon inadmissible hearsay at summary judgment).  If Defendants want to prove that they had probable cause for this arrest, they must offer competent evidence to support the charge.  As to both malicious prosecution claims, the Motion for Summary Judgment brought by the Defendant Officers is denied.

### 2.  *Recovery Defendants*

The Recovery Defendants have moved for summary judgment on Count XV for malicious prosecution.  They note correctly that a plaintiff prevails on a malicious prosecution claim by proving five

- 19 -

**Appendix A-5**

elements:    (1)  the  institution  and  prosecution  of  judicial proceedings by the defendant, (2) a lack of probable cause for those proceedings, (3) malice in instituting the proceedings, (4) termination of the prior cause in the plaintiff's favor, and (5) suffering by the plaintiff of damage or injury from the prior proceeding.  *Reed v. Doctor's Associates, Inc.,* 824 N.E.2d 1198, 1205 (Ill. App. Ct. 2005).  Defendants concede the first element but contest the rest.

As to probable cause, Defendants insist that "the record is clear that in Ghidotti's mind, he believed that Mr. Baker threatened him with a gun."  ECF No. 114 at 17.  That contention distorts the inquiry – the question is whether any apprehension was reasonable – and ignores testimony from the police that Ghidotti admitted that he did not actually see a gun.  Even after Plaintiffs used their opposition papers to call attention to the factual dispute, Defendants' reply brief simply repeats their highly questionable claim that Ghidotti's testimony is uncontroverted. ECF No. 171 at 12.  It seems appropriate to remind counsel for Defendants of their duty of candor before the Court.

On  the  third  and  fifth  elements,  Defendants  provide  no argument or evidence to support granting summary judgment.  It is true enough that a party may move for summary judgment on the ground that "an adverse party cannot produce admissible evidence to support" a fact necessary for the adverse party's case.  FED. R.

*Appendix A-5*

CIV. P. 56(c)(1)(B). However, the movant still bears the initial burden of showing, not merely asserting, "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Defendants' argument on this Count fails to discuss two of the elements and, as discussed above, ignores pertinent factual disputes. Defendants' failure to develop their argument warrants denial of their motion on this Count. *See, Thompson v. Boggs,* 33 F.3d 847, 854 (7th Cir. 1994) (failure to develop argument on summary judgment waives the argument); *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991) (explaining that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). As to the malicious prosecution counts, the Motion brought by the Recovery Defendants is denied.

### H.  Defendant Walsh

Defendant Walsh has moved for summary judgment on all counts against him on the ground that in his capacity as watch commander he did not participate personally in any constitutional violations. "An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998).

In *Jenkins,* the defendant officer, though not involved with the initial arrest, signed the criminal complaint against the plaintiff. *Jenkins,* 147 F.3d at 583. The officer could not be

*Appendix A-5*

held liable on a false arrest claim because the arrest had already taken place once the defendant signed the complaint, so the defendant did not participate in the alleged constitutional violation. *Id.* at 583-84.

Here, in contrast, the alleged violations involve not just the arrest but subsequent police conduct as well. There is evidence that Walsh made the decision to keep Baker in custody and elected to charge Baker with aggravated assault, even once he saw the report wherein the arresting officers indicated that Ghidotti had said that he did not actually see Plaintiff holding a gun. Walsh testified that he read and approved the police report that notes that Ghidotti admitted he did not actually see a gun. He testified that, in his role as watch commander, he had the authority to decide whether Baker should be charged or released without charges.

When these facts are viewed in the light most favorable to the Plaintiff, it is apparent that Defendant Walsh knew that the arresting officers lacked probable cause and nonetheless condoned the arrest – thereby prolonging the constitutional violation. Defendant Walsh's failure to use his authority to stop the constitutional violation subjects him to potential liability under § 1983. *See, Morfin v. City of Chicago,* 349 F.3d 989, 1001 (7th Cir. 2003) (noting that "an officer has a duty to intervene to prevent a false arrest or the use of excessive force if the officer is informed of the facts that establish a constitutional violation

- 22 -

*Appendix A-5*

and has the ability to prevent it"). As to Defendant Walsh, the Motion for Summary Judgment is denied.

## I. Trespass

The Recovery Defendants move for summary judgment on the trespass claims (Counts I-IV) on the ground that Ghidotti had a privilege to enter Baker's land to repossess the car. A party is liable for trespass when he intentionally intrudes upon the land of another. *Dial v. City of O'Fallon,* 411 N.E.2d 217, 220 (Ill. 1980). But there can be no liability for trespass when a person enters land based upon privilege or consent. *Desnick v. Am. Broadcasting Cos.,* 44 F.3d 1345, 1351 (7th Cir. 1995).

One such privilege is used every day but not often given much thought: the privilege to approach a house and knock on the front door. *See*, *Florida v. Jardines,* __ U.S. __, 133 S.Ct. 1409, 1415 (2013) (recognizing that even unsolicited visitors have an implied privilege "to approach the home by the front path" and "knock promptly"). Another privilege arises in the context of repossession, and allows a person who is entitled to the immediate possession of a chattel to enter the land of another at a reasonable time and in a reasonable manner in order to remove the chattel. *Restatement (Second) of Torts* § 198 (1965). The repossessor must not breach the peace, which means that the repossessor's conduct must not invite, or be likely to invite, immediate public turbulence. 810 Ill. Comp. Stat. 5/9-609;

- 23 -

*Appendix A-5*

*Valentino v. Glendale Nissan, Inc.,* 740 N.E.2d 538, 543 (Ill. App. Ct. 2000).

Count I seeks redress for a trespass that occurred on January 11, 2010. Undisputed facts show that on that day, Ghidotti approached the Baker residence and knocked on the front door. The front door swung open, but Baker admits that the door was broken. Even though Ghidotti could see that the car was not in front of the house or in view on the property, absent some indication that visitors were not welcome, Ghidotti was entitled to go up to the front door and knock. *Jardines,* 133 S.Ct. at 1415. For this Count, it does not matter whether Ghidotti was on the premises to repossess a vehicle. There is no genuine dispute that Ghidotti's conduct on January 11 did not exceed the scope of the implied license to approach and knock on the front door, and thus was not a trespass. Summary judgment is granted for Defendants on Count I.

Count II relates to the incident on January 12 where a white man breached a closed gate in the Baker backyard and peered in through the window of the Baker back door. Ashley Baker saw the man peering in, and later identified that man as Ghidotti. A business card left at the front door that morning had the name "Recovery" on it. Even though Ghidotti does not remember going to the house that day, the record contains sufficient facts for a reasonable jury to conclude by a preponderance of the evidence that Ghidotti was the man who went into the Baker backyard that day.

*Appendix A-5*

For that day, Ghidotti cannot rely on any privilege to approach the house by the front path because he was in the backyard and crossed through closed gates.  Any because the Impala was nowhere to be seen, Ghidotti cannot say that he was on the property to repossess the car; at most, he was investigating its whereabouts.  This conduct amounts to a trespass, so summary judgment is denied as to Count II.

The third incident, which took place on January 27, forms the basis of Count III.  On that day, someone knocked on the front door, which caused the door to swing open.  As with Count I, the tortious conduct consists of walking up to the front door and knocking.  In the absence of some indication to the contrary – such as a closed gate, a sign saying that visitors are not welcome, or an admonition never to return – that conduct is not a trespass. There is no evidence that the Baker house was closed to visitors, or that Ghidotti was told not to return, either of which might have indicated that Ghidotti would not have had a license to go up to the front door of the house and knock.  It is true that the door swung open and triggered an alarm, which lead ultimately to police entering the house with their guns drawn.  But there is no indication that Ghidotti intended that result, or even that the police entering with guns drawn was a reasonably foreseeable consequence of a knock on the front door.  Because the conduct complained of in Count III did not exceed the scope of the implied

*Appendix A-5*

license to knock on a house's front door, summary judgment is granted for Defendants on Count III.

The final trespass, alleged in Count IV, took place on February 1. As an initial matter, the repossessor privilege is unavailable because with no car in sight, Ghidotti was not entering the property to repossess property. In addition, on that day, Ghidotti arrived at the Baker house and rang the doorbell in the middle of the night: either around 2:30 or 3:30 a.m. It is not customary for strangers to walk up to houses and ring the doorbell in the middle of the night with no invitation to do so. As the Supreme Court has noted, "[c]omplying with the terms of that traditional invitation," to approach a house and knock on the front door, "does not require fine-grained legal knowledge." *Jardines,* 133 S.Ct. at 1415. Whether Ghidotti had a privilege to enter the premises at that early hour on February 1 is subject to reasonable debate and is outside the scope of the briefing provided by the parties. The early hour of the events in question also precludes the Court from finding that Ghidotti was privileged as a repossessor, because his entry to the premises was not at a reasonable time. *Restatement (Second) of Torts* § 198 (1965). For these reasons, the Court denies summary judgment as to Count IV.

### J.  Intentional Infliction of Emotional Distress

The Recovery Defendants move for summary judgment as to Count XIV, for intentional infliction of emotional distress

*Appendix A-5*

("IIED").  In Illinois, a Plaintiff succeeds on an IIED claim by proving four elements:  (1) extreme and outrageous conduct; (2) intent or recklessness to cause emotional distress; (3) severe or extreme emotional distress suffered by the plaintiff; and (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct.  *Sornberger v. City of Knoxville,* 434 F.3d 1006, 1030 (7th Cir. 2006) (citing *Pub. Fin. Corp. v. Davis,* 360 N.E.2d 765, 767–68 (Ill. 1976)).

Defendants contend that "there is no evidence proving that the actions of the Reliable Recovery Defendants meet the extreme and outrageous conduct necessary to sustain a cause of action for intentional infliction of emotional distress."  ECF No. 114 at 19. Defendants give the Count zero analysis of the facts of this case and not a single citation to a relevant case for more than a legal standard.  As the Court has noted already in this opinion, the Court declines to make the parties' arguments for them.  *United States v. Alden,* 527 F.3d 653, 664 (7th Cir. 2008) (noting that "it is not the obligation of this Court to research and construct the legal arguments available to parties").

Defendants' argument on the severity element fares no better. They assert that "the intensity and duration of the claimed distress allegedly suffered by Plaintiffs were not such as would warrant the imposition of liability upon the Reliable Recovery Defendants."  ECF No. 114 at 19.  This conclusory statement,

- 27 -

***Appendix A-5***

unaccompanied by any analysis or supporting precedent, does not tell the Court *why* it should grant summary judgment – it just insists that summary judgment is warranted.

To the contrary, Plaintiffs have submitted evidence of the severe emotional distress that they suffered.  The arrest and prosecution put Baker's security clearance at risk, which put his employment at risk as well.  Baker's fears for his job and his safety, as well as his concerns about his daughter Ashley, led him to suffer from crying fits and lost sleep.  Barbara Baker suffered from sleeplessness that caused her to fall asleep at the wheel of a company vehicle, after which she lost her job.  Ashley's emotional distress was manifest in a variety of ways, including her bed wetting, failing grades, and fights and suspensions at school. Camden Baker was so upset by these events that he moved out of the house and visits rarely.

Plaintiffs' evidence of the severity of their emotional distress is sufficient to withstand Defendants' Motion for Summary Judgment.  Whether their distress was severe enough to allow them to recover for IIED is an issue that must be resolved at trial.  As to this Count, the Motion for Summary Judgment is denied.

### K.  Qualified Immunity

The Defendant Officers have asserted an entitlement to qualified immunity.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as

- 28 -

*Appendix A-5*

their conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quotation
omitted).

The Defendant Officers argue that they are entitled to
qualified immunity because they did not violate any constitutional
rights. As discussed above, many of the alleged constitutional
violations and supported in the record and cannot be resolved
without the aid of a factfinder.

The Defendant Officers argue next that any mistakes that they
made were reasonable. The procedural posture of the case requires
the Court to view the facts in the light most favorable to the non-
moving party, which means that the Court cannot ignore sworn
testimony from the Plaintiffs and others. Police do not act
reasonably when they barge into a private home without a warrant,
exigent circumstances, or even probable cause. Nor is it
reasonable for police to arrest a suspect without investigating
further when it is unclear what happened at the scene and probable
cause is supported by only a report from a victim whose story does
not add up. The Court cannot cherry-pick facts and excuse what may
have been several serious constitutional violations. And the
Supreme Court and Seventh Circuit precedent cited herein, such as
*Sawyer,* 224 F.3d 675, and *West,* 487 U.S. 42, is all well-

*Appendix A-5*

established.  The Defendant Officers are not entitled to qualified immunity at this stage.

## L.  Defendant Unknown Officers

Plaintiffs brought this case against the named defendants and "unknown officers of the City of Chicago."  Discovery has closed, and it does not appear that Plaintiffs have attempted to name any other defendants or serve any other defendants with process.  In addition, because more than two years have passed since the incidents that form the basis of this action, any new defendants will have a statute of limitations defense.  *Dominguez v. Hendley,* 545 F.3d 585, 588 (7th Cir. 2008) (explaining that in Illinois, the statute of limitations for § 1983 claims is two years).  Therefore, the unknown officers are dismissed from this case.  *See*, *Williams v. Rodriguez,* 509 F.3d 392, 402 (7th Cir. 2007) (dismissing unnamed defendant after close of discovery).

## III.  MOTIONS TO STRIKE

Plaintiffs have filed several Motions to Strike.  Such motions are generally unnecessary, as the parties are free to use to their briefs on the substantive motion at hand to comment on the legality or adequacy of evidence and arguments presented by the other side. The Court has taken into account the arguments put forth in the Motions to Strike, so the Motions [ECF Nos. 136, 172] are denied as moot.

*Appendix A-5*

### IV.  CONCLUSION

For the reasons stated herein, the Court rules as follows:

1.   Summary judgment is granted for Plaintiff Kenneth Baker on Count VIII for false arrest;

2.   Summary judgment is granted in favor of Defendants Cabrales and Flores on all Counts, and for Defendants on Counts I and III;

3.   The "Defendant Unknown Officers" are dismissed from the case;

4.   Count IX is dismissed;

5.   Otherwise, the Motions for Summary Judgment are denied;

6.   As a result of these rulings, Plaintiffs' Motion for Summary Judgment [ECF No. 103] is granted in part and denied in part;

7.   The Motion brought by Defendants Ghidotti and Reliable Recovery [ECF No. 112] is granted in part and denied in part;

8.   The Motion brought by the Defendant Officers [ECF No. 106] is granted in part and denied in part; and

9.   The Plaintiffs' Motions to Strike [ECF Nos. 136, 172] are denied as moot.

**IT IS SO ORDERED.**

_____
    Harry D. Leinenweber, Judge
    United States District Court

Date:3/28/2014

- 31 -

*Appendix A-5*

ILND 450 (Rev. 10/13) Judgment in a Civil Action    Case: 1:11-cv-04197 Document #: 216 Filed: 10/24/14 Page 1 of 2 PageID #:4465

Case: 15-2203    Document: 25    Filed: 06/21/2016    Pages: 176    (175 of 176)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Kenneth Baker, Barbara Baker, et al,

Plaintiff(s),

v.

Timothy M. Ghidotti, et al,

Defendant(s).

Case No.  11 C 4197
Judge Harry D. Leinenweber

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐    in favor of plaintiff(s)
       and against defendant(s)
       in the amount of $           ,

              which ☐ includes           pre–judgment interest.
                    ☐ does not include pre–judgment interest.

       Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

       Plaintiff(s) shall recover costs from defendant(s).

---

☐    in favor of defendant(s)
       and against plaintiff(s)

.

       Defendant(s) shall recover costs from plaintiff(s).

---

☒    other: in favor of the plaintiff Kenneth Baker against the defendants Martin, Lindgren, Vera in the amount of $25,000 on the False Arrest Claim and in favor of the plaintiff Kenneth Baker against defendants Ghidotti, Martin (himself), Lindgren, Martin (as supervisor) in the amount of $5,000 on the Malicious Prosecution Claim. In favor of defendants Ghidotti and Reliable Search Claim against the plaintiff Kenneth Baker on the Trespass Claim.  In favor of the defendants Martin (himself), Lindgren, Vera, Martin (as supervisor) against the plaintiff Barbara Baker on the Illegal Entry Claim, Illegal Search Claim, Illegal Detention Claim, Conspiracy Claim and in favor of the  defendants Ghidotti and Reliable Recovery Services against plaintiff Barbara Baker on the Trespass Claim. In favor of the defendants Martin (himself), Lindgren, Vera, Martin (as supervisor) against the plaintiff Camden Baker on the Illegal Entry Claim, Illegal Search Claim, Illegal Detention Claim, Conspiracy Claim and in favor of the defendants Ghidotti and Reliable Recovery Services against plaintiff Camden Baker on the Trespass Claim. In favor of the defendants Martin (himself), Lindgren, Vera, Martin (as supervisor) against the plaintiff Ashley Baker on the Illegal Entry Claim, Illegal Search Claim, Illegal Detention Claim, Conspiracy Claim and in favor of the defendants Ghidotti and Reliable Recovery Services against the plaintiff Ashley Baker on the Trespass claims.

***Appendix A-6***

This action was *(check one)*:

☒ tried by a jury with Judge Harry D. Leinenweber presiding, and the jury has rendered a verdict.
☐ tried by Judge      without a jury and the above decision was reached.
☐ decided by Judge      on a motion


Date:   10/24/2014                    Thomas G. Bruton, Clerk of Court

                                      Wanda Parker , Deputy Clerk


*Appendix A-6*